UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

| | | | |
|---|---|---|---|
| Case No. | CV07-1635-GW(VBKx) | Date | November 29, 2007 |
| Title | Waymon Tripp v. Indymac Financial Inc et al | | |

Present: The Honorable **GEORGE H. WU, UNITED STATES DISTRICT JUDGE**

| Javier Gonzalez | Wil Wilcox | |
|---|---|---|
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

Attorneys Present for Plaintiffs:

Christopher L. Nelson/John J. Gross
Andrew W. Friedman/Lionel Z. Glancy
Frederick Gerkins

Attorneys Present for Defendants:

Michael C. Tu/Teodora Manolova
Daniel Tyukody

**PROCEEDINGS:**  **HEARING RE: DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT (FILED 10/09/07)**

Motion is held. The tentative decision is adopted as the Court's final ruling (attached hereto). Defendants' Motion to Dismiss Plaintiffs' Second Amended Complaint (filed 10/09/07) is **granted with leave to amend.** The plaintiff shall have up to and including January 18, 2008, to file the third amended complaint.

Furthermore, the Court lifts the requirements of Local Rule 23-3, until filing of the final pleading and lifts the Rule 26(f) requirements.

Parties hereby waive notice.


IT IS SO ORDERED.




: 09

Initials of Preparer   JG

**Tripp, et al. v. IndyMac Bancorp, Inc., et al.**, Case No. CV 07-1635

Tentative Ruling on Motion to Dismiss Plaintiffs' Amended Complaint

## I. Background

On September 7, 2007, plaintiffs Wayman Tripp and Sven Mossberger ("Plaintiffs") filed an Amended Complaint for Violations of Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 ("AC"). Named as defendants in the AC are IndyMac Bancorp, Inc. ("IndyMac"), Michael W. Perry, Scott Keys and S. Blair Abernathy ("Defendants"). The individual Defendants are, respectively, the Chief Executive Officer and Chairman of the Board; the Executive Vice President and Chief Financial Officer; and the Executive Vice President, Specialty Mortgage Lending. *See* AC ¶ 2 n.1. Plaintiffs seek to represent a class of all persons and entities who purchased or otherwise acquired the common stock of IndyMac between January 26, 2006 and January 25, 2007. *See* AC ¶ 1. IndyMac is the holding company for IndyMac Bank, F.S.B., a "hybrid thrift/mortgage banker." AC ¶ 2. As such, IndyMac both invests in and originates loans. *See* AC ¶ 2.

Plaintiffs allege that "Defendants falsely portrayed IndyMac as a company that was, and would continue to be, financially stable despite industry-wide downturns and that this stability was a result of, inter alia, the quality and success of the Company's underwriting, hedging activities and strong internal controls." AC ¶ 3. More specifically, Plaintiffs allege that "Defendants accomplished their charade by issuing a series of false and misleading statements regarding the Company's forecasted earnings, compliance with the internal control requirements mandated by Sarbanes Oxley, and the ability to successfully hedge against the effects of nonperforming or otherwise impaired investments." AC ¶ 3. The AC then contains 196 paragraphs fleshing out these allegations and culminating in two claims for relief: (1) violation of § 10(b) of the Securities Exchange Act of 1934 and SEC Rule 10b-5 against all Defendants; and (2) violation of § 20(a) of the Securities Exchange Act of 1934 against the individual Defendants.

## II. Analysis

### Section 10(b) Claim

Section 10(b) of the Securities Exchange Act of 1934 forbids the "use or employ, in connection with the purchase or sale of any security…, [of] any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the [SEC] may prescribe as necessary or appropriate in the public interest or for the protection of investors." 15 U.S.C. § 78j(b). SEC Rule 10b-5 implements § 10(b) by declaring it unlawful:

(a) To employ any device, scheme, or artifice to defraud,

(b) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made…not misleading, or

(c) To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person, in connection with the purchase or sale of any security.

17 C.F.R. § 240.10b-5.

Under the heightened pleading requirements of the Private Securities Litigation Reform Act ("PSLRA"), any private securities complaint alleging that the defendant made a false or misleading statement must: (1) "specify each statement alleged to have been misleading [and] the reason or reasons why the statement is misleading," 15 U.S.C. § 78u-4(b)(1); and (2) "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind," § 78u-4(b)(2). *See Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 127 S.Ct. 2499, 2508 (2007); *see id.* at 2504 (PSLRA "requires plaintiffs to state with particularity both the facts constituting the alleged violation, and the facts evidencing scienter, i.e., the defendant's intention 'to deceive, manipulate, or defraud.'") (quoting *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 194 & n.12 (1976)). Even before *Tellabs*, in the Ninth Circuit plaintiffs were required to "plead, in great detail, facts that constitute strong circumstantial evidence of deliberately reckless or conscious misconduct." *In re Silicon Graphics Sec. Litig.*, 183 F.3d 970, 974 (9th Cir.), *reh'g & reh'g en banc denied*, 195 F.3d 521 (1999). In *Tellabs*, the Supreme Court took on the

2

"task...to prescribe a workable construction of the 'strong inference' standard" required by section 78u-4(b)(2). *See* 127 S.Ct. at 2509. In so doing, it laid out the following analytical construct.

As with any motion to dismiss for failure to plead a claim on which relief can be granted, the Court must accept all factual allegations in the complaint as true. *See Tellabs*, 127 S.Ct. at 2509. The Court must consider the complaint in its entirety, "as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Id.* The question "is whether *all* of the facts alleged, taken collectively, give rise to a strong inference of scienter, not whether any individual allegation, scrutinized in isolation, meets that standard." *Id.* (emphasis in original).

In determining whether a "strong" inference of scienter exists, "the court must take into account plausible opposing inferences." *Id.* This includes both "plausible nonculpable explanations for the defendant's conduct, as well as inferences favoring the plaintiff." *Id.* at 2510. However, "[t]he inference that the defendant acted with scienter need not be irrefutable, i.e., of the 'smoking-gun' genre, or even the 'most plausible of competing inferences." *Id.* But the inference of scienter must be more than merely "reasonable" or "permissible" – "it must be cogent and compelling." *Id.* A complaint survives "only if a reasonable person would deem the inference of scienter cogent and at least as compelling as any opposing inference one could draw from the facts alleged." *Id.* Elsewhere, the Court summarized this "strong inference" analysis as follows:

> It does not suffice that a reasonable factfinder plausibly could infer from the complaint's allegations the requisite state of mind. Rather, to determine whether a complaint's scienter allegations can survive threshold inspection for sufficiency, a court governed by § 21D(b)(2) must engage in a comparative evaluation; it must consider, not only inferences urged by the plaintiff...but also competing inferences rationally drawn from the facts alleged. An inference of fraudulent intent may be plausible, yet less cogent than other, nonculpable explanations for the defendant's conduct. To qualify as 'strong' within the intendment of § 21D(b)(2)...an inference of scienter must be more than merely plausible or reasonable – it must be cogent and at least as compelling as any opposing inference of nonfraudulent intent.

3

*Tellabs*, 127 S.Ct. at 2504-05; *see also id.* at 2513 ("A plaintiff alleging fraud in a § 10(b) action...must plead facts rendering an inference of scienter at least as likely as any plausible opposing inference.").

   With that analytical framework in mind, Plaintiffs' allegations (summarized as they must be given the overwhelming length of the AC) are that, despite the onset of the downturn in the national housing and mortgage markets, Defendants maintained that they were well-positioned, contrary to other players in the markets.  Plaintiffs contend that this was misleading and untrue for three general reasons:  1) IndyMac had inappropriately loosened its underwriting guidelines such that it had extended far riskier loans that were going into default at an increasing rate; 2) IndyMac had inadequately hedged against its risks; and 3) IndyMac had inadequate "internal controls."  In short, Plaintiffs assert that Defendants knew "both before and throughout the Class Period [that] IndyMac entered 2006 as a deeply troubled company that was plagued by profoundly flawed underwriting and hedging operations, and [was] crippled by deficient and inadequate internal controls."  AC ¶ 34.  At least thus far, however, Plaintiffs have failed to allege sufficient facts giving rise to a "strong inference" of scienter under *Tellabs*.

   In the AC, Plaintiffs have cited the beliefs and opinions of certain confidential witnesses with respect to the allegedly problematic areas of IndyMac's operations.  However, Plaintiffs have failed to allege that the individual Defendants shared these beliefs and opinions or even that they were aware of them and found them to be reliable and justified.  Had Plaintiffs sufficiently alleged the individual Defendants' knowledge and/or agreement with these assessments, the allegations (taken as true) might ordinarily have described a "cogent and compelling" case for their securities fraud action.  *See Nursing Home Pension Fund, Local 144 v. Oracle Corp.*, 380 F.3d 1226, 1228-29 (9th Cir. 2004) (statements about Oracle's continued growth despite decline U.S. economy sufficient to state claim for securities fraud where, at time statements were made, CEO sold more than 29 million shares for almost $900 million and CFO sold 1 million shares for a per-share profit of approximately $31).

   Plaintiffs point to statements made in a January 25, 2007 press release and an earnings conference call that same day, the end of the class period.  *See* AC ¶¶ 5-7, 142-44.

4

Those statements certainly admit mistakes, but this is a fraud case, not a mismanagement case. They fall well short of evidencing a "strong inference" of the necessary intent for Plaintiffs to be able to maintain the instant action. Similarly, Plaintiffs focus on financial statements reflecting fourth quarter 2006 increases in "loan loss provision[s]" and "charge-offs, net of recoveries" and a drastic increase in "secondary market reserves" for the first quarter of 2007. *See* AC ¶ 8. Plaintiffs cite these financial statement numbers as, respectively, "[f]urther evidence of IndyMac's internal control problems" and "a clear indication Defendants knew a significant portion of the loans they had sold on the secondary market during the Class Period were troubled when made and would need to be repurchased. *Id.* However, an even stronger inference is that Defendants were simply unable to shield themselves as effectively as they anticipated from the drastic change in the housing and mortgage markets and, once that inability became evident, IndyMac's financials were changed accordingly.

Plaintiffs also make generalized allegations such as "[t]he Company's policy of 'pushing through' unqualified loans evidences a Company-wide knowledge of IndyMac's underwriting problems" and that other problems were "obviously known to Defendants." *See, e.g.*, AC ¶¶ 55, 68. These types of allegations are insufficiently particularized to demonstrate the individual Defendants' scienter.

Another way that Plaintiffs might have shown scienter would have been to show the sale of stock by the executives alleged to have made false statements. If those individuals sold unusually large amounts of stock before bad news came to light, this is evidence that the executives knew about the bad news before the public did, and thus it is evidence that contemporaneous rosy statements made by the executives were made with scienter. *See, e.g., In re Worlds of Wonder Sec. Litig.*, 35 F.3d 1407, 1424-25 (9th Cir. 1994), *cert. denied sub nom. Miller v. Pezzani*, 516 U.S. 868 (1995).[1] *Tellabs* confirms this, while noting that the absence of such sales is not conclusive because allegations are to be considered "collectively." *Tellabs*, 127 S.Ct. at 2511. "[P]ersonal financial gain may weight heavily in favor of a scienter inference, [but] the absence of a motive allegation is

---

[1] Any sales by a non-defendant are irrelevant. *See Plevy v. Haggerty*, 38 F. Supp. 2d 816, 834 n.12 (C.D. Cal. 1998); AC ¶ 152 n.7 (referencing sales by non-defendant).

not fatal." *Id.* Plaintiffs theorize that the individual Defendants made the false and misleading statements in an effort to capitalize on the inflated stock price.

Here, however, the individual Defendants retained such a large percentage of their stock[2] that an inference of scienter is functionally negated at least as to Perry and Keys, who sold no stock whatsoever. *See* Motion at 6:25-7:16; *see also Silicon Graphics*, 183 F.3d at 986-87; *Ronconi v. Larkin*, 253 F.3d 423, 435-36 (9th Cir. 2001); *In re FVC.com Sec. Litig.*, 136 F.Supp.2d 1031, 1039 (N.D. Cal. 2000), *aff'd*, 32 Fed. Appx. 338 (9th Cir. 2002). Plaintiffs point to the fact that Abernathy sold stock for $1,735,566 allegedly as the result of the alleged inflation of IndyMac stock during the class period. *See* AC ¶¶ 12, 152-54. At the very best for Plaintiffs, therefore, a cogent and compelling case could be made only against Abernathy.

However, Defendants contend that even Abernathy's sales do not give rise to a "strong inference" of scienter, citing *Silicon Graphics*, 183 F.3d at 986-87 and *In re Vantive Corp. Sec. Litig.*, 283 F.3d 1079, 1094-95 (9th Cir. 2002). Those cases confirm the rule that insider trading is suspicious only when it is "dramatically out of line with prior trading practices at times calculated to maximize personal benefit from undisclosed inside information." *In re Apple Computer Sec. Litig.*, 886 F.2d 1109, 1117 (9th Cir. 1989), *cert. denied sub nom. Schneider v. Apple Computer, Inc.*, 496 U.S. 943 (1990). This analysis takes into consideration three factors: 1) the amount and percentage of shares sold; 2) the timing of the sales; and 3) consistency with prior trading history. *See Nursing Home Pension Fund, Local 144 v. Oracle Corp.*, 380 F.3d 1226, 1232 (9th Cir. 2004). In their Opposition, Plaintiffs have not disputed Defendants' assertion that Abernathy's sales were relatively small given his overall holdings and less than half of what he had sold in the preceding year. At Abernathy's trading levels, even his sales activity does not give rise to a "strong inference."

The violation of General Accepted Accounting Principles ("GAAP") can also provide evidence of scienter. *See Sparling v. Daou (In re Daou Sys., Inc., Sec. Litig.)*, 411

---

[2] Defendants contend that, taken together, the individual defendants sold only 1.2% of the shares they owned. As Defendants point out in their Reply, Plaintiffs did not object to any part of Defendants' Request for Judicial Notice.

6

F.3d 1006, 1016 (9th Cir. 2005), *cert. denied sub nom. Daou Sys., Inc. v. Sparling*, 546 U.S. 1172 (2006). However, Plaintiffs must first show that there was a GAAP violation and, as Defendants point out, IndyMac's financials have been audited without restatement. *See* Motion at 4:10-12. "Plaintiff must prove that the accounting practices were so deficient that the audit amounted to no audit at all, or an egregious refusal to see the obvious, or to investigate the doubtful, or that the accounting judgments which were made were such that no reasonable accountant would have made the same decisions if confronted with the same facts." *Worlds of Wonder*, 35 F.3d at 1426. In other words, Plaintiffs are required to specifically plead facts strongly supporting a finding of scienter, but have failed to plead facts regarding GAAP accounting which would strongly support such a finding.

Finally, contrary to Plaintiffs suggestion in their Opposition, Ninth Circuit precedent holds that mere "motive and opportunity to enhance a company's business prospects" is a generic motive and thus does not constitute a specific pleading of scienter under the PSLRA. *Lipton v. Pathogenesis Corp.*, 284 F.3d 1027, 1038 (9th Cir. 2002).

Whether the required standard is knowing falsity or deliberate recklessness,[3] *see* Opposition at 2:5-19, 7:3-7, as of this time Plaintiffs have not made out a cogent and compelling case sufficient to satisfy the standard recognized in *Tellabs*.

Safe Harbor

Under the PSLRA, there is a safe harbor for forward-looking statements accompanied by cautionary statements. *See* 15 U.S.C. § 78u-5(c). Although the parties spend a significant number of pages discussing the safe harbor, the analysis is not in sufficiently concrete terms for the Court to determine whether, in particular instances, the cautionary statements were sufficient. *See The WU Group v. Synopsys, Inc.*, 2005 U.S. Dist. LEXIS 42351, at *36 (N.D. Cal. Aug. 10, 2005) (indicating that 12(b)(6) motion too early in the case to decide safe harbor defense). If Plaintiffs further amend the AC to explicitly delineate the allegedly false/misleading statements (and perhaps to limit them to

---

[3] In the Ninth Circuit, a showing of deliberate recklessness (meaning "some degree of intentional or conscious misconduct") is satisfactory. *See Silicon Graphics*, 183 F.3d at 974, 979. In *Tellabs*, the Supreme Court pointedly refused to consider whether (and to what degree) recklessness might suffice in demonstrating scienter. *See* 127 S.Ct. at 1507 n.3.

Abernathy if he is the only arguably viable individual Defendant), the Court can more appropriately address Defendants' safe harbor arguments, including which statements even qualify for protection under the safe harbor. As noted above, at this point, at the very least, Plaintiffs' allegations of Defendants' "actual knowledge of falsity" (if the Court needs to reach that prong of the safe harbor analysis) are clearly insufficient. *See, e.g., Zack v. Allied Waste Indus.*, 2005 U.S. Dist. LEXIS 35323, at *36-40 (D. Ariz. Dec. 15, 2005); *In re Northpoint Commc'ns. Group, Inc. Sec. Litig.*, 184 F.Supp.2d 991, 997-98 (N.D. Cal. 2001). As Defendants point out, none of the confidential witnesses to whom Plaintiffs point offer any information as to the "actual knowledge" of any Defendant. Moreover, Plaintiffs would appear to have a hard time convincing the Court that the safe harbor warnings employed here (at least as reflected in Defendants' Opposition) were the type of "blanket" or "boilerplate" warnings discounted in *In re 2TheMart.com, Inc. Sec. Litig.*, 114 F.Supp.2d 955, 963 (C.D. Cal. 2000).[4]

Section 20(a) Claim

Both sides agree that Plaintiffs' Section 20(a) claims rises and falls with its 10(b) and 10b-5 claim.

Amendment

Defendants do not explain why further amendment to the AC would be futile. Therefore, leave to amend is granted. *See Nursing Home*, 380 F.3d at 1229 ("A complaint should not be dismissed unless it appears beyond doubt that the plaintiff cannot prove any set of facts that would entitle him or her to relief."). However, if Plaintiffs choose to amend, the Court will require that any further amendment greatly simplify the operative pleading by clearly identifying only those statements that are alleged to be false or misleading and (briefly, but specifically), stating why.

---

[4] In the future when litigating this issue, the parties should clearly set out 1) the statement alleged to be false or misleading and which falls under the safe harbor provision and 2) the corresponding cautionary statement.