Ramzi Abadou (Bar No. 222567)
Erik D. Peterson (Bar No. 257098)
BARROWAY TOPAZ KESSLER
 MELTZER & CHECK, LLP
580 California Street, Suite 1750
San Francisco, CA  94104
Phone: (415) 400-3000
Fax: (415) 400-3001

Christopher L. Nelson (*Pro Hac Vice*)
Lauren Wagner Pederson (*Pro Hac Vice*)
John J. Gross (*Pro Hac Vice*)
BARROWAY TOPAZ KESSLER
 MELTZER & CHECK, LLP
280 King of Prussia Road
Radnor, PA  19087
Phone: (610) 667-7706
Fax: (610) 667-7056

*Lead Counsel for Plaintiffs*

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| WAYMAN TRIPP and SVEN MOSSBERG, Individually and on Behalf of all Others Similarly Situated, <br><br> Plaintiffs, <br><br> v. <br><br> INDYMAC BANCORP, INC. and MICHAEL W. PERRY, <br><br> Defendants. | Case No. 07-CV-1635-GW (VBK) <br><br> LEAD PLAINTIFFS' OPPOSITION TO MICHAEL W. PERRY'S MOTION TO DISMISS THE FIFTH AMENDED CONSOLIDATED COMPLAINT <br><br> Hearing Date: December 10, 2009 <br> Time:        8:30 a.m. <br> Courtroom:   10 <br> Judge:       Hon. George H. Wu |

# TABLE OF CONTENTS

Page

I.    INTRODUCTION ..................................................................................... 1

II.   LEGAL STANDARD .............................................................................. 3

III.  ARGUMENT ............................................................................................ 5

    A.    THE FIFTH AMENDED COMPLAINT ADEQUATELY
        PLEADS LOSS CAUSATION.............................................................. 5

        1.    IndyMac's March 1, 2007 Letter on Form 8-K
              Finally Revealed the Full Extent of Perry's Prior
              False Statements ...................................................................... 5

        2.    The Share Price Declines Plaintiffs Allege Are
              "Significant" Under Dura .................................................... 11

        3.    Perry's Reliance on "Market Conditions" is a Poor
              Excuse for His Knowing Misconduct......................................... 14

    B.    PERRY'S FRAUDULENT MISSTATEMENTS ARE
        MATERIAL ....................................................................................... 15

IV.   CONCLUSION ....................................................................................... 18

1

## <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

**FEDERAL CASES**

4

*Atlas v. Accredited Home Lenders Holding Co.*,
5
   556 F. Supp. 2d 1142 (S.D. Cal. 2008) ......................................................*passim*

6

*Basic Inc. v. Levinson*,
   485 U.S. 224 (1988) .........................................................................................16
7

8

*Caremark, Inc. v. Coram Healthcare Corp.*,
   113 F.3d 645 (7th Cir. 1997) ..........................................................................9
9

10

*Conn. Ret. Plans and Trust Funds v. Amgen, Inc.*,
   2009 U.S. Dist. LEXIS 71653 (C.D. Cal. 2009) .............................................9

11

*Dura Pharm., Inc. v. Broudo*,
12
   544 U.S. 336 (2005) .................................................................................*passim*

13

*ECA and Local 134 IBEW Joint Pension Trust of Chi. v. JP Morgan Chase*
14
   *Co.*,
   553 F.3d 187 (2d Cir. 2009) ...........................................................................17
15

16

*Fecht v. Price Co.*,
   70 F.3d 1078 (9th Cir. 1995) ..........................................................................16
17

18

*Forsyth v. Humana, Inc.*,
   114 F.3d 1467 (9th Cir. 1997) ........................................................................6
19

20

*Freeland v. Iridium World Commc'ns*,
   233 F.R.D. 40 (D.D.C. 2006) ......................................................................4, 8

21

*Ganino v. Citizens Utils. Co.*,
22
   228 F.3d 154 (2d Cir. 2000) ......................................................................17, 18

23

*Gebhardt v. ConAgra Foods, Inc.*,
24
   335 F.3d 824 (8th Cir. 2003) ..........................................................................17

25

*Goldman v. Belden*,
   754 F.2d 1059 (2d Cir. 1985) .....................................................................15, 18
26

27

28

*Hason v. Medical Bd.*,
    279 F.3d 1167 (9th Cir. 2002) ............................................................................ 8

*Hubbard v. BankAtlantic Bancorp, Inc.*,
    625 F. Supp. 2d 1267 (S.D. Fla. 2008) ............................................................ 13

*In re Amgen Inc. Sec. Litig.*,
    544 F. Supp. 2d 1009 (C.D. Cal. 2008) ............................................................ 14

*In re Bradley Pharm., Inc. Sec. Litig.*,
    421 F. Supp. 2d 822 (D.N.J. 2006) ........................................................... 1, 2, 11

*In re Charles Schwab Corp. Sec. Litig.*,
    257 F.R.D. 534 (N.D. Cal. 2009) ..................................................................... 13

*In re Cooper Cos. Sec. Litig.*,
    254 F.R.D. 628 (C.D. Cal. 2009) (Carney, J.) ................................................... 1

*In re Countrywide Fin. Corp. Derivative Litig.*,
    554 F. Supp. 2d 1044 (C.D. Cal. 2008) ...................................................... 17, 18

*In re Countrywide Fin. Corp. Sec. Litig.*,
    588 F. Supp. 2d ........................................................................................*passim*

*In re Daou Sys., Inc. Sec. Litig.*,
    411 F.3d 1006 (9th Cir. 2005) ................................................................ 4, 6, 7, 9

*In re DDi Corp. Sec. Litig.*,
    2005 U.S. Dist. LEXIS 28216 (C.D. Cal. 2005) ....................................... 16, 17

*In re Dura Pharm., Inc. Sec. Litig.*,
    452 F. Supp. 2d 1005 (S.D. Cal. 2006) .............................................................. 5

*In re Gilead Scis. Sec. Litig.*,
    536 F.3d 1049 (9th Cir. 2008) ........................................................................... 6

*In re Immune Response Sec. Litig.*,
    375 F. Supp. 2d 983 (S.D. Cal. 2005) ........................................................... 5, 6

*In re Maxim Integrated Prods., Inc.*,
    2009 U.S. Dist. LEXIS 60940 (N.D. Cal. 2009) ............................................... 9

*In re Motorola Sec. Litig.*,
    505 F. Supp. 2d 501 (N.D. Ill. 2007).............................................................3, 4, 8

*In re Mut. Funds Inv. Litig.*,
    566 F.3d 111 (4th Cir. 2009) ................................................................................4

*In re Nature's Sunshine Prods. Sec. Litig.*,
    486 F. Supp. 2d 1301 (D. Utah 2007) ...............................................................18

*In re New Century*,
    588 F. Supp. 2d 1206 (C.D. Cal. 2008)......................................................*passim*

*In re Openwave Sys. Sec. Litig.*,
    528 F. Supp. 2d 236 (S.D.N.Y. 2007) ...............................................................12

*In re Oxford Health Plans, Inc., Sec. Litig.*,
    187 F.R.D. 133 (S.D.N.Y. 1999).........................................................................16

*In re PMI Group, Inc. Sec. Litig.*,
    2009 U.S. Dist. LEXIS 101582 (N.D. Cal. 2009)................................................2

*In re PMI Group, Inc. Sec. Litig.*,
    2009 U.S. Dist. LEXIS 56709 (N.D. Cal. 2009)............................................9, 12

*In re Shoretel Inc. Sec. Litig.*,
    2009 U.S. Dist. LEXIS 11151 (N.D. Cal. 2009)..................................................5

*In re StockerYale Sec. Litig.*,
    453 F. Supp. 2d 345 (D.N.H. 2006) ................................................................4, 15

*In re UTStarcom, Inc. Sec. Litig.*,
    617 F. Supp. 2d 964 (N.D. Cal. 2009) (N.D. Cal. 2009)) ................................5, 6

*In re Wash. Mut., Inc. Sec., Derivative & ERISA Litig.*,
    2009 U.S. Dist. LEXIS 41575 (W.D. Wash. 2009) .......................................4, 15

*In re Winstar Commc'ns.*,
    2006 U.S. Dist. LEXIS 7618 (S.D.N.Y. 2006) ..................................................12

*In re WorldCom, Inc. Sec. Litig.*,
    294 F. Supp. 2d 392 (S.D.N.Y. 2003) ..................................................................2

*Lalor v. Omtool, Ltd.*,
    2000 U.S. Dist. LEXIS 18675 (D.N.H. 2000)........................................................9

*Lentell v. Merrill Lynch & Co.*,
    396 F.3d 161, 173, 177 (2d Cir. 2005) ............................................................13

*Lormand v. US Unwired, Inc.*,
    565 F.3d 228 (5th Cir. 2009) ............................................................................4

*Loux v. Rhay*,
    375 F.2d 55, 57 (9th Cir. 1967) ........................................................................6

*Metzler Inv. GMBH v. Corinthian Colls., Inc.*,
    540 F.3d 1049 (9th Cir. 2008) ...................................................................4, 6, 9

*Norfolk County Ret. Sys. v. Ustian*,
    2009 U.S. Dist. LEXIS 65731 (N.D. Ill. 2009) ..................................................2

*Novak v. Kasaks*,
    216 F.3d 300 (2d Cir. 2000) ..........................................................................16

*Palsgraf v. Long Island R.R. Co.*,
    248 N.Y. 339, 352, 162 N.E. 99 (1928) ..............................................................2

*Pirraglia v. Novell, Inc.*,
    339 F.3d 1182 (10th Cir. 2003) ......................................................................16

*Robbins v. Koger Props.*,
    116 F.3d 1441, 1447 n.5 (11th Cir. 1997) ..........................................................4

*SEC v. Phan*,
    500 F.3d 895 (9th Cir. 2007) ..........................................................................16

*Siracusano v. Matrixx Initiatives, Inc.*,
    2009 U.S. App. LEXIS 23716 (9th Cir. 2009)..............................................2, 15

*Steiner v. MedQuist Inc.*,
    2006 U.S. Dist. LEXIS 71952 (D.N.J. 2006) ....................................................11

*Teamsters Local 445 Freight Div. Pension Fund v. Bombardier Inc.*,
    2005 U.S. Dist. LEXIS 19506 (S.D.N.Y. 2005) ..................................................7

*Teamsters Local 617 Pension and Welfare Funds v. Apollo Group, Inc.*,
    633 F. Supp. 2d 763 (D. Ariz. 2009) ............................................................7, 13

*TSC Indus., Inc. v. Northway, Inc.*,
    426 U.S. 438 (1976) .......................................................................................16


**RULES**

Fed. R. Civ. P. 8.................................................................................................7

Fed. R. Civ. P. 8(a)(2).......................................................................................3

Fed. R. Civ. P. 12(b)(6) ...............................................................................8, 15

Fed. R. Civ. P. 56.............................................................................................15


**OTHER AUTHORITIES**

Madge S. Thorsen, *et al.*, *Rediscovering the Economics of Loss Causation* ............3

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# I.  INTRODUCTION

Michael W. Perry ("Perry") advances two arguments in support of his Motion to Dismiss Plaintiffs' Fifth Amended Class Action Complaint (the "Motion to Dismiss") – (i) loss causation; and (ii) materiality.[1]  Both arguments lack merit. Perry's Motion to Dismiss should therefore be denied and this case should proceed to discovery for an accounting of Perry's wrongdoing on the merits.

At the outset, lead plaintiffs Wayman Tripp and Sven Mossberg ("Plaintiffs") respectfully ask the Court to look beyond Perry's "rigid and dogmatic [] interpretation of *Dura*" in finding loss causation adequately pled here.  *In re Bradley Pharm., Inc. Sec. Litig.*, 421 F. Supp. 2d 822, 828 (D.N.J. 2006).  While Perry may choose to characterize loss causation as an "***essential component*** of a federal securities fraud claim," the concept is not nearly as burdensome as Perry suggests. MTD at 1.[2]  Loss causation, like scienter, materiality and falsity, is just another element of Plaintiffs' Section 10(b) cause of action.[3]  It is no more "essential" than any other element of Plaintiffs' securities fraud claim.  "Loss causation is [merely] the bridge between reliance and actual damages, akin to proximate causation in a tort action." *In re Cooper Cos. Sec. Litig.*, 254 F.R.D. 628, 638 (C.D. Cal. 2009)

---

[1]    Citation to the Motion to Dismiss is rendered as "MTD at __."  Citation to Plaintiffs' Fifth Amended Class Action Complaint (the "Complaint") is rendered as "¶__."  Plaintiffs incorporate by reference their arguments previously set forth in their Opposition to Defendants' Motion to Dismiss Plaintiffs' Fourth Amended Class Action Complaint (Docket No. 173) and Plaintiffs' Response to Perry's Supplemental Memorandum in Support of his Motion to Dismiss the Fourth Amended Complaint (Docket No. 188).  "IndyMac" or the "Company" refer to IndyMac Bancorp., Inc.

[2]    Unless otherwise noted, all emphasis is added and internal citations are omitted.

[3]    The Court has already found that Plaintiffs have adequately pled every other element of their Section 10(b) cause of action.

(Carney, J.).  "Guided by a pragmatic understanding of *Dura,* the Court [should] conclude[] that Plaintiffs have adequately pled loss causation."[4]  *Bradley*, 421 F. Supp. 2d at 828; *see In re PMI Group, Inc. Sec. Litig.*, 2009 U.S. Dist. LEXIS 101582, at *11 (N.D. Cal. 2009) ("[T]he Ninth Circuit has recently emphasized that a plaintiff must only allege facts that, if taken as true, plausibly establish loss causation.").

Perry's "materiality" argument is similarly unfounded.  First, the Court has already found that Perry's intentionally false and misleading Class Period statements were material.  The Court, for instance, stated that its May 2009 loss causation ruling applied to Plaintiffs' "claim against Perry in regards to his ***materially*** false and/or reckless statements as to IndyMac's underwriting standards and internal controls." September 14, 2009, Transcript of Proceedings at 6.  Second, Perry's effort to resurrect this non-issue as one that should be decided as a matter of law, now – two years after Plaintiffs filed their first amended complaint – is improvident and lacks foundation.  *See Siracusano v. Matrixx Initiatives*, *Inc.*, 2009 U.S. App. LEXIS 23716, at *28 (9th Cir. 2009) ("[d]etermining materiality in securities fraud cases should ordinarily be ***left to the trier of fact***").

_____

[4]    Perry's suggestion that loss causation has "two elements" is inaccurate.  *See* MTD at 1 (announcing "The Two Elements of Loss Causation.").  Loss causation is ***itself*** an element of a securities fraud claim.  *See Norfolk County Ret. Sys. v. Ustian*, 2009 U.S. Dist. LEXIS 65731, at *19-*20 n.4 (N.D. Ill. 2009) (rejecting Perry's proposed pleading rules).  Perhaps Perry meant loss causation has two "prongs."  *See id*.  Regardless, loss causation is best understood as being akin to the tort law principle of proximate causation.  *See Dura Pharm., Inc. v. Broudo*, 544 U.S. 336, 344 (2005) (noting "common-law roots of the securities fraud action"); *In re WorldCom, Inc. Sec. Litig.*, 294 F. Supp. 2d 392, 413 (S.D.N.Y. 2003) ("Loss causation is akin to the concept of 'proximate cause' in tort law, 'meaning that in order for the plaintiff to recover[,] it must prove the damages it suffered were a foreseeable consequence of the misrepresentation.'") (citing *Palsgraf v. Long Island R.R. Co.*, 248 N.Y. 339, 352, 162 N.E. 99 (1928) (Cardozo, J.)).

## II.  LEGAL STANDARD

*Dura* holds that, to plead loss causation, all a plaintiff need do is "provide a defendant with some indication of the loss and the causal connection that the plaintiff has in mind." 544 U.S. at 347.[5]  Under *Dura*, pleading loss causation is "not meant to impose a great burden upon a plaintiff" and simply requires a plaintiff to provide a short and plain statement in accordance with Fed. R. Civ. P. 8(a)(2) setting forth what the relevant loss "***might be***" and "what the causal connection ***might be*** between" the plaintiff's loss and defendants' misconduct.  *Dura*, 544 U.S. at 347; *see also* Madge S. Thorsen, *et al.*, *Rediscovering the Economics of Loss Causation*, 6 J. BUS. & SEC. L. 93, 118 (2006) ("The Court [in *Dura*] did not say (or even imply) that 'truth, then price drop' was to become the only test of loss causation.").

"As stated by the Supreme Court[,] this requirement, which should not prove burdensome for a plaintiff, may be satisfied by alleging (1) that the plaintiff paid an artificially inflated price for the company's stock and (2) that the stock price fell after the truth became known regarding the defendant's misrepresentations."[6]  *Atlas v. Accredited Home Lenders Holding Co*., 556 F. Supp. 2d 1142, 1157 (S.D. Cal. 2008).  Indeed, in *Dura*, unlike here, the plaintiff alleged economic harm merely by

---

[5]    Here, Perry clearly understands the causal connection Plaintiffs have in mind.  *Compare* MTD at 3 ("The 5AC alleges that Perry's statement . . . about IndyMac having 'loosened its lending standards' was a corrective disclosure that revealed that Perry's earlier underwriting statements were false and misleading."), *with* ¶¶7-10, 18, 191.

[6]    Perry asks the Court to weigh purported evidence that might later be required to ***prove*** (not plead) loss causation.  *See* MTD at 7-11.  In addition to the fact that Plaintiffs lack the benefit of discovery with which to test Perry's purported evidentiary submissions, proof of loss causation is something the Supreme Court in *Dura* declined to address.  *See* 544 U.S. at 346 ("We need not, and do not, consider other proximate cause or loss-related questions."); *In re Motorola Sec. Litig*., 505 F. Supp. 2d 501, 538 (N.D. Ill. 2007) ("Significantly . . . ***Dura did not address what is required beyond the pleading stage***.").

virtue of price inflation caused by defendants' fraud. 544 U.S. at 347. Addressing the narrow question whether an "allegation of purchase price inflation **alone**" (*id.*) sufficiently pleads loss causation, the Supreme Court found that it did not. *See In re Daou Sys., Inc. Sec. Litig.*, 411 F.3d 1006, 1026-27 (9th Cir. 2005) (explaining *Dura*), *cert. denied*, 546 U.S. 1172 (2006); *In re New Century*, 588 F. Supp. 2d 1206, 1238 n.27 (C.D. Cal. 2008) (distinguishing *Metzler*).

Moreover, "loss causation may be pleaded on the theory that the truth gradually emerged through a series of partial disclosures and that an entire series of partial disclosures caused the stock price deflation." *Lormand v. US Unwired, Inc.*, 565 F.3d 228, 260-61 (5th Cir. 2009) (citing *Metzler Inv. GMBH v. Corinthian Colls., Inc.*, 540 F.3d 1049, 1063 n.6 (9th Cir. 2008); *Daou*, 411 F.3d at 1026-27 (listing cases)); *New Century*, 588 F. Supp. 2d at 1236; *Freeland v. Iridium World Commc'ns*, 233 F.R.D. 40, 47 (D.D.C. 2006); *Motorola*, 505 F. Supp. 2d at 533; *In re StockerYale Sec. Litig.*, 453 F. Supp. 2d 345, 359 (D.N.H. 2006). This is true even if the decline is due, in part, to factors **other than** the disclosure event itself. *See In re Countrywide Fin. Corp. Sec. Litig.*, 588 F. Supp. 2d 1132, 1174 (C.D. Cal. 2008); *Accredited Home*, 556 F. Supp. 2d at 1157; *In re Wash. Mut., Inc. Sec., Derivative & ERISA Litig.*, 2009 U.S. Dist. LEXIS 41575, at *53 (W.D. Wash. 2009).

The entire decline may still constitute economic loss/damage, so long as the negative disclosure events were a "substantial factor" in causing the decline. *Daou*, 411 F.3d at 1025. "That is, 'as long as the misrepresentation is **one substantial cause** of the investment's decline in value, other contributing forces will not bar recovery under the loss causation requirement.'" *In re Mut. Funds Inv. Litig.*, 566 F.3d 111, 128 (4th Cir. 2009) (quoting *Robbins v. Koger Props.*, 116 F.3d 1441, 1447 n.5 (11th Cir. 1997)). It need not be, as Perry suggests, the **only** factor. MTD at 3; *see Daou*, 411 F.3d at 1025. Ultimately, because Plaintiffs do much more than plead an inflated purchase price alone, the Complaint, respectfully, should be

deemed *Dura* compliant.[7]  *See* ¶¶160-190; *UTStarcom*, 617 F. Supp. 2d at 977-78; *In re Immune Response Sec. Litig*., 375 F. Supp. 2d 983, 1025 (S.D. Cal. 2005).[8]

## III.  ARGUMENT

### A.    THE FIFTH AMENDED COMPLAINT ADEQUATELY PLEADS LOSS CAUSATION

#### 1.    IndyMac's March 1, 2007 Letter on Form 8-K Finally Revealed the Full Extent of Perry's Prior False Statements

Despite the foregoing, Perry contends that the Complaint fails to plead loss causation because: (i) the partial disclosures pled in the Complaint do not correct the falsity of Perry's prior statements (MTD at 3-10); (ii) the stock drops were not "significant" (*id*. at 3); and (iii) "market conditions" were the sole reason for the share price decline (*id*. at 12-14).  Perry's boilerplate arguments are intended to obfuscate the real issues before the Court.  *See, e.g*., *Countrywide*, 588 F. Supp. 2d at 1174 ("***The Court will not be distracted by . . . macroeconomic arguments***.");  *Accredited Home*, 556 F. Supp. 2d at 1157; *New Century*, 588 F. Supp. 2d at 1236 (***a plaintiff need not plead "a fact-for-fact corrective disclosure to sufficiently allege loss causation***").  The Complaint pleads what *Dura* and courts in this Circuit require to adequately allege loss causation.[9]  *See Metzler*, 540 F.3d 1049; *In re Gilead Scis*.

---

[7]    Defendant's citation to *Shoretel* (MTD at 2) is unavailing for the reasons set forth in *UTStarcom*.  *See In re UTStarcom, Inc. Sec. Litig*., 617 F. Supp. 2d 964, 977-78 (N.D. Cal. 2009) (distinguishing *In re Shoretel Inc. Sec. Litig.*, 2009 U.S. Dist. LEXIS 11151 (N.D. Cal. 2009)).

[8]    Notably, on remand, the *Dura* complaint was sustained on loss causation grounds.  *See In re Dura Pharm., Inc. Sec. Litig*., 452 F. Supp. 2d 1005, 1031 (S.D. Cal. 2006).

[9]    Perry claims that Plaintiffs have improperly "change[d] their story" by alleging a modified Class Period ending on March 1, 2007, rather than on January 25, 2007 as previously alleged.  MTD at 3.  Defendant's claim is meritless.  First, it is well-established that a plaintiff is not bound by allegations raised in a prior

*Sec. Litig.*, 536 F.3d 1049 (9th Cir. 2008), *cert. denied*, 129 S. Ct. 1993 (2009); *Daou*, 411 F.3d at 1026-27.

Plaintiffs: (i) describe how Perry's fraudulent scheme artificially inflated IndyMac's stock price (*see, e.g.*, ¶¶116-159); (ii) identify the artificial inflation coming out of the stock as the truth was revealed (*see, e.g.*, ¶¶160-192); (iii) connect those disclosures to defendants' misrepresentations and omissions (*see id.*); and (iv) specify the resulting percentage and dollar amount losses in the value of IndyMac stock following the disclosures as the artificial inflation came out of the Company's stock price (*id.* at ¶171 (7% drop); ¶188 (7.35% drop); ¶192 (6.32% drop)). This is precisely the type of allegation of loss and causal nexus contemplated by *Dura* and its progeny. *See UTStarcom*, 617 F. Supp. 2d at 977-78; *Immune Response*, 375 F. Supp. 2d at 1025.

More specifically, Plaintiffs allege that Perry knowingly misrepresented IndyMac's growth and stability resulting from the purported quality and success of the Company's strong internal controls and "sound" underwriting. *See* ¶¶29-159. Then, on March 1, 2007, Plaintiffs allege that Perry disclosed, for the first time, that the Company had actually "loosened its lending standards" during the Class Period. *See* ¶¶18, 162. As a result of this disclosure alone, the Company's stock price dropped 6.32% that day.[10] *Id.* at ¶¶19, 163, 192. These simple, well-pled allegations

___

iteration of a complaint. *See Forsyth v. Humana, Inc.*, 114 F.3d 1467, 1474 (9th Cir. 1997) (an "amended complaint supersedes the original, the latter being treated thereafter as non-existent") (quoting *Loux v. Rhay*, 375 F.2d 55, 57 (9th Cir. 1967)). Second, the Class Period was modified at the express suggestion of the Court. *See* September 24, 2009, Transcript of Proceedings at 13, 24-25; May 11, 2009, Transcript of Proceedings at 37. Nor does Perry's gripe square with his own motions to dismiss Plaintiffs' case, which constantly evolve to offer new grounds for dismissal (*e.g.,* materiality).

[10]    Notably, on February 26, 2009, the Office of the Inspector General, Department of the Treasury Audit Report concluded that IndyMac, in fact, "did ***not***

are consistent with both Fed. R. Civ. P. 8 and *Dura* and stand in stark contrast to Perry's suggestion that Plaintiffs have pled no facts that show that the market reacted negatively to Perry's Class Period disclosures. *See Teamsters Local 445 Freight Div. Pension Fund v. Bombardier Inc.*, 2005 U.S. Dist. LEXIS 19506, at *57 (S.D.N.Y. 2005) (loss causation adequately pleaded where complaint alleged "defendants' misrepresentations regarding rigorous underwriting concealed the fact that the collateral pool contained a substantial number of high risk loans" and that "concealed risk [of loan defaults] materialized"); *Teamsters Local 617 Pension and Welfare Funds v. Apollo Group, Inc.*, 633 F. Supp. 2d 763, 823-24 (D. Ariz. 2009). Plaintiffs not only plead such facts, they plead far more.

Plaintiffs also allege that, over the course of approximately two months, as investors learned the full extent of Perry's scheme, IndyMac's stock lost more than *20%* of its value – even in the face of Perry's public denials and half-truths as the story unfolded. *See, e.g.*, ¶166 ("The foregoing statements, while leaking portions of the truth concealed during the Class Period, were still knowingly or recklessly materially false and misleading because they failed to fully disclose weaknesses in IndyMac's internal/operational controls."); ¶¶171, 188, 192. The cumulative effect of these disclosures, Plaintiffs allege, caused losses to Plaintiffs and the putative class. ¶¶158-163 (IndyMac's stock price dropped from its trading high of $50.11 in May 2006 to $32.16 in March 2007). With Perry's three revelations slowly leaking the truth about IndyMac's and his own prior Class Period misstatements, investors clearly understood that there were serious problems with IndyMac's underwriting standards and true financial health – the heart of Plaintiffs' allegations. *See Daou*, 411 F.3d at 1026 (allegations that disclosures revealed the company's "true financial health" satisfy *Dura*); ¶¶165-192.

---

perform adequate underwriting" despite Perry's statements to the contrary during the Class Period. *See* ¶195.

While Perry refuses to credit these partial disclosures and their corresponding losses in the aggregate, "reading *Dura* to require proof of a complete, corrective disclosure" "resulting in a large price decline . . . ***would allow wrongdoers to immunize themselves with a protracted series of partial disclosures***." *Freeland*, 233 F.R.D. at 47.  And this is precisely what Perry seeks to do here.  *See id*.  For instance, Perry seeks to evade liability by pointing to a Foxx-Pitt, Kelton ("Foxx") analyst report issued during the Class Period.  *See* MTD at 9-10.  According to Perry, Foxx concluded that, in 2008, IndyMac would "still be a viable, ***growing and sound*** company."  *Id*.  Given IndyMac's operations being seized by the FDIC and its subsequent bankruptcy only a short time later, perhaps the Foxx analyst was simply at the time relying on Perry's false Class Period reassurance that IndyMac would emerge from the market turmoil as a ***stable and growing*** company whose underwriting was "***sound***."  *See* ¶¶6, 174.

Perry should not be rewarded for misleading the market (including the Foxx analyst) while simultaneously leaking the bad news in a series of partial disclosures.[11]  *See Motorola*, 505 F. Supp. 2d at 544 ("Defendants' proposed rule would provide an expedient mechanism for wrongdoers to avoid securities fraud liability.").  In other words, Perry, "mindful of [his] wrongdoing, eased the stock back down into a more accurate and realistic trading range by issuing a series of negative (but not entirely accurate) press releases designed to accomplish that goal, without

---

[11]    Notably, the Lehman Brothers analyst cited in the Complaint seems to have peered through Perry's half-truths when he noted that IndyMac's "***management team lost some credibility***" as a result of the Company's January 25, 2007 disclosure.  *See* ¶¶188-190.  In any case, adopting Perry's argument would require the Court to resolve which analyst statement controls.  This, of course, is impermissible at the pleading stage.  *See Hason v. Medical Bd.*, 279 F.3d 1167, 1173 (9th Cir. 2002).  A jury should be presented with such disputes after Plaintiffs have had the opportunity to discover facts – through, for instance, deposition testimony of analysts and others – to test Perry's Fed. R. Civ. P. 12(b)(6) denials.  *See supra*, at n.7.

risking the liability which would surely follow revelation of the true reason behind the stock's diminished value . . . [Perry] could claim, as he do[es], that the market took the stock downward for reasons wholly unrelated to any allegedly unlawful [] practices." *Lalor v. Omtool, Ltd.*, 2000 U.S. Dist. LEXIS 18675, at *12-*13 (D.N.H. 2000).

Perry also suggests that the Company's January 16 and January 25, 2007 disclosures may not suffice, standing alone, to establish loss causation. MTD at 3. It is well-established in this Circuit, however, that a plaintiff may plead loss causation through a series of disclosures. *See Metzler*, 540 F.3d at 1063 n.6 ("Despite Corinthian's arguments to the contrary, there is no prohibition against Metzler alleging loss causation through a series of disclosures by the Defendants."); *Daou*, 411 F.3d at 1026 (reversing dismissal and finding loss causation adequately pleaded through a series of partial disclosures).[12] Perry also cites to *Caremark, Inc. v. Coram Healthcare Corp.*, 113 F.3d 645, 648 (7th Cir. 1997) for the proposition that a "plaintiff must allege that it was the very facts about which the defendant lied which caused its injuries." MTD at 2. Perry's reliance on *Caremark* is baffling.

As an initial matter, in this Circuit, a plaintiff need not plead "a fact-for-fact corrective disclosure to sufficiently allege loss causation." *New Century*, 588 F. Supp. 2d at 1236 (Pregerson, J.). Nevertheless, here, Plaintiffs can and do allege that Perry's materially false statements regarding Indymac's purportedly "sound" underwriting caused Plaintiffs' injuries when Perry admitted on March 1, 2007, that IndyMac's underwriting had been, unbeknownst to investors during the Class Period, inappropriately "loosened." *See, e.g.*, ¶¶18, 60-67, 191. Next, *Caremark* held that

---

[12]    *See also In re Maxim Integrated Prods., Inc.*, 2009 U.S. Dist. LEXIS 60940, at *26 (N.D. Cal. 2009) ("Loss causation may be alleged through a series of partial disclosures."); *Conn. Ret. Plans and Trust Funds v. Amgen, Inc.*, 2009 U.S. Dist. LEXIS 71653, at *21-*22 (C.D. Cal. 2009) (same); *In re PMI Group, Inc. Sec. Litig.*, 2009 U.S. Dist. LEXIS 56709, at *37-*38 (N.D. Cal. 2009) (same).

loss causation *was* adequately pled and its reasoning (which bears quoting at length) is particularly instructive:

> This requirement of 'loss causation,' which we have described as nothing more than the 'standard common law fraud rule,' ought not be construed as a metaphysical term, but rather as a practical requirement. ***It ought not place unrealistic burdens on the plaintiff at the initial pleading stage***. It does not require, for instance, that the plaintiff plead that all of its loss can be attributed to the false statement of the defendant. Such a burden would be far more stringent than the common law tort requirement upon which the requirement is based and would impose a burden on the plaintiff specifically forbidden by our case law. Nor does the requirement of pleading loss causation require that the plaintiff allege that it could not have suffered the same damage under other circumstances. Rather, the requirement is [s]traightforward: The plaintiff must allege that it was in fact injured by the misstatement or omission of which it complains.

> \*    \*    \*

> ***[W]e believe that Caremark adequately has pleaded loss causation***. It has alleged that Coram did not disclose that it was negotiating a merger with a home respiratory care provider. Caremark has also alleged a plausible theory connecting this omission to its loss: that the failure to disclose this fact caused Caremark's injury through its undervaluation of the risk it was undertaking in accepting the notes as payment for its business. ***In short, Caremark has alleged that Coram made a fraudulent misstatement and that this misstatement was responsible for its damage.***

> \*    \*    \*

> We do not believe that Caremark's claim is rendered infirm because its alleged injuries equally could have been caused by factors which Coram did disclose. Caremark

> pleaded that its injury was caused by its reliance on the very fact which Coram misrepresented, and that allegation *is sufficient at this early stage of the litigation*. Nor do we believe that the adequacy of Caremark's allegation is negated by its having mentioned in the complaint other causes that could have contributed to the fall in the value of the notes. As we have noted earlier, *it is possible for more than one cause to affect the price of a security* and, should the case survive to that point, a trier of fact can determine the damages attributable to the fraudulent conduct.

*Caremark*, 113 F.3d at 649. In other words, *Caremark* is a terrible decision for Perry. *See id.*

### 2.    The Share Price Declines Plaintiffs Allege Are "Significant" Under *Dura*

Next, Perry claims that failure to plead a "significant" decline in the stock price following an alleged truth-revealing disclosure is fatal to Plaintiffs' Section 10(b) claim. MTD at 2, 13-14. Perry is wrong. *Dura* "only suggested that the plaintiffs needed to have alleged in some fashion that 'the truth became known' before '*the share price fell*.' [] *Dura* did not address what type of events or disclosures may reveal the truth. Nor did *Dura* explain how specific such disclosures must be." *Bradley*, 421 F. Supp. 2d at 828; *New Century*, 588 F. Supp. 2d at 1236 ("the Supreme Court in *Dura* did not . . . indicate what form a disclosure must take, how completely it should reveal previously misrepresented or concealed information, or how specifically it must refer to that information") (Pregerson, J.).

In finding that plaintiffs have to plead a stock price decline after the revelation of the truth in order to adequately allege loss causation, *Dura* also refrained from defining "significant" as a certain percentage, or, for that fact, in any other manner. *See Dura*, 544 U.S. at 346-47. "[T]he Court there [] recognized that even in the absence of allegations that share price significantly decreased, a complaint may otherwise suggest that the economic loss was caused by more than mere purchase

price inflation." *Steiner v. MedQuist Inc*., 2006 U.S. Dist. LEXIS 71952, at *67 n.24 (D.N.J. 2006). The Court should similarly apply *Dura*'s limited holding in denying Perry's motion. *See id*.

"While significant price declines following disclosures would make for an easier case for plaintiffs, companies required to make truthful and accurate financial disclosures do not escape 10(b) liability simply by leaking incomplete information into the marketplace over a period of time, rather than all at once. After all, the securities laws were enacted to protect the investing public and the national economy through the promotion of a high standard of business ethics . . . in every facet of the securities industry." *Id*. at *42-*43. Hence, under *Dura*:

> [T]he stock price ***need only negatively respond to the disclosures***; ***a significant drop in the price is not required***. Moreover, as Plaintiffs point out, a firm that lies about some assets cannot defeat liability by showing that other parts of its business did better than expected, counterbalancing the loss.

*Id*. at *66-*70; *see In re Openwave Sys. Sec. Litig*., 528 F. Supp. 2d 236, 252-53 (S.D.N.Y. 2007); *In re Winstar Commc'ns*., 2006 U.S. Dist. LEXIS 7618, at *44-*45 (S.D.N.Y. 2006) ("To establish loss causation by pleading a corrective disclosure, a plaintiff must allege that when truthful word revealing the falsity of defendant's representation reached the public, the market reacted ***negatively*** causing plaintiff to suffer an injury.").

Moreover, when considered in conjunction with the Complaint's explanations for the Company's stock price reactions, IndyMac's stock price movements are sufficiently material to survive dismissal. *See, e.g.*, ¶¶163, 171, 188, 192. The Company's stock price dropped 7% on January 16, 2007, as the market digested disclosures regarding the Company's underwriting practices and increased loan reserves. ¶¶165, 171; *PMI Group*, 2009 U.S. Dist. LEXIS 56709; *Countrywide*, 588 F. Supp. 2d at 1178 (loss causation adequately pleaded in case alleging partial

corrective disclosure of increase in loan loss reserves). Then, on January 25, 2007, IndyMac's stock dropped an additional 7.35% as a result of partial disclosures of additional facts regarding the Company's scheme. ¶188. And on March 1, 2007, the stock dropped 6% as the remaining artificial inflation came out of the Company's stock price when Perry finally admitted the "loosening" of IndyMac's underwriting guidelines. *See Hubbard v. BankAtlantic Bancorp, Inc.*, 625 F. Supp. 2d 1267, 1276, 1291-92 (S.D. Fla. 2008) (disclosure of increase in loan loss reserves due to deterioration in the credit quality of defendant lender-bank's mortgage loans sufficed to plead loss causation under *Dura*).

Perry does not seriously dispute these or other similar allegations, but merely concludes that a ***single*** drop of "5.3%" should not be deemed "significant" under *Dura*.[13] *See* MTD at 2. The case Perry cites for this proposition, however, expressly (and correctly) declined to hold that a certain percentage drop was required to plead loss causation. *Compare Apollo Group*, 633 F. Supp. 2d at 822 ("there is no need to address the parties' arguments as to whether the alleged 5.3% drop in the price of Apollo stock on June 20, 2006 is sufficient to support a loss causation allegation"), *with* MTD at 13.

Incident to his arguments that regarding the viability of Indymac's stock price declines, Perry now argues that the truth regarding his misstatements was, in actuality, ***known to the market the whole time***. MTD at 6-9. This argument is terribly flawed. "As a general rule, the truth-on-the-market defense is intensely fact-specific, so courts rarely dismiss a complaint on this basis." *In re Amgen, Inc. Sec. Litig.*, 544 F. Supp. 2d 1009, 1025 (C.D. Cal. 2008). Moreover, Plaintiffs do not

---

[13]    Perry ignores that loss causation is adequately pleaded where, as here, a plaintiff alleges that a risk of loss concealed by a defendants' conduct materialized and played at least some part in the corresponding decline in stock price. ¶¶160-192. *See e.g.*, *In re Charles Schwab Corp. Sec. Litig.*, 257 F.R.D. 534, 547 (N.D. Cal. 2009) (citing *Lentell v. Merrill Lynch & Co.*, 396 F.3d 161, 173, 177 (2d Cir. 2005)).

allege that Perry told the market that IndyMac's average borrower FICO score (credit score) and its average CLTV (Combined Loan to Value Ratio) during the Class Period were at a particular level, only to reveal at the end of the Class Period that they were much higher.  Indeed, the terms FICO and CLTV are, in fact, not even mentioned in the Complaint.

Rather, Plaintiffs allege that IndyMac violated its underwriting controls by, *inter alia*: (i) falsifying borrowers' financial numbers so that they would appear, on paper, to comport with IndyMac's underwriting guidelines; (ii) gaming the Company's e-MITS computer system; (iii) violating IndyMac's rate lock protocols; (iv) pushing through incomplete or deficient loan applications; (v) quashing internal fraud investigations; and (vi) fraudulently manipulating the financial components of kicked-back loans so that they could be resold.  *See* ¶¶35-84.  It should come as no surprise, then, that the Company's publicly reported FICO and CLTV values did not increase much during the Class Period: Perry directed the manipulation of those numbers before they even hit the Company's books, so that the public would be utterly unaware of the fact that the vast majority of IndyMac's loans were essentially uncollectible.  *See Amgen*, 544 F. Supp. 2d at 1025.

### 3.    Perry's Reliance on "Market Conditions" is a Poor Excuse for His Knowing Misconduct

Throughout the Class Period, Perry portrayed IndyMac as a stable and growing Company that would not only weather bad times facing the mortgage industry, but would emerge from troubling times ***even stronger***.  *See* ¶6; n.11 *supra*.  Of course, not long after Perry's unconditional reassurances in the face of the downturn in the real estate market, IndyMac's operations were seized by regulators, and IndyMac later filed for bankruptcy.  *See* ¶¶193-194.  Despite this, Perry now cynically uses the very "market conditions" he promised investors that IndyMac would weather to excuse his materially false and misleading statements.  The timing and magnitude of IndyMac's stock price declines negate any inference that the loss

Plaintiffs suffered were caused solely by market conditions.[14]  *See* ¶189.  Analysts confirmed this.  *Id.* at ¶190.  And courts have too:

> Defendants argue that loss causation does not exist ***because the recent downturn in the housing market***, not any disclosure regarding WaMu's financial health, caused WaMu's stock price to plummet.  However, Plaintiff is not required to show that WaMu's misrepresentations were the only cause of the stock decline.  *In re Daou*, 411 F.3d at 1025.  Although the market downturn may have affected WaMu stock prices, ***this does not foreclose the possibility that the alleged disclosures had an impact as well***.

*Wash. Mut.*, 2009 U.S. Dist. LEXIS 41575, at *54; *Countrywide*, 588 F. Supp. 2d at 1174; *Accredited Home*, 556 F. Supp. 2d at 1157; *New Century*, 588 F. Supp. 2d at 1236; *StockerYale*, 453 F. Supp. 2d at 359.  The Court should follow Judge Pechman's well-reasoned and thoughtful decision in *WaMu* and reject Perry's "market conditions" excuse for his knowing fraud.  *See id.*

### B.    PERRY'S FRAUDULENT MISSTATEMENTS ARE MATERIAL

"[A] complaint may not properly be dismissed pursuant to Rule 12(b)(6) (or even pursuant to Rule 56) on the ground that the alleged misstatements or omissions are not material unless they are so obviously unimportant to a reasonable investor that reasonable minds could not differ on the question of their importance."  *Goldman v. Belden*, 754 F.2d 1059, 1067 (2d Cir. 1985).  Just recently, the Ninth Circuit confirmed this longstanding standard in *Matrixx Initiatives*, 2009 U.S. App.

---

[14]    At class certification or summary judgment, Plaintiffs will provide expert testimony demonstrating that "market conditions" were not the sole cause of IndyMac's price declines.  Such evidence, however, is neither necessary nor appropriate at the pleading stage (nor even at the advanced class certification stage) in this Circuit.  *See Amgen*, 2009 U.S. Dist. LEXIS 71653, at *35 ("inquiries into issues such as materiality and loss causation are properly taken up [after the class certification stage]").

LEXIS 23716, at *25.  It follows that a statement is material if there is a substantial likelihood that the disclosure of the omitted fact would have been viewed by the reasonable investor as substantially altering the mix of information available to the investor.  *See Basic Inc. v. Levinson*, 485 U.S. 224, 231 (1988); *TSC Indus., Inc. v. Northway, Inc*., 426 U.S. 438, 450 (1976); *Pirraglia v. Novell, Inc*., 339 F.3d 1182, 1192 n.13 (10th Cir. 2003) (materiality is "a question of fact that cannot render the complaints inadequate, lest . . . pleading requirements . . . replace the function of a trial").  Perry fails to meet his burden.

Perry erroneously claims that his fraudulent statements were immaterial as a matter of law.  MTD at 14-20.  Like a three-day-old doughnut, Perry's argument is stale and ought be shunned.  During a recent hearing, the Court specifically noted that its May 2009 loss causation ruling applied to Plaintiffs' "claim against Perry in regards to his **materially** false and/or reckless statements as to IndyMac's underwriting standards and internal controls."  September 14, 2009, Transcript of Proceedings at 6.  But still, Perry insists on retreading this ground.  *See SEC v. Phan*, 500 F.3d 895, 908 (9th Cir. 2007); *Fecht v. Price Co.*, 70 F.3d 1078, 1080 (9th Cir. 1995); *In re DDi Corp. Sec. Litig.*, 2005 U.S. Dist. LEXIS 28216, at *41 (C.D. Cal. 2005).

Taking all of the facts in the Complaint as true, material facts available to Perry went undisclosed to investors about then-present circumstances related to IndyMac's business.  *See, e.g.*, ¶¶29-115, 193-198.  The omitted information – the insufficiency of IndyMac's underwriting and internal controls – was undeniably information a reasonable investor would have considered important.[15]  *See, e.g.*,

---

[15]    Statements such as those challenged by Perry as being immaterial are routinely held to be actionable.  *See, e.g*., *In re Oxford Health Plans, Inc., Sec. Litig*., 187 F.R.D. 133, 141 (S.D.N.Y. 1999) (statements such as "[t]he fundamentals of our business remain strong," and "our business remains profitable" are material); *Novak v. Kasaks*, 216 F.3d 300, 315 (2d Cir. 2000) (statements "that the inventory situation was 'in good shape' or 'under control'" are material).

*Accredited Home*, 556 F. Supp. 2d at 1155 ("as a mortgage lender, Accredited's underwriting practices would be ***among the most important information looked to by investors***"); *In re Countrywide Fin. Corp. Derivative Litig.*, 554 F. Supp. 2d 1044, 1060 (C.D. Cal. 2008) ("[L]oan quality (and hence, the underlying underwriting practices) is most directly implicated in the performance of mortgages . . . . High quality loans could be expected to generate reliable streams of revenue.  In contrast, loans that perform poorly would have a serious impact on Countrywide's balance sheet."); *Countrywide*, 588 F. Supp. 2d at 1194.

Perry also repeatedly raised these specific issues when addressing analysts and others, and did so throughout the Class Period.  *See, e.g.*, ¶¶118, 121, 125, 130, 133, 135-136, 138, 140, 142, 144, 146, 148, 153, 156.  Thus, by his own undeniable conduct, Perry demonstrated the importance of these issues to investors.  *Id*.  Perry cannot credibly now suggest that this information was so obviously immaterial in the "total mix" of information then available to Indymac investors that reasonable minds could not differ on their importance.  *See DDi*, 2005 U.S. Dist. LEXIS 28216, at *41, *44; *New Century*, 588 F. Supp. 2d at 1226; *ECA and Local 134 IBEW Joint Pension Trust of Chi. v. JP Morgan Chase Co*., 553 F.3d 187, 197 (2d Cir. 2009); *Ganino v. Citizens Utils. Co*., 228 F.3d 154, 162 (2d Cir. 2000).

Other market participants also demonstrated the importance of this information.  Analysts and financial reporters specifically and repeatedly inquired into these topics, then published reports detailing what they learned.  *See, e.g.*, ¶¶168-172, 190.  For instance, a Lehman analyst cited in the Complaint noted that IndyMac's "***management team lost some credibility***" as a result of the Company's January 25, 2007 partial disclosure.  *See* ¶¶188-190.  Courts, of course, routinely find that the integrity of management is important to investors.  *See Gebhardt v. ConAgra Foods, Inc.*, 335 F.3d 824, 830 (8th Cir. 2003).  Moreover, the Lehman Brothers analyst would not have raised the issue of Perry's (lack of) credibility if it had been immaterial to IndyMac's investors.  And as investors learned the truth, they drove

the stock price down a total of 20% on three separate disclosures on massive volume. ¶¶163, 171, 188, 192.   And each respective stock price decline followed the disclosure of the bad news on each of those days.  *Id.*; *see Ganino*, 228 F.3d at 166-67 (market response shortly after "poor earnings outlook first emerged" is evidence of materiality"); *In re Nature's Sunshine Prods. Sec. Litig.*, 486 F. Supp. 2d 1301, 1308 (D. Utah 2007) ("[T]he materiality of disclosed information may be measured *post hoc* by looking to the movement, in the period immediately following disclosure, of the price of the firm's stock.").

The statements challenged by Perry were thus clearly material.   *See id.*; *Accredited Home*, 556 F. Supp. 2d at 1155; *Countrywide*, 554 F. Supp. 2d at 1060. They were an important aspect of Perry's representations to the market that led reasonable investors, like Plaintiffs, to believe that IndyMac had "the best quality control function of any thrift out there" when IndyMac's quality control was, in fact, dismal.  *See* ¶¶130-131; *Goldman*, 754 F.2d at 1068-69 (defendants liable where "there was no note of caution in the defendants' statements and [] defendants knew caution was warranted").   Perry's statements were designed to (and did) foster the belief in investors that IndyMac was conservative lender, when in fact the Company was – at Perry's direction – making "***DisneyLand Loans***."  *See* ¶65.

## IV.  CONCLUSION

For the foregoing reasons, the Motion to Dismiss the Fifth Amended Complaint should be denied.


Dated:  November 16, 2009              Respectfully submitted,

                                       BARROWAY TOPAZ KESSLER
                                        MELTZER & CHECK, LLP

                                       */s/ Ramzi Abadou*
                                       Ramzi Abadou
                                       Erik D. Peterson

1    580 California Street, Suite 1750
     San Francisco, CA  94104
2    Phone: (415) 400-3000
     Fax: (415) 400-3001
3
     -   and -
4
     Christopher L. Nelson
5    Lauren Wagner Pederson
     John J. Gross
6    280 King of Prussia Road
     Radnor, PA  19087
7    Tel: (610) 667-7706
     Fax: (610) 667-7056
8
9    *Lead Counsel for Plaintiffs*

10   GLANCY BINKOW & GOLDBERG LLP
     Lionel Z. Glancy (Bar No. 134180)
11   Peter A. Binkow (Bar No. 173848)
     Neal A. Dublinsky (Bar No. 135712)
12   1801 Avenue of the Stars, Suite 311
     Los Angeles, CA  90067
13   Tel: (310) 201-9150
     Fax: (310) 201-9160
14
15   *Liaison Counsel for Plaintiffs*

16   COHEN, MILSTEIN, SELLERS
       & TOLL, P.L.L.C.
     Steven J. Toll
17   Andrew N. Friedman
     Matthew B. Kaplan
18   1100 New York Avenue, N.W.
     Suite 500, West Tower
19   Washington, DC  20005
     Tel: (202) 408-4600
20   Fax: (202) 408-4699

21   *Additional Counsel for Plaintiffs*

22

23

24

25

26

27

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## CERTIFICATE OF SERVICE

I hereby certify that on November 16, 2009, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses denoted on the attached Electronic Mail Notice List.

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  Executed on November 16, 2009.

*/s/ Ramzi Abadou*
Ramzi Abadou
BARROWAY TOPAZ KESSLER
MELTZER & CHECK, LLP
580 California Street, Suite 1750
San Francisco, CA  94104
Phone: (415) 400-3000
Fax: (415) 400-3001

**Mailing Information for a Case 2:07-cv-01635-GW-VBK**

**Electronic Mail Notice List**

The following are those who are currently on the list to receive e-mail notices for this case.

- **Tammy Albarran**
  talbarran@cov.com,kfujita@cov.com,mcanalita@cov.com
- **David B Bayless**
  dbayless@cov.com,eerlich@cov.com
- **Ian D Berg**
  ecf_filings@sbtklaw.com
- **Peter A Binkow**
  pbinkow@glancylaw.com
- **Kelly Patrice Finley**
  kfinley@cov.com
- **Andrew N Friedman**
  afriedman@cmht.com
- **Frederick W Gerkens , III**
  fgerkens@glancylaw.com
- **Lionel Z Glancy**
  lglancy@glancylaw.com
- **Michael M Goldberg**
  mmgoldberg@glancylaw.com,dmacdiarmid@glancylaw.com,rmaniskas@glancylaw.com,info@glancylaw.com,rprongay@glancylaw.com
- **John J Gross**
  jgross@btkmc.com
- **Matthew B Kaplan**
  mkaplan@cohenmilstein.com,efilings@cohenmilstein.com
- **Teodora Manolova**
  tmanolova@orrick.com
- **Christopher L Nelson**
  cnelson@btkmc.com,dpotts@btkmc.com
- **Lauren Wagner Pederson**
  lpederson@btkmc.com
- **William F Salle**
  wfslaw@yahoo.com
- **Evan Jason Smith**
  esmith@brodsky-smith.com
- **Andy Sohrn**
  asohrn@glancylaw.com

- **Michael C Tu**
  mtu@orrick.com
- **Daniel J Tyukody, Jr**
  dtyukody@orrick.com
- **Edwin V Woodsome , Jr**
  ewoodsome@orrick.com

**Manual Notice List**

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

**Katharine M Ryan**
Barroway Topaz Kessler Meltzer & Check LLP
280 King of Prussia Road
Radnor, PA 19087

**Michael K Yarnoff**
Schiffrin & Barroway
280 King of Prussia Road
Radnor, PA 19087