DAVID B. BAYLESS (SBN 189235)
E-mail: dbayless@cov.com
TAMMY ALBARRÁN (SBN 215605)
E-mail: talbarran@cov.com
PAUL WATKINS (SBN 244974)
E-mail: pwatkins@cov.com
COVINGTON & BURLING LLP
One Front Street
San Francisco, CA 94111-5356
Telephone: 415-591-6000
Facsimile: 415-591-6091

Attorneys for Defendant Michael W. Perry

# UNITED STATES DISTRICT COURT

# FOR THE CENTRAL DISTRICT OF CALIFORNIA

# WESTERN DIVISION

| | |
|---|---|
| WAYMAN TRIPP and SVEN MOSSBERG, Individually and On Behalf of All Others Similarly Situated,<br><br>　　　　　　　　　Plaintiffs,<br><br>　v.<br><br>INDYMAC BANCORP, INC., and MICHAEL W. PERRY,<br><br>　　　　　　　　　Defendants. | Case No.: 2:07-cv-1635-GW (VBK)<br><br>**REPLY MEMORANDUM IN SUPPORT OF DEFENDANT MICHAEL W. PERRY'S MOTION TO DISMISS PLAINTIFFS' FIFTH AMENDED CLASS ACTION COMPLAINT**<br><br>Date:　　　　December 10, 2009<br>Time:　　　　8:30 a.m.<br>Courtroom:　10<br>Judge:　　　Hon. George H. Wu |

**TABLE OF CONTENTS**

INTRODUCTION ..................................................................................................1

LEGAL ARGUMENT ...........................................................................................1

I.    THE 5AC FAILS TO PLEAD LOSS CAUSATION. ..................................1

    A.    The 5AC Must Plead Two Key Facts to Allege Loss Causation...................................................................................1

    B.    The 5AC Fails to Plead How the March 1, 2007 Disclosure Corrected, or Revealed the Falsity of, Mr. Perry's Prior Underwriting Statements. ......................................................2

        1.    In Context, Mr. Perry's March 1, 2007 Statement Simply Repeated Previously Disclosed Information. ..............2

        2.    Analysts' Reaction Confirms That There Was No Corrective Disclosure on March 1, 2007.................................3

        3.    The Reaction of IndyMac's Stockholders Confirms that No Alleged Fraud Was Revealed on March 1, 2007. .........................................................................................5

    C.    The 5AC Fails to Show that IndyMac's Stock Price Dropped *Significantly* As a Result of the Alleged March 1, 2007 Corrective Disclosure..........................................................5

        1.    The 5AC Fails to Allege a "Significant" Stock Price Drop. ..................................................................................5

        2.    The 5AC Fails to Allege that the March 1, 2007 Stock Price Decline Was Due to the Alleged Revelation of the "Truth." .........................................................................7

    D.    The Court Has Ruled That Neither the January 16, 2007 Nor the January 25, 2007 Disclosures Plead Loss Causation. ...................9

II.    THE 5AC FAILS TO PLEAD THAT MR. PERRY'S ALLEGED MISSTATEMENTS WERE MATERIAL WHEN MADE. ........................10

    A.    Materiality Must be Pled With Particularity as to Each Alleged Misstatement. ....................................................................10

    B.    The 5AC Fails to Plead The Materiality of Any Alleged Misstatement. .................................................................................11

    C.    The Materiality of A Statement Depends on What was Represented, Not on the Topic Discussed or the Speaker.................13

    D.    The 5AC's Failure to Plead Materiality is an Independent Basis for Dismissal. ...............................................................14

CONCLUSION....................................................................................................15

# TABLE OF AUTHORITIES

Page(s)

**FEDERAL CASES**

*Basic, Inc. v. Levinson*
   485 U.S. 231-32 (1988) ............................................................................ 10, 12, 14

*Dabit v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*
   395 F.3d 25 (2d Cir. 2005) ................................................................................... 7

*Dura Pharms., Inc. v. Broudo*
   544 U.S. 336 (2005) .................................................................................... 1, 6, 7

*Garber v. Legg-Mason, Inc.*
   537 F. Supp. 2d 597 (S.D.N.Y. 2008) ..................................................... 10, 14, 15

*Heliotrope Gen., Inc. v. Ford Motor Co.*,
   189 F.3d 971 (9th Cir. 1999) .................................................................................. 4

*In re Countrywide Fin. Corp. Sec. Litig.*
   588 F. Supp. 2d 1132 (C.D. Cal. 2008) ............................................................ 10, 12

*In re Dot Hill Sys. Corp. Sec. Litig.*
   No. 06-CV-228 JLS ............................................................................................... 1

*In re Infonet Servs. Corp. Sec. Litig.*
   310 F. Supp. 2d 1106 (C.D. Cal. 2003) ................................................................ 4

*In re Intelligroup Sec. Litig.*
   468 F. Supp. 2d 670 (D. N.J. 2006) ..................................................................... 8

*In re Metawave Commc'ns Corp. Sec. Litig.*
   298 F. Supp. 2d 1056 (W.D. Wash. 2003) ........................................................ 5, 12

*In re Openwave Sys. Sec. Litig.*
   528 F. Supp. 2d 236 (S.D.N.Y. 2007) ................................................................ 6

*In re Wash. Mut. Sec., Deriv. & ERISA Litig.*
   No. 2:08-md-1919 MJP ....................................................................................... 8

*In re Winstar Commc'ns*
   No. 01 CV 3014 (GBD), 01 CV 11522, 2006 WL 473885
   (S.D.N.Y. Feb. 27, 2006) ..................................................................................... 6

*In re Zoran Corp. Deriv. Litig.*
   511 F. Supp. 2d 986 (N.D. Cal. 2007) ................................................................... 3

*J&R Marketing, SEP v. Gen. Motors. Corp.*
   549 F.3d 384 (6th Cir. 2008) ............................................................................... 13

*Lentell v. Merrill Lynch & Co., Inc.*
   396 F.3d 161 (2d Cir. 2005) .................................................................................. 1

*Metzler Inv. GMBH v. Corinthian Colls., Inc.*
   540 F.3d 1049 (9th Cir. 2008) ...................................................................... 1, 4, 6

*New York State Teachers' Ret. Sys. v. Fremont Gen. Corp.*
   No. 07-cv-5756-FMC-FFMx, 2009 WL 3112574
   (C.D. Cal. Sept. 25, 2009) ............................................................................ 10, 13

*Novak v. Kasaks*
   216 F.3d 300 (2d Cir. 2000) .................................................................................. 7

*Patel v. Parnes*
   253 F.R.D. 531 (C.D. Cal. 2008) .......................................................................... 4

*Siracusano v. Matrixx Initiatives, Inc.*
   No. 06-15677, 2009 U.S. App. LEXIS 23716
   (9th Cir. Oct. 28, 2009) ....................................................................................... 11

*Teamsters Local 617 Pension and Welfare Funds v. Apollo Group, Inc.*
   633 F. Supp. 2d 763 (D. Ariz. 2009) ..................................................................... 7

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*
   551 U.S. 308 (2007) ............................................................................................... 4

**FEDERAL STATUTES**

15 U.S.C. § 77a, *et seq.* ................................................................................................ 7

15 U.S.C. § 78a, *et seq.* ................................................................................................ 7

15 U.S.C. § 78U-4(B) ................................................................................................... 3

17 C.F.R. § 240.10b-5(b) ............................................................................................ 10

**OTHER AUTHORITIES**

H.R. Conf. Rep. No. 104-369 (1995), reprinted in 1995 U.S.C.C.A.N. 731 ............ 7

H.R. Rep. No. 104-369 (1995) (Conf. Rep.) ............................................................. 3

# INTRODUCTION

Plaintiffs' Fifth Amended Complaint ("5AC") has two independent fundamental problems. First, it fails to plead loss causation under *Metzler Inv. GMBH v. Corinthian Colls., Inc.*, 540 F.3d 1049 (9th Cir. 2008). Second, it fails to plead the materiality of defendant Michael W. Perry's alleged misstatements. After five unsuccessful attempts to meet the pleading requirements of the Private Securities Litigation Reform Act of 1995 ("PSLRA"), the Court should dismiss the 5AC with prejudice.

# LEGAL ARGUMENT

## I. THE 5AC FAILS TO PLEAD LOSS CAUSATION.

### A. The 5AC Must Plead Two Key Facts to Allege Loss Causation.

As noted in Mr. Perry's opening brief, the United States Supreme Court has held that to plead loss causation, the 5AC must plead two key facts: (1) a "corrective disclosure," *i.e.*, a disclosure to the market that reveals that a prior representation was false when made; and (2) a "significant" share price drop in reaction to the alleged revelation of the truth. *See Dura Pharms.*, *Inc. v. Broudo*, 544 U.S. 336, 347 (2005); *Metzler*, 540 F.3d at 1062 (complaint must allege that "share price fell significantly after the truth became known"); *Lentell v. Merrill Lynch & Co., Inc.*, 396 F.3d 161, 175 n.4 (2d Cir. 2005) (corrective disclosure must reveal to the market the falsity of the prior misstatements); *In re Dot Hill Sys. Corp. Sec. Litig.*, No. 06-CV-228 JLS (WMc), 2009 WL 734296, at *14 (S.D. Cal. Mar. 18, 2009) ("[a] disclosing event which does not actually disclose the falsity of the alleged misrepresentations is inadequate").

The Ninth Circuit has followed *Dura* and made clear that pleading loss causation by "euphemism" is legally insufficient. Rather, the complaint must plead facts that show that there was a corrective disclosure and that this corrective disclosure *caused* a *significant* share price decline. *Metzler*, 540 F.3d at 1062. Here, the 5AC pleads neither a corrective disclosure nor a significant share price

1  decline in reaction to a corrective disclosure.

### B. The 5AC Fails to Plead How the March 1, 2007 Disclosure Corrected, or Revealed the Falsity of, Mr. Perry's Prior Underwriting Statements.

The 5AC alleges that the March 1, 2007 disclosures "revealed the truth" regarding the alleged falsity of Mr. Perry's prior underwriting misstatements, and thus establishes loss causation. (*See* 5AC ¶¶ 191-92.) But, as Mr. Perry showed in his opening brief, the March 1, 2007 disclosures did not "correct" or "reveal the falsity" of his prior underwriting statements. (Perry Br. at 3-6.)

#### 1. In Context, Mr. Perry's March 1, 2007 Statement Simply Repeated Previously Disclosed Information.

First, the 5AC failed to quote a key sentence that follows Mr. Perry's quoted remarks about IndyMac having loosened its underwriting standards. (*Compare* 5AC ¶ 191 to Albarrán Decl., Ex. 13 at 1239.) This omission is critical because it puts Mr. Perry's statement in context and clarifies what he meant when he stated that IndyMac "loosened its lending standards, though in a much more responsible way." (5AC ¶ 191.) The "loosening" to which Mr. Perry referred on March 1, 2007, involved small changes to two underwriting metrics -- average FICO score and combined loan-to-value ("CLTV") ratio. (Perry Br. at 3-6.)

Thus, Mr. Perry's entire remarks on March 1, 2007 did not correct, or reveal the falsity of, his prior underwriting statements. As Mr. Perry demonstrated, in fact, his remarks simply reiterated information previously disclosed in IndyMac's SEC filings about ongoing changes to the two underwriting metrics. (Perry Br. at 6-9.) Significantly, plaintiffs' opposition fails to address Mr. Perry's point that this alleged "loosening" of underwriting standards was clearly disclosed in SEC filings throughout the Class Period.

Instead, plaintiffs argue that the FICO score and CLTV disclosures are irrelevant. (Opp'n at 13-14.) Remarkably, plaintiffs argue that the Court should ignore the context of Mr. Perry's remarks and look *only* to the portion that the

5AC selectively quotes. (Opp'n at 6.) In other words, plaintiffs ask this Court to take Mr. Perry's statement out of context and ignore its meaning. But courts have held a plaintiff cannot simply pick and choose which portion of a document the court can review. *In re Zoran Corp. Deriv. Litig.*, 511 F. Supp. 2d 986, 1001 (N.D. Cal. 2007) (plaintiff not "allowed to exclude the rest of the Form 10K because he wishes to pick and choose which statements should be considered").

Moreover, this Court's role as gatekeeper is to meaningfully evaluate the 5AC's loss causation allegations before allowing the case to proceed to discovery. *See* 15 U.S.C. § 78U-4(B); H.R. Rep. No. 104-369, at 301 (1995) (Conf. Rep.) (Congress appointed federal courts as gatekeepers under PSLRA to curb "abuse in private securities lawsuits" by dismissing complaints that fail to meet required pleading standards). This gatekeeper role requires that a court look at the entire context of a defendant's remarks, and not allow plaintiffs to "cherry pick" and thereby limit what a court can review.

This Court, then, must review Mr. Perry's entire statement, not just those portions that plaintiffs selectively quotes. And, in context, Mr. Perry disclosed on March 1, 2007 how IndyMac "loosened" slightly its FICO scores and CLTV ratios, which was <u>not</u> news to the investing public but rather had been regularly disclosed in IndyMac' SEC filings. Thus, Mr. Perry's March 1, 2007 remarks did not correct any of his prior alleged underwriting misstatements.

### 2. Analysts' Reaction Confirms That There Was No Corrective Disclosure on March 1, 2007.

Second, Mr. Perry demonstrated that the statements of analysts issued immediately after Mr. Perry's March 1, 2007 statement confirm that his statement was not "corrective."[1] Immediately following the March 1 disclosure, the Foxx-

---

[1] Realizing the fundamental problems that the analyst reports and IndyMac's SEC filings pose for their loss causation argument, plaintiffs argue that Mr. Perry's citation to these documents is improper. (Opp'n at 8 n.11.) But it is entirely (continued…)

Pitt analyst report (issued the same day) described liquidity at IndyMac as "not as big of a risk" as it is "primarily a prime lender." The report concluded that IndyMac was a "viable, growing and sound company." (Perry Br. at 9-10 (citing Albarrán Decl., Ex. 25 at 1591).)

The next day, RBC's analyst report gave IndyMac an "Outperform" rating and "view[ed] the company as well-managed." Significantly, it also noted that IndyMac's "collective portfolio has been *prudently underwritten.*" The report concluded that IndyMac was a "solid, well-run company." (Perry Br. at 10 (citing Albarrán Decl., Ex. 26 at 1594-95 (emphasis added)).) As Mr. Perry pointed out, no analyst would make these statements if Mr. Perry had just revealed that his prior underwriting statements were false when made.

Plaintiffs' argue that the Foxx-Pitt analyst was duped by the March 1, 2007 disclosure and continued relying on "false Class Period reassurance[s] that IndyMac" would weather the market turmoil. (Opp'n at 8.) But if Mr. Perry *concealed* his "fraud," then plaintiffs have entirely undermined their loss causation allegations that "investors clearly understood that there were serious problems with IndyMac's underwriting standards" by March 1, 2007. (Opp'n at 7.) If the March 1, 2007 disclosure did not reveal the truth, but instead further misled the market, then plaintiffs cannot contend that loss causation occurred on

---

appropriate for the Court to rely on such documents at the pleading stage in securities fraud cases. Indeed, when assessing the sufficiency of securities fraud allegations, "courts must consider the complaint in its entirety," including inferences drawn from "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007); *see also Metzler*, 540 F.3d at 1055 n.1, 1064 n.7. Here, Mr. Perry properly cites such documents to show the market's awareness of information in the public domain. *Heliotrope Gen., Inc. v. Ford Motor Co.*, 189 F.3d 971, 980-81 (9th Cir. 1999) (taking judicial notice of numerous financial analyst reports); *Patel v. Parnes*, 253 F.R.D. 531, 548 (C.D. Cal. 2008) (taking judicial notice of analyst reports not cited in plaintiffs' complaint to establish the market's awareness of information contained in those reports); *In re Infonet Servs. Corp. Sec. Litig.*, 310 F. Supp. 2d 1106, 1115 n.10 (C.D. Cal. 2003) (same).

March 1, 2007.

### 3. The Reaction of IndyMac's Stockholders Confirms that No Alleged Fraud Was Revealed on March 1, 2007.

Third, as Mr. Perry showed in his opening brief, on April 26, 2007, after the supposed revelation of the truth, shareholders re-elected Mr. Perry to IndyMac's Board overwhelmingly. (Perry Br. at 11-12.) It would defy logic to infer that investors voted to re-elect Mr. Perry by such an overwhelming majority if, as plaintiffs allege, on March 1, 2007 he had revealed that his prior underwriting statements were false. Again, plaintiffs' opposition fails to address this point, thereby conceding it. *See In re Metawave Commc'ns Corp. Sec. Litig.*, 298 F. Supp. 2d 1056, 1090 (W.D. Wash. 2003).

\* \* \*

In sum, the March 1, 2007 disclosure did not correct, or reveal the falsity of, Mr. Perry's prior underwriting statements. Thus, loss causation is not pled.

### C. The 5AC Fails to Show that IndyMac's Stock Price Dropped *Significantly* As a Result of the Alleged March 1, 2007 Corrective Disclosure.

But, even assuming the March 1, 2007 disclosure was "corrective" (which it was not), the 5AC must also allege a significant share price decline in reaction to the revelation of the falsity of Mr. Perry's prior underwriting statements. As Mr. Perry demonstrated, the 5AC fails to plead facts that show that IndyMac's 6% stock price decline was either significant or attributable to Mr. Perry's statements. (Perry Br. at 12-14.) Plaintiffs must plead both; yet, they have pled neither.

### 1. The 5AC Fails to Allege a "Significant" Stock Price Drop.

As Mr. Perry showed, there was no significant stock price decline following the March 1, 2007 disclosure. (Perry Br. at 12-14.) Realizing this problem, plaintiffs resort to aggregating the losses on three dates spanning a two-month period to come up with a 20% loss in stock value. (Opp'n at 7, 12-13.)

This strategy is fundamentally flawed; this Court has already ruled that the

market did not react to any alleged "revelation" in the January 16, 2007 or the January 25, 2007 disclosures:

> Plaintiffs have not pled facts demonstrating that the market reacted negatively to any corrective disclosure concerning IndyMac's underwriting practices or internal or risk controls.  In other words, they have failed to sufficiently allege that "the practices that the plaintiff contends are fraudulent were revealed to the market and caused the resulting losses.

(Aug. 3, 2009 Order at 3-4.)  As stated by this Court, "[u]nder *Metzler*, … it is clear that the January disclosures revealed nothing, *partial or whole*, about any earlier misrepresentations concerning IndyMac's underwriting practices." (*Id*. at 4 n.3.) (emphasis added).  Thus, the only relevant loss is the $2.17 (or 6.32%) decline on March 1, 2007.

Then, citing a New Jersey district court decision, plaintiffs argue that pleading a significant share price drop is not required.[2]  (Opp'n at 12.)  But this is simply contrary to both Supreme Court and Ninth Circuit mandates.  As *Metzler* clearly articulated, "the complaint must allege that the defendant's 'share price fell *significantly* after the truth became known.'"  *Id*. at 1062 (citing *Dura*, 544 U.S. at 347) (emphasis added).  The Ninth Circuit decision governs this case.

---

[2] Plaintiffs also incorrectly rely on *In re Openwave Sys. Sec. Litig.*, 528 F. Supp. 2d 236 (S.D.N.Y. 2007), and *In re Winstar Commc'ns*, No. 01 CV 3014 (GBD), 01 CV 11522, 2006 WL 473885 (S.D.N.Y. Feb. 27, 2006), for the proposition that pleading a significant share price drop is not required.  (Opp'n at 12.)  Neither case addressed whether a "significant" decline is required under *Dura*, or whether the specific share price declines alleged were sufficiently "significant."  Rather, the plaintiffs in both *Openwave* and *Winstar* alleged share price drops of roughly 38% and 75%, respectively, due to corrective disclosures.  *Openwave*, 528 F. Supp. 2d at 252; *Winstar Comm'ns*, 2006 WL 473885 at *5.  As such, neither case stands for the proposition that an alleged share priced decline need not be "significant."

     Indeed, district courts throughout the Ninth Circuit have stated that there must be a showing of a significant share price decline before allowing a case to proceed to discovery. For example, in *Teamsters Local 617 Pension and Welfare Funds v. Apollo Group, Inc.*, 633 F. Supp. 2d 763, 822 (D. Ariz. 2009), the district court found that a June 19, 2006 news release was <u>not</u> a corrective disclosure. Hence, there was "no need to address the parties' arguments as to whether the alleged 5.3% drop in the price of Apollo stock on June 20, 2006 is sufficient to support a loss causation allegation." Nevertheless, the court stated that, "[i]n any event, it is highly doubtful that a 5.3 percent price drop, assuming it was sufficiently tethered to the June 19th disclosure, would satisfy *Dura*'s requirement that the 'share price f[a]ll significantly after the truth bec[o]me[s] known.'" *Id*.

     Further, from a public policy perspective, *Dura*'s requirement of a significant share price drop makes sense. Under plaintiffs' view, a *de minimis* one cent share price decline attributable to various factors would expose a company to expensive and protracted securities litigation. This runs counter to the PSLRA's express purpose of curbing abusive securities litigation arising out of declines in stock prices. H.R. Conf. Rep. No. 104-369, at 32 (1995), reprinted in 1995 U.S.C.C.A.N. 731; *see also Dabit v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 395 F.3d 25, 31 (2d Cir. 2005) (PSLRA enacted to "curb abuses of federal securities fraud litigation") (citing 15 U.S.C. § 77a, *et seq.* (2000); 15 U.S.C. § 78a, *et seq.* (2000)); *Novak v. Kasaks*, 216 F.3d 300, 306 (2d Cir. 2000) (PSLRA sought to deter strike suits in which plaintiffs filed federal securities fraud claims of questionable merit to obtain large settlements).

     In short, the 5AC pleads no facts showing that as a result of the March 1, 2007 disclosure, IndyMac's share price declined significantly.

     **2.    The 5AC Fails to Allege that the March 1, 2007 Stock Price Decline Was Due to the Alleged Revelation of the "Truth."**

     Finally, even if the share price decline on March 1, 2007 were significant,

the 5AC fails to allege any facts that show how the 6% (or $2.17) stock price drop (or any portion of it) was due to Mr. Perry's March 1, 2007 statement upon which plaintiffs base their loss causation allegations. This requirement of linking the share price decline to the corrective disclosure is especially important here because the two analysts specifically attributed the share price decline to IndyMac's revised return on equity ("ROE") projections, not to Mr. Perry's March 1, 2007 statement or any alleged corrective disclosure. (Perry Br. at 9-10, 13.) Thus, the 5AC must plead facts that show that the decline was due to Mr. Perry's one statement and not the revised ROE projections.

Plaintiffs utterly fail to respond to this point. Instead, they cite *In re Wash. Mut. Sec., Deriv. & ERISA Litig.*, No. 2:08-md-1919 MJP, Lead Case No. C08-387 MJP, 2009 U.S. Dist. LEXIS 41575 (W.D. Wash. May 15, 2009) for the unremarkable proposition that a plaintiff is not required to show that the misrepresentations were the only cause of the stock price decline. But, unlike here, the plaintiffs in *WaMu* successfully alleged several disclosures of previously undisclosed information about the bank's financial condition that caused a significant share price decline. *Id.* at *44-55.

Here, the 5AC fails to allege *any* facts that quantifiably disaggregate the supposed effects of Mr. Perry's statement from the simultaneously announced revised ROE projections, which was the key negative disclosure the analysts focused on. *See In re Intelligroup Sec. Litig.*, 468 F. Supp. 2d 670, 693-94 (D. N.J. 2006) (no loss causation where plaintiff failed to "plead facts indicating the presence of an *actual and quantifiable* relationship between the alleged fraud and the decline of the stock price") (emphasis in original); *Morgan v. AXT, Inc.*, Nos. C 04-4362 MJJ, C 05-5106 MJJ, 2005 WL 2347125, at *16 (N.D. Cal. Sept. 23, 2005) (no loss causation where recent volatility in stock price suggested influence by factors other than alleged misrepresentations). And, even if plaintiffs could plead facts to disaggregate the effects of the various disclosures, the remaining

1  amount attributed to the supposed "correction" would necessarily be insignificant.

### D. The Court Has Ruled That Neither the January 16, 2007 Nor the January 25, 2007 Disclosures Plead Loss Causation.

As shown, plaintiffs do not refute Mr. Perry's arguments that the March 1, 2007 disclosure does not correct, or reveal the falsity of Mr. Perry's prior underwriting statements. Nor does the 5AC plead a significant share price decline that is due to the March 1, 2007 disclosure.

Instead, plaintiffs' opposition contends that the 5AC adequately pleads loss causation by pointing to three partial disclosures that purportedly leaked the truth about Mr. Perry's alleged misstatements. (Opp'n at 7.) But plaintiffs' loss causation theory based on three purported partial disclosures fails because it ignores this Court's prior rulings.

The parties have previously (and fully) briefed whether the January 16, 2007 and January 25, 2007 disclosures corrected, or revealed the falsity of, Mr. Perry's prior alleged misstatements. This Court heard extensive argument on these specific issues, and it squarely ruled "that the January [16 and January 25] disclosures revealed nothing, partial or whole, about any earlier misrepresentations concerning IndyMac's underwriting practices." (Aug. 3, 2009 Order at 4 n.3.)

Indeed, this Court granted plaintiffs the opportunity to plead loss causation based on the March 1, 2007 disclosure precisely because this Court ruled that neither of the two January 2007 disclosures revealed the alleged falsity or misleading nature of Mr. Perry's earlier underwriting statements.

So, the March 1, 2007 disclosure is plaintiffs' last hope to establish loss causation. But, as shown *supra*, this attempt fails. The 5AC fails to allege loss causation and must be dismissed, this time with prejudice.

## II. THE 5AC FAILS TO PLEAD THAT MR. PERRY'S ALLEGED MISSTATEMENTS WERE MATERIAL WHEN MADE.

### A. Materiality Must be Pled With Particularity as to Each Alleged Misstatement.

As Mr. Perry's opening brief showed, materiality -- whether there is a substantial likelihood that a reasonable investor, in the context of the total mix of available information, would consider a piece of information important in deciding to buy or sell a security -- is a necessary element of a securities fraud claim.  (Perry Br. at 14-15);17 C.F.R. § 240.10b-5(b); *Basic, Inc. v. Levinson*, 485 U.S. 231-32 (1988).  As such, a plaintiff must plead *with particularity* facts that show the materiality of *each* purported misstatement at the time it was made.  *New York State Teachers' Ret. Sys. v. Fremont Gen. Corp.*, No. 07-cv-5756-FMC-FFMx, 2009 WL 3112574, at *7 (C.D. Cal. Sept. 25, 2009); *In re Countrywide Fin. Corp. Sec. Litig.*, 588 F. Supp. 2d 1132, 1185 (C.D. Cal. 2008); *Garber v. Legg-Mason, Inc.*, 537 F. Supp. 2d 597, 616-617 (S.D.N.Y. 2008), *aff'd*, No. 08-1831-cv, 2009 WL 3109914 (2d Cir. Sept. 30, 2009).

Plaintiffs do not dispute these threshold pleading requirements.  (*See* Opp'n at 15-16.)  Nor can they.  These threshold pleading requirements *must* be met.  But the 5AC fails to meet these requirements.

To try and avoid this fatal defect in the 5AC, plaintiffs mischaracterize Mr. Perry's position in a critical respect.  Plaintiffs suggest that Mr. Perry is arguing that his statements were immaterial as a matter of law.[3]  (Opp'n at 16.)  But this is not Mr. Perry's position in this motion.  Mr. Perry is not asking the Court to make a determination that any of the purported misstatements were immaterial.  Rather, as Mr. Perry has demonstrated, the 5AC simply fails to meet

---

[3] Plaintiffs argue that the materiality determination must always be a factual one hoping to obscure the fact that the 5AC's materiality allegations fall short of their pleading requirements.  The crux of Mr. Perry's argument is that plaintiffs have not met their burden of *pleading* the materiality of each of his statements with the particularity the law requires.  *See Countrywide*, 588 F. Supp. 2d at 1185.

1 basic threshold pleading requirements for materiality. This is no small distinction.

2 As a result, plaintiffs' heavy reliance on *Siracusano v. Matrixx Initiatives,*
3 *Inc.*, No. 06-15677, 2009 U.S. App. LEXIS 23716 (9th Cir. Oct. 28, 2009), is
4 misplaced. The primary holding of *Siracusano* dealt with whether, at the pleading
5 stage of a securities fraud case, a district court may find that undisclosed negative
6 information about a pharmaceutical product was "statistically significant." *Id.* at
7 *26. The Ninth Circuit held that it is inappropriate at the pleading stage to
8 determine whether information is immaterial as a matter of law based on a finding
9 of statistical insignificance.[4] *Id.*

10 But *Siracusano* is irrelevant to Mr. Perry's argument that plaintiffs have not
11 even *pled* facts showing why his statements would be important to a reasonable
12 investor. Simply put, Mr. Perry asks the Court to reject the 5AC on the basis of
13 insufficiently pled materiality.[5]

**B. The 5AC Fails to Plead The Materiality of Any Alleged Misstatement.**

16 Mr. Perry's opening brief demonstrated how the 5AC fails to meet the basic
17 requirements for pleading the materiality of each of his alleged underwriting
18 misstatements. Mr. Perry showed that the 5AC pleads no facts that would indicate
19 a substantial likelihood that a reasonable investor would find the allegedly

---

[4] In particular, *Siracusano* considered a number of specific allegations relating to medically adverse consequences of using the defendant's "Zicam" product. The district court held that the omitted information was not material because it was not "statistically significant." In reversing, the Ninth Circuit noted that there were a number of specific allegations that "[went] to the question of whether the information regarding the possible link between Zicam and [the alleged adverse health consequences] was information that a reasonable investor would have considered significant." *Id.* at *29. According to the Ninth Circuit, the "statistical significance" of the allegedly omitted information was a question of fact. *Id.*

[5] To be clear, however, Mr. Perry is not conceding that his statements were otherwise material in any respect. Rather, Mr. Perry is simply stating that this is an inquiry the Court need not reach in light of plaintiffs' failure to allege materiality in anything beyond a conclusory fashion.

1   misstated information -- in the context of the total mix of information available --

2   significant in deciding whether to buy or sell IndyMac stock.  (Perry Br. at 16-19.)

3         Mr. Perry showed that for two (out of fourteen) alleged misstatements the

4   5AC fails to plead, even in a conclusory fashion, that they were "material" or

5   "materially" false and misleading.  (Perry Br. at 16-17; *see* 5AC ¶¶ 129-31, 148-

6   51.)  And, for the other twelve alleged misstatements, the 5AC simply alleged, in a

7   conclusory manner, that the statements were "materially false and misleading."

8   (Perry Br. at 17.)  But such conclusory allegations are legally insufficient to plead

9   materiality with particularity.  *Countrywide*, 588 F. Supp. 2d at 1185.

10         For three purported misrepresentations, Mr. Perry showed that the 5AC

11   improperly alleges that the underlying statements were material because they were

12   false.  (*See* 5AC ¶¶ 125-26, 133-34, 153-54.)  But, as clear Supreme Court

13   precedent dictates, a false but immaterial statement is <u>not</u> actionable.  *Basic*, 485

14   U.S. at 238.  Plaintiffs fail to respond to this argument or even point the Court to a

15   single factual allegation in support of the materiality of these three statements.

16         Mr. Perry also demonstrated the 5AC's failure to plead the materiality of his

17   statement about the "soundness" of IndyMac's underwriting.  (*See* 5AC ¶¶ 135,

18   140.)  Such allegations are critical where, as here, IndyMac had publicly disclosed

19   throughout the Class Period fluctuations in two key underwriting metrics (average

20   FICO and CLTV ratio).  By ignoring IndyMac's clear and repeated underwriting

21   disclosures, plaintiffs fail to acknowledge -- as they must -- that they are required

22   to allege why the statement that IndyMac's underwriting was "sound" was

23   important in light of the "total mix" of available information at the time the

24   statement was made.  *Basic*, 485 U.S. at 231-32.

25         Notably, plaintiffs do not respond to this argument, let alone point the Court

26   to a single factual allegation in the 5AC in support of the materiality of any of the

27   fourteen statements.  Plaintiffs, thus, concede this point.  *See Metawave*, 298 F.

28   Supp. 2d at 1090.  Thus, the 5AC fails to plead materiality with the required

particularity.

### C. The Materiality of A Statement Depends on What was Represented, Not on the Topic Discussed or the Speaker.

Instead of addressing the clear deficiencies of the 5AC that Mr. Perry pointed out in his brief, plaintiffs argue that Mr. Perry's statements were "undeniably information a reasonable investor would have considered important" (i.e., material) because they were about underwriting.[6] (Opp'n at 16-17.) In other words, because IndyMac was a mortgage lender, *any* statement about underwriting *must* have been material.

But this argument misstates the law. It is not the importance of the *topic* of the representation that makes a statement material. Rather, "materiality hinges on what particularly was represented." *J&R Marketing, SEP v. Gen. Motors. Corp.*, 549 F.3d 384, 396 (6th Cir. 2008). So, the critical inquiry is whether Mr. Perry's *specific* underwriting statements were material *at the time they were made*, not whether information about underwriting generally is important. *See Fremont Gen.*, 2009 WL 3112574, at *7. Consequently, plaintiffs' reliance on generalities about the importance of underwriting is insufficient.

And plaintiffs' additional arguments that Mr. Perry's statements were material because he repeatedly "raised these specific issues" and "[a]nalysts and financial reporters specifically and repeatedly inquired into these topics" also fail. (Opp'n at 17.) First, plaintiffs make no effort to explain what they mean when they refer to "these issues" and "these topics." While they cite generally to 15 paragraphs of the 5AC, they provide the Court with no insight into why each

---

[6] Plaintiffs also contend that Mr. Perry's alleged misstatements were material because, once investors became aware of the falsity of those statements, IndyMac's share price dropped "a total of 20%." (Opp'n at 18.) In light of the Court's prior loss causation rulings, as discussed *supra*, only the 6% share price drop is legally relevant. Plaintiffs' improper attempt to aggregate legally irrelevant share price declines should be rejected.

specific statement of Mr. Perry was material at the time it was made.

Second, assuming plaintiffs refer to Mr. Perry's alleged underwriting misstatements, plaintiffs cannot seriously contend that every statement a CEO makes is *per se* material. Rather, materiality depends on what specifically was disclosed, what other information was available in the marketplace at the time, and the importance of the particular statement to a reasonable investor's investment decision. *See Basic*, 485 U.S. at 231-32; *Garber*, 537 F. Supp. 2d at 612-14.

Finally, plaintiffs rely on a number of January 2007 analyst reports that reported negative information about IndyMac's financial results to argue the materiality of Mr. Perry's earlier alleged misstatements. (Opp'n at 17.) But the analyst reports plaintiffs cite were published months *after* Mr. Perry's alleged misstatements and, thus, say nothing about whether Mr. Perry's statements were material *at the time they were made*.

And, even if these analyst reports had been published contemporaneously with Mr. Perry's alleged misstatements, their content is wholly unrelated to his alleged misstatements. As the Court has already found, nowhere do the January 2007 analyst reports "expressly place blame for the revised earnings forecast or the revised earnings on problems with or deficiencies in the company's internal controls, risk controls, or underwriting." (*See* Aug. 3, 2009 Order at 2; *see also* Oct. 24 Transcript at 24:12-16.)[7]

### D. The 5AC's Failure to Plead Materiality is an Independent Basis for Dismissal.

Instead of highlighting specific factual allegations of materiality in the 5AC

---

[7] Plaintiffs' citation to the Lehman analyst report, which stated that IndyMac's "management team lost some credibility," is entirely off-point. Not only does this analyst's comment say nothing about whether Mr. Perry's underwriting statements were material when made, but *none* of Mr. Perry's alleged misstatements even addressed the integrity of IndyMac's management team.

(because there are none), plaintiffs' opposition brief ignores the 5AC's utter failure to plead materiality.[8] This approach evidences a clear lack of recognition that *plaintiffs* bear the burden of meeting the applicable pleading requirements. It also improperly forces the Court to scour the 82-page 5AC to try and find some factual allegation to support plaintiffs' position.

Ultimately, as to materiality, the 5AC contains nothing more than a collection of bare and conclusory allegations that do not measure up to the threshold requirements for materiality with the particularity the law requires. This failure to plead materiality constitutes a separate and independent basis for dismissal of the 5AC. *Garber*, 537 F. Supp. 2d at 616-17.

## CONCLUSION

For these reasons, Mr. Perry respectfully requests that this Court dismiss the Fifth Amended Complaint with prejudice.

DATED: November 30, 2009   Respectfully submitted,

COVINGTON & BURLING LLP

By:   */s/ David B. Bayless*
David B. Bayless
Tammy Albarrán
Paul Watkins

Attorneys for Defendant Michael W. Perry

---

[8] Plaintiffs contend that the Court has "already found" that Mr. Perry's underwriting statements were "materially false." (Opp'n at 2, 16.) But, as plaintiffs admit, Mr. Perry has raised the issue of materiality for the *first* time in his motion to dismiss the 5AC. (*Id.* at 5-6 n.9.) Accordingly, the Court has not been presented with, nor has it ruled on, whether plaintiffs' allegations plead the materiality of Mr. Perry's underwriting statements. And the September 14, 2009 hearing transcript, which plaintiffs failed to attach to their opposition, confirms this. (*See* Decl. of Tammy Albarrán in Further Support of Perry's Mot. to Dismiss the Fifth Am. Compl., Ex. A at 8.)