KESSLER TOPAZ
  MELTZER & CHECK, LLP
RAMZI ABADOU (222567)
rabadou@ktmc.com
ELI R. GREENSTEIN (217945)
egreenstein@ktmc.com
STACEY M. KAPLAN (241989)
skaplan@ktmc.com
ERIK D. PETERSON (257098)
epeterson@ktmc.com
580 California Street, Suite 1750
San Francisco, CA 94104
Telephone: (415) 400-3000
Facsimile: (415) 400-3001

*Lead Counsel for Lead Plaintiff and the Class*

[Additional counsel listed on signature page]

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| WAYMAN TRIPP and SVEN MOSSBERG, Individually and on Behalf of all Others Similarly Situated,<br><br>Plaintiffs,<br><br>v.<br><br>INDYMAC BANCORP, INC. and MICHAEL W. PERRY,<br><br>Defendants. | Case No. 2:07-CV-1635-GW (VBK)<br><br>**LEAD PLAINTIFF'S NOTICE OF MOTION AND UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF PROPOSED SETTLEMENT; AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT**<br><br>Hearing Date:   July 9, 2012<br>Time:   8:30 a.m.<br>Courtroom:   10<br>Judge:   Hon. George H. Wu |

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on July 9, 2012, at 8:30 a.m. in Courtroom 10 of the United States District Court for the Central District of California, U.S. Courthouse, 312 North Spring Street, Los Angeles, California 90012, the Honorable George H. Wu presiding, Class Representative Sven Mossberg will and hereby does move for an Order pursuant to Rule 23 of the Federal Rules of Civil Procedure:  (1) preliminarily approving the proposed settlement of this action; (2) approving the form and manner of giving notice of the proposed settlement to the Class; and (3) scheduling a final approval hearing before the Court.  The grounds for this motion are that the proposed settlement is within the range of what is fair, reasonable, and adequate so that notice of its terms may be disseminated to members of the Class and a hearing maybe scheduled for final approval of the proposed settlement.

This motion is based upon this Notice of Motion and Motion, the Memorandum of Points and Authorities set forth below, the Stipulation and Agreement of Settlement dated June 25, 2012, filed simultaneously herewith, the pleadings and records on file in this action, and other such matters and argument as the Court may consider at the hearing of this motion.  This motion is made following the conference of counsel pursuant to L.R. 7-3, which took place on June 15, 2012.

Dated: June 26, 2012                    Respectfully submitted,

                                        **KESSLER TOPAZ**
                                        **  MELTZER & CHECK, LLP**

                                        */s/ Ramzi Abadou*
                                        Ramzi Abadou, Esq.
                                        Eli R. Greenstein, Esq.
                                        Stacey M. Kaplan, Esq.
                                        Erik D. Peterson, Esq.
                                        580 California Street, Suite 1750
                                        San Francisco, CA 94104
                                        Tel: (415) 400-3000
                                        Fax: (415) 400-3001

and

John J. Gross, Esq.
Jennifer L. Enck, Esq.
280 King of Prussia Road
Radnor, PA 19087
Tel:  (610) 667-7706
Fax:  (610) 667-7056

*Lead Counsel for Lead Plaintiff*
*and the Class*

1

## **TABLE OF CONTENTS**

2

I.     INTRODUCTION ......................................................................................... 1

3

II.    SUMMARY OF THE LITIGATION ......................................................... 2

4

III.   SUMMARY AND REASONS FOR THE PROPOSED SETTLEMENT ............ 7

5

IV.  ARGUMENT ................................................................................................ 9

6

       A.   The Law Favors and Encourages Settlements .............................. 9

7

       B.   The Proposed Settlement Should Be Preliminarily Approved ................... 10

8

             1.   The Proposed Settlement Was Vigorously Negotiated and
9                   Is Supported by Experienced Counsel ................................. 12

10            2.   The Proposed Settlement Provides a Favorable Recovery
                    for the Class .................................................................... 14

11            3.   The Proposed Settlement Does Not Unjustly Favor
12                  Any Class Members ........................................................ 16

13            4.   The Stage of the Proceedings and Discovery Completed ................... 18

14

V.   THE PROPOSED NOTICE TO THE CLASS IS ADEQUATE ......................... 19

15

VI.  PROPOSED SCHEDULE OF EVENTS ............................................. 22

16

VII. CONCLUSION ................................................................................. 23

17

18

19

20

21

22

23

24

25

26

27

28

1

## **TABLE OF AUTHORITIES**

2

**CASES**                                                                                        **Page(s)**

3

4

*Browning v. Yahoo! Inc.*,
   2007 U.S. Dist. LEXIS 86266 (N.D. Cal. 2007)...................................................... 9

5

6

*Carter v. Anderson Merchandisers, LP*,
   2010 U.S. Dist. LEXIS 55581 (C.D. Cal. 2010) .................................................... 14

7

8

*Chun-Hoon v. McKee Foods Corp.*,
   716 F. Supp. 2d 848 (N.D. Cal. 2010) ................................................................. 13

9

10

*Conn. Ret. Plans & Trust Funds v. Amgen Inc.*,
   660 F.3d 1170 (9th Cir. 2011)............................................................................... 6

11

*Ellis v. Naval Air Rework Facility*,
   87 F.R.D. 15 (N.D. Cal. 1980) ........................................................................... 12

12

13

*Harris v. Vector Mktg. Corp.*,
   2011 U.S. Dist. LEXIS 48878 (N.D. Cal. 2011)................................................... 13

14

15

*Harris v. Vector Mktg. Corp.*,
   2012 U.S. Dist. LEXIS 13797 (N.D. Cal. 2012)................................................... 10

16

17

*In re Amkor Tech. Inc. Sec. Litig.*,
   No. 07-cv-00278-PGR, slip op. (D. Ariz. 2009)...................................................... 8

18

19

*In re Charles Schwab Corp. Sec. Litig.*,
   2011 U.S. Dist. LEXIS 44547 (N.D. Cal. 2011).................................................... 14

20

21

*In re CV Therapeutics, Inc., Sec. Litig.*,
   2007 U.S. Dist. LEXIS 98244 (N.D. Cal. 2007).................................................... 17

22

23

*In re First Capital Holdings Corp. Fin. Prods. Sec. Litig.*,
   1992 U.S. Dist. LEXIS 14337 (C.D. Cal. 1992).................................................... 12

24

*In re Heritage Bond Litig.*,
   2005 U.S. Dist. LEXIS 13555 (C.D. Cal. 2005).............................................. 9, 17

25

26

*In re Immune Response Sec. Litig.*,
   497 F. Supp. 2d 1166 (S.D. Cal. 2007) .......................................................... 17, 19

27

28

*In re IndyMac Bancorp, Inc.*,
   No. 08-bk-21752 (Bankr. C.D. Cal. 2008)............................................................ 7

*In re Informix Corp. Sec. Litig.*,
   1999 WL 33456024 (N.D. Cal. 1999).................................................................. 17

*In re Infospace, Inc. Sec. Litig.*,
   330 F. Supp. 2d 1203 (W.D. Wash. 2004)........................................................... 17

*In re Marvell Tech. Grp. Ltd. Sec. Litig.*,
   No. 06-cv-06286-RMW, slip op. (N.D. Cal. 2009) .............................................. 8

*In re Mego Fin. Corp. Sec. Litig.*,
   213 F.3d 454 (9th Cir. 2000)..................................................................... 16, 17, 18

*In re Merix Corp. Sec. Litig.*,
   No. 04-cv-00826-MO, slip op. (D. Or. 2010) ....................................................... 8

*In re Oracle Corp. Sec. Litig.*,
   627 F.3d 376 (9th Cir. 2010)................................................................................ 12

*In re Pac. Enters. Sec. Litig.*,
   47 F.3d 373 (9th Cir. 1995) ........................................................................... 10, 17

*In re Portal Software, Inc. Sec. Litig.*,
   2007 U.S. Dist. LEXIS 51794 (N.D. Cal. 2007)................................................. 22

*In re Portal Software, Inc. Sec. Litig.*,
   2007 U.S. Dist. LEXIS 88886 (N.D. Cal. 2007)........................................... 15, 19

*In re Wireless Facilities, Inc. Sec. Litig. II*,
   253 F.R.D. 607 (S.D. Cal. 2008).................................................................... 9, 10

*IndyMac MBS Inc. v. Ace Am. Ins. Co.*,
   No. BC455772 (Ca. Super. Ct. 2011) .................................................................. 7

*Jenson v. First Trust Corp.*,
   2008 U.S. Dist. LEXIS 45078 (C.D. Cal. 2008)................................................. 17

*Johnson v. Aljian*,
   No. 03-cv-05986-DMG-PJW, slip op. (C.D. Cal. 2010) ..................................... 8

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

*Johnson v. Aljian*,
   No. 03-cv-05986-DMG-PJW, slip op. (C.D. Cal. 2010) ................................... 17

*Livingston v. Toyota Motor Sales USA, Inc.*,
   1995 U.S. Dist. LEXIS 21757 (N.D. Cal. 1995)................................................. 14

*McPhail v. First Command Fin. Planning, Inc.*,
   2009 U.S. Dist. LEXIS 26544 (S.D. Cal. 2009) ................................................ 16

*Morales v. Stevco, Inc.*,
   2011 U.S. Dist. LEXIS 130604 (E.D. Cal. 2011) ............................................. 13

*Murillo v. Pac. Gas & Elec. Co.*,
   266 F.R.D. 468 (E.D. Cal. 2010)........................................................................ 10

*Nat'l Rural Telecomms. Coop v. DIRECTV, Inc.*,
   221 F.R.D. 523 (C.D. Cal. 2004) ...................................................................... 10

*Officers for Justice v. Civil Serv. Comm'n*,
   688 F.2d 615 (9th Cir. 1982).......................................................................... 9, 11

*Rafton v. Rydex Series Funds*,
   2011 U.S. Dist. LEXIS 103141 (N.D. Cal. 2011)............................................... 8

*Rodriguez v. West Publ'g Corp.*,
   563 F.3d 948 (9th Cir. 2009)............................................................................. 19

*Sandoval v. Tharaldson Emp. Mgmt., Inc.*,
   2010 U.S. Dist. LEXIS 69799 (C.D. Cal. 2010)............................................... 19

*Satchell v. Fed. Express Corp.*,
   2007 U.S. Dist. LEXIS 99066 (N.D. Cal. 2007)............................................... 13

*Siegel v. Caldera*,
   No. 09-ap-02645 (Bankr. C.D. Cal. 2009) .......................................................... 7

*Torrisi v. Tucson Electric Power Co.*,
   8 F.3d 1370 (9th Cir. 1993)............................................................................... 11

*Van Bronkhorst v. Safeco Corp.*,
   529 F.2d 943 (9th Cir. 1976).............................................................................. 9

*Williams v. City of Antioch*,
   2012 U.S. Dist. LEXIS 49096 (N.D. Cal. 2012)............................................... 10

*Williams v. Costco Wholesale Corp.*,
   2010 U.S. Dist. LEXIS 19674 (S.D. Cal. 2010) ......................................... 10, 11

*XL Specialty Insurance Co. v. Perry*,
   No. 11-cv-02078 (C.D. Cal. 2011) ...................................................................... 7

*Young v. Polo Retail, LLC*,
   2006 U.S. Dist. LEXIS 81077 (N.D. Cal. 2006) ............................................... 11

STATUTES

11 U.S.C. §101 et seq. ...................................................................................... 3

15 U.S.C. §78u-4(a)(4) ............................................................................... 16, 17

15 U.S.C. §78u-4(a)(6) ................................................................................... 17

15 U.S.C. §78u-4(a)(7) ................................................................................... 21

28 U.S.C. §1292(b) ...................................................................................... 3, 4

OTHER AUTHORITIES

Fed. R. Civ. P. 23 ...................................................................................... 2, 22

Fed. R. Civ. P. 23(b)(3) .................................................................................. 10

Fed. R. Civ. P. 23(c)(2)(B) ............................................................................. 19

Fed. R. Civ. P. 23(e)(1) ............................................................................... 9, 19

Fed. R. Civ. P. 23(h)(1) .................................................................................. 20

Private Securities Litigation Reform Act of 1995 .......................................... *passim*

## MEMORANDUM OF POINTS AND AUTHORITIES

Court-appointed Class Representative and Lead Plaintiff Sven Mossberg ("Lead Plaintiff" or "Class Representative") respectfully submits this Memorandum of Points and Authorities in support of his unopposed motion for preliminary approval of the settlement in the above-captioned action ("Action"), and entry of the [Proposed] Order Preliminarily Approving Settlement ("Preliminary Approval Order") submitted herewith. The Preliminary Approval Order will, among other things: (i) grant preliminary approval of the proposed class action settlement on the terms set forth in the Stipulation and Agreement of Settlement dated June 25, 2012 (the "Stipulation" or "Settlement");[1] (ii) approve the form and manner of notice of the proposed Settlement to the Class;[2] and (iii) schedule a hearing date for final approval of the Settlement ("Settlement Fairness Hearing") and a schedule for various deadlines in connection with the Settlement.

## I.    INTRODUCTION

After over five years of litigation, the parties have reached an agreement to resolve the Class's claims against Michael W. Perry ("Defendant"), pursuant to the accompanying Stipulation. The Settlement provides for the payment of $5,500,000.00 for the benefit of the Class.

---

[1]    All capitalized terms not defined herein have the meanings ascribed to them in the Stipulation.

[2]    The Class was certified by Court Order dated November 15, 2011 and includes all persons who purchased or otherwise acquired IndyMac Bancorp Inc. ("IndyMac" or the "Company") common stock from March 1, 2006 through March 1, 2007, inclusive. Excluded from the Class are IndyMac, the Defendant (*i.e.*, Michael W. Perry), the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which IndyMac or the Defendant has or had a controlling interest. Also excluded from the Class are all persons and entities who exclude themselves from the Class by timely requesting exclusion in accordance with the requirements set forth in the Notice of Pendency of Class Action and Proposed Settlement, Motion for Attorneys' Fees and Expenses and Settlement Fairness Hearing ("Notice"), attached to the Stipulation as Exhibit A(1).

The Settlement is the product of lengthy and contentious litigation followed by well-informed and extensive arm's-length negotiations between experienced and knowledgeable counsel, facilitated by the Honorable Daniel Weinstein (Ret.).  By the time the Settlement was reached, Kessler Topaz Meltzer & Check, LLP ("Class Counsel" or "Lead Counsel") and/or its agents had: (i) conducted an extensive investigation, including review of filings with the Securities and Exchange Commission ("SEC"), press releases, news reports, filings in the IndyMac bankruptcy action and other related litigation, analyst reports, the findings of various government entities and other publicly available information; (ii) filed six amended complaints, with numerous rounds of extensive briefing on those pleadings; (iii) consulted with experts; (iv) conducted exhaustive research of the applicable law for claims in this Action and the potential defenses thereto; (v) conducted multiple interviews with former IndyMac employees; (vi) fully briefed a successful motion for class certification; (vii) engaged in discovery with Defendant and myriad third parties; (viii) participated in nearly two years of mediation; and (ix) successfully responded to Defendant's interlocutory appeal to the United States Court of Appeals for the Ninth Circuit regarding loss causation.

Based on an informed evaluation of the facts and governing legal principles and their recognition of the substantial risk and expense of continued litigation, the parties respectfully submit that the proposed Settlement is fair, reasonable and adequate under Fed. R. Civ. P. 23 ("Rule 23").  Accordingly, Class Representative respectfully moves for preliminary approval and submits this memorandum of points and authorities in support thereof.

## II.      SUMMARY OF THE LITIGATION

On March 12, 2007, the first securities class action complaint captioned *Reese v. IndyMac Financial, Inc., et al.*, CV07-01635 JFW (VBKx) was filed in the Central District of California against IndyMac and certain of the Company's officers.  By Order dated June 18, 2007, the Court appointed Wayman Tripp and Sven Mossberg

as lead plaintiffs and approved their selection of Schiffrin Barroway Topaz & Kessler, LLP (now known as Kessler Topaz Meltzer & Check, LLP) to serve as Lead Counsel.

On September 7, 2007, lead plaintiffs filed their Class Action Amended Complaint for Violations of Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "First Amended Complaint").  Thereafter, multiple rounds of briefing on Defendants' motions to dismiss ensued and lead plaintiffs amended the First Amended Complaint multiple times.  While the Court ultimately sustained the Complaint, Chief Financial Officer Scott Keys and Executive Vice President S. Blair Abernathy were dismissed, and the start of the Class Period was narrowed from January 26, 2006 to March 1, 2006.

On July 31, 2008, IndyMac filed for Chapter 7 bankruptcy protection. Pursuant to Section 362(a) of the Bankruptcy Reform Act of 1978, 11 U.S.C. §101 et seq., all proceedings against IndyMac were automatically stayed.

On October 5, 2009, lead plaintiffs filed their Fifth Amended Class Action Complaint for Violations of Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Fifth Amended Complaint").  Mr. Perry, the sole remaining Defendant, moved to dismiss the Fifth Amended Complaint on October 26, 2009.  Following further briefing and oral argument, on December 10, 2009, the Court issued a tentative ruling denying Mr. Perry's motion to dismiss, which it adopted as its final ruling on December 11, 2009 (the "December Order").  On January 4, 2010, Mr. Perry requested that the Court certify its December Order for interlocutory appeal pursuant to 28 U.S.C. §1292(b), arguing that loss causation could be decided in his favor as a matter of law.  Lead Plaintiff opposed Defendant's request.  On January 26, 2010, Mr. Perry answered the Fifth Amended Complaint.

Thereafter, the Court Ordered Lead Plaintiff to file an amended complaint to address materiality.  On February 16, 2010, Lead Plaintiffs filed the operative complaint, the Sixth Amended Class Action Complaint for Violations of Sections

10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Sixth Amended Complaint" or the "Complaint").   The Complaint alleged, among other things, that during the relevant time period, IndyMac and Mr. Perry issued materially false and misleading statements concerning, *inter alia*, IndyMac's growth and stability resulting from the quality and success of the Company's strong internal/operational controls and underwriting.   The Complaint further asserted that, as a result of this alleged conduct, the price of IndyMac common stock was artificially inflated, causing damage to Class Members who purchased or otherwise acquired IndyMac common stock during the Class Period (*i.e.*, March 1, 2006 through March 1, 2007, inclusive).

On March 29, 2010, the Court certified its December Order for interlocutory review.   The same day, the Court also issued an Order denying Mr. Perry's motion to dismiss the Sixth Amended Complaint, and Mr. Perry filed his answer to the Sixth Amended Complaint.   On May 20, 2010, following full briefing, the Ninth Circuit denied Mr. Perry's 28 U.S.C. §1292(b) petition.

On July 26, 2010, the parties filed a Stipulation Regarding Partial Stay Pending Mediation, which the Court granted by Order dated July 27, 2010.   The parties thereafter engaged in substantial mediation efforts, including submitting numerous mediation briefs at the request of the mediator and attending formal mediation sessions at which both parties made detailed presentations regarding the strengths and weaknesses of their cases.   The parties were unable to reach an agreement to resolve the Action.

Following the parties' mediation efforts, and while litigants in related actions continued settlement discussions, Class Counsel and Mr. Mossberg withdrew from the mediation and engaged in substantial discovery, including: (i) on April 19, 2010, lead plaintiffs served their First Requests for Production of Documents to Defendant Michael W. Perry, and Mr. Perry served his Objections and Responses to Plaintiffs' First Set of Requests for Production on May 26, 2010; (ii) on June 24, 2010,

Mr. Perry served each lead plaintiff with a First Set of Requests for Production, and lead plaintiffs served their Objections and Responses to Mr. Perry's First Set of Requests for Production on July 28, 2010; (iii) since May 21, 2010, lead plaintiffs have served subpoenas *duces tecum* to various third parties, including Ernst & Young LLP, Bohan Group, LLC, MBIA Insurance Company, Financial Guaranty Insurance Company, Ambac Assurance Corporation, Radian Insurance Inc., Clayton Holdings LLC, First American Corelogic, Inc., Federal Deposit Insurance Company, Scott Keys, Brigitte Dewez, Richard H. Wohl, John D. Olinski, and Ashwin Adarkar requesting the production of documents; (iv) on August 26, 2011, Mr. Perry served lead plaintiffs with a First Set of Interrogatories, and Lead Plaintiff Mossberg served his Objections and Responses to Mr. Perry's First Set of Interrogatories on September 28, 2011; (v) on September 22, 2011, Mr. Perry deposed Lead Plaintiff Mossberg; (vi) on November 16, 2011, Lead Plaintiff Mossberg served Mr. Perry with a First Set of Interrogatories, and Mr. Perry served his Objections and Responses to Lead Plaintiff Mossberg's First Set of Interrogatories on December 23, 2011; (vii) on December 6, 2011, Mr. Perry served a subpoena *duces tecum* on John Dessauer Investments, Inc., requesting the production of certain documents; (viii) on December 23, 2011, the parties filed a Joint Stipulation Regarding Mr. Perry's Motion to Compel Plaintiff's Response to Defendant's Interrogatory No. 1, concerning the identity of seven confidential witnesses.  On January 11, 2012, the Court granted Mr. Perry's Motion to Compel Plaintiff's Response to Defendant's Interrogatory No. 1; (ix) on January 18, 2012, Class Representative Mossberg served Mr. Perry with Amended Responses and Objections to Defendant Michael W. Perry's First Set of Interrogatories; (x) on January 31, 2012, Class Representative Mossberg served Mr. Perry with a Second Set of Interrogatories; (xi) Class Counsel engaged in a plethora of meet and confers with counsel for Defendant and numerous third parties regarding the discovery served; and (xii) Class Counsel performed an initial review

1    of the hundreds of thousands of pages of evidence produced in response to the

2    discovery served.

3           On August 29, 2011, Lead Plaintiff Mossberg moved to certify the Class.[3]

4    Defendant opposed Lead Plaintiff's motion on October 13, 2011, and Lead Plaintiff

5    thereafter filed a reply in further support of his motion.  On November 3, 2011, the

6    Court held a telephonic hearing during which it expressed its concerns regarding Mr.

7    Mossberg's adequacy.   On November 9, 2011, Lead Plaintiff filed a Notice of

8    Supplemental Authority in Further Support of Mr. Mossberg's Motion for Class

9    Certification, alerting the Court to the Ninth Circuit's *Amgen* decision and providing

10   additional authority to address the Court's stated concerns.[4]  Following oral argument

11   on November 14, 2011, the Court issued a tentative ruling granting Lead Plaintiff's

12   motion to certify the Class, which it adopted as its final ruling on November 15,

13   2011.

14          While discovery was ongoing, the parties resumed their discussions regarding

15   a possible resolution of the Action, again with the assistance of Judge Weinstein.

16   Pursuant to a stipulation by the parties, the Court stayed the Action on February 16,

17   2012, pending the parties' ongoing mediation efforts.  Following additional months

18   of arm's-length negotiations, the parties reached a tentative agreement to settle the

19   Action and entered into a Memorandum of Understanding outlining the general terms

20   of their proposed agreement on May 15, 2012.  Thereafter, the parties spent several

21   weeks negotiating the details of a formal settlement agreement and drafted the

22   relevant settlement papers, executing the Stipulation on June 25, 2012.

23

24   _____
     [3]      On September 15, 2011, the Court granted Wayman Tripp's request to

25   withdraw as a lead plaintiff in this Action.   Accordingly, Mr. Mossberg sought
     appointment as sole class representative.

26   [4]      On June 11, 2012, the United States Supreme Court granted Amgen Inc.'s

27   petition for a writ of certiorari to review the Ninth Circuit's November 8, 2011 ruling
     in *Conn. Ret. Plans & Trust Funds v. Amgen Inc.*, 660 F.3d 1170 (9th Cir. 2011)

28   ("*Amgen*") that a plaintiff in a securities fraud class action need not prove materiality
     at class certification.

## III.    SUMMARY AND REASONS FOR THE PROPOSED SETTLEMENT

Class Representative entered this Settlement with a solid understanding of the strengths and weaknesses of his claims.  This understanding is based on Class Counsel's (or its agents') extensive investigation and discovery during the prosecution of this Action which has included, *inter alia*, (i) review and analysis of all filings made with the SEC by IndyMac during the relevant time period; (ii) review and analysis of securities analyst reports, press releases, media reports regarding IndyMac and other publications issued by and through the Company; (iii) review and analysis of pleadings in other related actions in which IndyMac, Mr. Perry or IndyMac's former auditor and/or employees are/were parties; (iv) review and analysis of documents filed in IndyMac's bankruptcy proceedings, *In re IndyMac Bancorp, Inc.*, No. 08-bk-21752 (Bankr. C.D. Cal. 2008) and the related adversary proceeding, *Siegel v. Caldera*, No. 09-ap-02645 (Bankr. C.D. Cal. 2009); (v) review and analysis of the numerous filings in the declaratory actions regarding the use of Director and Officer insurance policies, including *XL Specialty Insurance Co. v. Perry*, No. 11-cv-02078 (C.D. Cal. 2011) and *IndyMac MBS Inc. v. Ace Am. Ins. Co.*, No. BC455772 (Ca. Super. Ct. 2011); (vi) review and analysis of the findings of various government agencies; (vii) interviews with numerous former employees of IndyMac; (viii) research of the applicable law with respect to the claims asserted in the Action and the potential defenses thereto; (ix) substantial formal discovery and document review, including serving multiple discovery requests on the Defendant; issuing subpoenas to third parties, including governmental agencies, analysts, IndyMac's former auditor and former IndyMac employees; reviewing and analyzing documents produced as a result of these discovery requests; engaging in multiple meet-and-confers; responding to Defendant's discovery requests; fully briefing a motion to compel; and preparing for and defending Lead Plaintiff's deposition; and (x) consultation with various experts.

Moreover, Class Representative "dedicated a substantial amount of time monitoring the progress in this litigation and the efforts of Class Counsel on behalf of the Class and performing [his] duties as a representative for the Class."  *See* Declaration of Sven Mossberg in Support of Application for Reimbursement of Costs and Expenses in Connection with His Representation of the Class and in Support of the Settlement ("Mossberg Decl."), ¶4.   Class Representative also "engaged in discussions with [Class Counsel] concerning the pros and cons of the mediation and the strategies to be employed when negotiating, reviewed the mediation statement that Class Counsel prepared, and made [himself] available for the mediation sessions by telephone.  [He] also consulted with [Class Counsel] following the mediation sessions as well as during the additional settlement negotiations which followed the sessions."  Mossberg Decl., ¶5.

Based on a careful analysis of the considerations listed above, as well as the substantial expense and length of time necessary to prosecute this Action through the completion of merits and expert discovery, trial and appeals, grave ability to pay issues, and the significant uncertainties in predicting the outcome of complex litigation, Class Representative concluded that a substantial risk existed that the Class could recover less than the Settlement, or nothing, if the Action were to continue. Judge Weinstein also recommends and endorses the Settlement and, indeed, the agreement reached is the result of Judge Weinstein's proposal, compiled after nearly two years of arm's-length negotiations.    Accordingly, Class Representative respectfully requests that the Court enter an Order granting preliminary approval of the Settlement.  *See generally*, *Rafton v. Rydex Series Funds*, 2011 U.S. Dist. LEXIS 103141 (N.D. Cal. 2011); *In re Merix Corp. Sec. Litig.*, No. 04-cv-00826-MO, slip op. (D. Or. 2010) (Declaration of Ramzi Abadou in Support of Lead Plaintiff's Unopposed Motion for Preliminary Approval of Proposed Settlement ("Abadou Decl."), Exhibit 1); *Johnson v. Aljian*, No. 03-cv-05986-DMG-PJW, slip op. (C.D. Cal. 2010) (Abadou Decl., Exhibit 2); *In re Amkor Tech. Inc. Sec. Litig.*, No. 07-cv-

00278-PGR, slip op. (D. Ariz. 2009) (Abadou Decl., Exhibit 3); *In re Marvell Tech. Grp. Ltd. Sec. Litig.*, No. 06-cv-06286-RMW, slip op. (N.D. Cal. 2009) (Abadou Decl., Exhibit 4); *In re Wireless Facilities, Inc. Sec. Litig. II*, 253 F.R.D. 607 (S.D. Cal. 2008).[5]

## IV.    ARGUMENT

### A.    The Law Favors and Encourages Settlements

Federal Rule of Civil Procedure 23(e) requires judicial approval of any compromise of claims brought on a class-wide basis.  Fed. R. Civ. P. 23(e) ("The claims…of a certified class may be settled…only with the court's approval.").  "In deciding whether to approve a proposed settlement, the Ninth Circuit has a 'strong judicial policy that favors settlements, particularly where complex class action litigation is concerned.'"  *In re Heritage Bond Litig.*, 2005 U.S. Dist. LEXIS 13555, at *9 (C.D. Cal. 2005), *see also Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982).  "[T]here is an overriding public interest in settling and quieting litigation," and this is "particularly true in class action suits."  *Van Bronkhorst v. Safeco Corp.*, 529 F.2d 943, 950 (9th Cir. 1976); *see also Browning v. Yahoo! Inc.*, 2007 U.S. Dist. LEXIS 86266, at *39 (N.D. Cal. 2007) ("public and judicial policies strongly favor settlement of class action suits").

Moreover, the Ninth Circuit expressly recognizes that:

in making its assessment pursuant to Rule 23(e), the Court's[] intrusion upon what is otherwise a private consensual agreement negotiated between the parties to a lawsuit must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned.

*Heritage Bond*, 2005 U.S. Dist. LEXIS 13555, at *10 (quoting *Officers for Justice*, 688 F.2d at 625).  Recognizing that "[p]arties represented by competent counsel are

---

[5]    Unless otherwise noted, all emphasis is added and internal citations are omitted.

better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in the litigation," courts favor approval of the settlement rather than continuation of the litigation.  *In re Pac. Enters. Sec. Litig.*, 47 F.3d 373, 378 (9th Cir. 1995).

### B.     The Proposed Settlement Should Be Preliminarily Approved

Approval of a class action settlement requires two stages of judicial approval: (i) preliminary approval, followed by the distribution of notice to the class and (ii) final approval.  *Murillo v. Pac. Gas & Elec. Co.*, 266 F.R.D. 468, 473 (E.D. Cal. 2010) ("Procedurally, the approval of a class action settlement takes place in two stages."); *see also Nat'l Rural Telecomms. Coop v. DIRECTV, Inc.*, 221 F.R.D. 523, 525 (C.D. Cal. 2004).   "In the first stage of the approval process, the court preliminarily approve[s] the Settlement pending a fairness hearing, temporarily certifie[s] the Class…, and authorize[s] notice to be given to the Class."  *Murillo*, 266 F.R.D. at 473 (alterations in original).

The Court has already certified the Class in this Action, so certification in connection with approval of the Settlement is not necessary.  *See Williams v. City of Antioch*, 2012 U.S. Dist. LEXIS 49096, at *7 (N.D. Cal. 2012) ("Because the Court previously certified a class…the Court need not analyze whether the requirements for certification have been met."); *Harris v. Vector Mktg. Corp.*, 2012 U.S. Dist. LEXIS 13797, at *7 (N.D. Cal. 2012) ("[T]he Court notes that it previously certified…a Rule 23(b)(3) class.   Thus, the Court need not analyze whether the requirements for certification have been met.").

At this initial preliminary approval stage, the "Court need only determine whether the proposed settlement appears on its face to be fair" and "falls within the range of possible approval."  *Williams v. Costco Wholesale Corp.*, 2010 U.S. Dist. LEXIS 19674, at *15-*16 (S.D. Cal. 2010); *see also Wireless Facilities*, 253 F.R.D. at 612.   In considering whether to grant preliminary approval of a proposed class action settlement, courts make a preliminary evaluation of the fairness of the

settlement.  At this stage, however, the Court is not required to make a final determination as to whether the proposed Settlement will ultimately be found to be fair, reasonable and adequate.  Rather, that evaluation is made only at the final approval stage, after notice of the proposed Settlement has been given to the members of the Class and Class Members have had an opportunity both to voice their views of the proposed Settlement and to exclude themselves from the Class.  *See Williams*, 2010 U.S. Dist. LEXIS 19674, at *14-*15 ("Given that some [] factors cannot be fully assessed until the Court conducts a Final Approval Hearing, 'a full fairness analysis is unnecessary at this stage.'").[6]

By his unopposed motion, Class Representative is only now requesting that the Court take the first step in the settlement review process.  To this end, "[p]reliminary approval of a settlement and notice to the proposed class is appropriate: [i]f [1] the proposed settlement appears to be the product of serious, informed, noncollusive negotiations, [2] has no obvious deficiencies, [3] does not improperly grant preferential treatment to class representatives or segments of the class, and [4] falls with the range of possible approval."  *Williams*, 2010 U.S. Dist. LEXIS 19674, at *15.[7]

As demonstrated below, the proposed Settlement is a fair result in light of the circumstances present in this Action.  Given the complexity of this litigation, the

---

[6]    In connection with final approval of the proposed Settlement, the Court will be asked to review the following factors identified by the Ninth Circuit: (1) the amount offered in Settlement; (2) the reaction of the Class Members to the proposed Settlement; (3) the strength of Lead Plaintiff's case; (4) the risk, expense, complexity, and likely duration of further litigation; (5) the extent of discovery completed, and the stage of the proceedings; (6) the experience and views of Class Counsel; (7) the risk of maintaining class action status throughout the trial; and (8) the absence of collusion.  *Id.*; *see also Torrisi v. Tucson Electric Power Co.*, 8 F.3d 1370 (9th Cir. 1993) (citing *Officers for Justice*, 688 F.2d at 625).

[7]    *See also Young v. Polo Retail, LLC*, 2006 U.S. Dist. LEXIS 81077, at *12-*13 (N.D. Cal. 2006) ("If the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no[] obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, and falls within the range of possible approval, then the court should direct that the notice be given to the class members of a formal fairness hearing.").

1   potential difficulty of proving certain elements of the Class's claims (*i.e.*, loss

2   causation), the continued risks if the parties were to proceed to trial, IndyMac's

3   bankruptcy, and the numerous claimants against limited insurance proceeds, the

4   Settlement represents a favorable resolution of this Action and eliminates the risk that

5   the Class might otherwise recover nothing.  Indeed, the ever shifting landscape of

6   Private Securities Litigation Reform Act of 1995 ("PSLRA") litigation demonstrates

7   the risks of further litigation.  *See, e.g.*, *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376

8   (9th Cir. 2010) (affirming grant of summary judgment in PSLRA case on loss

9   causation grounds); *see also* n.9, *infra*.   Accordingly, the proposed Settlement

10  satisfies the criteria for assessing preliminary approval of a proposed settlement set

11  forth above, and the proposed Settlement is well within the range of possible

12  approval.

### 1.      The Proposed Settlement Was Vigorously Negotiated and Is Supported by Experienced Counsel

15          Courts recognize that the opinion of experienced counsel supporting settlement

16  after vigorous arm's-length negotiation is entitled to considerable weight.  *See, e.g.*,

17  *Ellis v. Naval Air Rework Facility*, 87 F.R.D. 15, 18 (N.D. Cal. 1980), *aff'd*, 661 F.2d

18  939 (9th Cir. 1981) ("the fact that experienced counsel involved in the case approved

19  the settlement after hard-fought negotiations is entitled to considerable weight"); *In*

20  *re First Capital Holdings Corp. Fin. Prods. Sec. Litig.*, 1992 U.S. Dist. LEXIS

21  14337, at *7 (C.D. Cal. 1992) (finding belief of counsel that the proposed settlement

22  represented the most beneficial result for the class to be a compelling factor in

23  approving settlement).  Here, counsel for the parties have been actively litigating this

24  Action since its commencement in 2007, during which time Class Counsel has

25  conducted an extensive investigation into the alleged claims, including, *inter alia*: (i)

26  review of thousands of pages of document discovery and discovery responses from

27  Defendant and certain third-parties, media and analyst reports, SEC filings, filings in

28  related and bankruptcy litigation and the findings of government entities; (ii)

consultation with experts; (iii) interviews (through investigators) with former employees; and (iv) intensive research of the law applicable to the claims and defenses thereto.

Class Counsel engaged in a rigorous settlement negotiation process with defense counsel, and fully considered and evaluated the fairness of the Settlement to the Class. The parties' settlement negotiations were hard-fought, protracted and included the determined assistance of an experienced mediator and former judge. At Judge Weinstein's direction, the parties submitted several rounds of comprehensive mediation statements. Counsel for all parties attended several formal settlement conferences before Judge Weinstein and gave aggressive, detailed and thoughtful presentations on the perceived strengths and weaknesses of their respective cases. Nevertheless, multiple attempts at mediation failed.

It was only after many additional months of intense discussions resulting in a mediator's proposal, and enduring the risks of the class certification, that the parties were ultimately able to reach an agreement-in-principle. Courts have recognized that "[t]he assistance of an experienced mediator in the settlement process confirms that the settlement is non-collusive." *Satchell v. Fed. Express Corp.*, 2007 U.S. Dist. LEXIS 99066, at *17 (N.D. Cal. 2007). *See also Morales v. Stevco, Inc.*, 2011 U.S. Dist. LEXIS 130604, at *32 (E.D. Cal. 2011) (Granting preliminary approval because, among other things, "[t]he parties utilized an impartial mediator, and the matter was 'resolved by means of a mediator's proposal.' Thus, the agreement is the product of non-collusive conduct."); *Harris v. Vector Mktg. Corp.*, 2011 U.S. Dist. LEXIS 48878, at *25-*26 (N.D. Cal. 2011) ("[T]he parties reached their settlement during a mediation session conducted by [a mediator], who has significant experience mediating complex civil disputes. This further suggests that the parties reached the settlement in a procedurally sound manner and that it was not the result of collusion or bad faith by the parties or counsel."); *Chun-Hoon v. McKee Foods Corp.*, 716 F.

1   Supp. 2d 848, 852 (N.D. Cal. 2010) (same); *Carter v. Anderson Merchandisers, LP*,

2   2010 U.S. Dist. LEXIS 55581, at *22 (C.D. Cal. 2010) (same).

3   Additionally, throughout the Action and settlement negotiations, Defendant

4   has been vigorously represented by Covington & Burling LLP.  Counsel for the

5   Defendant was therefore equally well-informed regarding the case and its

6   representation of the Defendant was no less rigorous than Class Counsel's

7   representation of the Class.  *See Livingston v. Toyota Motor Sales USA, Inc.*, 1995

8   U.S. Dist. LEXIS 21757, at *16-*17 (N.D. Cal. 1995).  Because the Settlement is the

9   product of serious, informed and non-collusive negotiations among experienced

10  counsel and a mediator highly experienced in the resolution of cases such as this

11  Action, it deserves preliminary approval.

12
13
## 2.    The Proposed Settlement Provides a Favorable Recovery for the Class

14  As set forth above, the Settlement provides for the cash recovery of $5,500,000

15  to be allocated among Class Members following deduction of Court-approved fees

16  and expenses.  If the Action had continued, Class Representative and the Class faced

17  numerous obstacles and risks.  As this Court is aware, this Action faced many factual

18  and legal obstacles about which the parties disagree and, to this day, Defendant

19  adamantly denies any wrongdoing.  As he did in his multiple motions to dismiss,

20  Defendant was prepared to argue at trial that he did not act with the requisite scienter,

21  that the statements made were immaterial and not misleading and that his actions did

22  not cause the Class's losses, particularly in light of the market and real estate

23  downturn in 2007.  *See In re Charles Schwab Corp. Sec. Litig.*, 2011 U.S. Dist.

24  LEXIS 44547, at *19 (N.D. Cal. 2011) ("[P]rosecuting these claims through trial and

25  subsequent appeals would have involved significant risk, expense, and delay to any

26  potential recovery. In light of the credit crisis our nation has undergone in recent

27  years, it is unforeseeable how a jury would perceive a case that hinged in part on the

28  level of risk that the investments at issue entailed. Other risks included proving loss

causation and the falsity of the representations at issue."). Further, even if Defendant was found liable, there were significant differences between the damage calculations presented by the parties.

Related litigation against IndyMac and its executives illustrates the risks inherent in continuing to prosecute this Action. For example, as has been widely noted in the press, Judge Manuel Real recently dismissed large parts of a lawsuit brought by the SEC against Defendant and IndyMac's former Chief Financial Officer Scott Keys at summary judgment. Abadou Decl., Exhibit 5. Moreover, IndyMac filed for bankruptcy during the course of the Action and was therefore not a viable source for recovery, and Defendant has limited insurance proceeds and personal resources available to satisfy the numerous actions against him. The Settlement's immediate benefit must therefore be compared to the real risk that the Class would recover nothing after summary judgment, a possible trial and likely appeals, possibly years into the future, or that this and other litigation would deplete the remaining applicable insurance funds, leaving no available funds to satisfy any judgment. Thus, Class Representative believes that the proposed Settlement is particularly fair and adequate given the risk and uncertainty of further litigation, and the possibility that, even if Class Representative prevailed at trial, he would not be able to obtain a judgment for the Class in an amount greater than or even equal to the proposed Settlement. *See In re Portal Software, Inc. Sec. Litig*., 2007 U.S. Dist. LEXIS 88886, at *8-*9 (N.D. Cal. 2007) ("[T]he risk, expense, complexity and likely duration of further litigation…favor settlement because further litigation would entail substantial risk to the class of recovering nothing. Any further litigation would likely be complex, expensive and a favorable outcome improbable. Additional consideration of increased expenses of fact and expert discovery and the inherent risks of proceeding to summary judgment, trial and appeal also support the settlement.").

Given the foregoing risks and after extensive investigation and research, Class Representative and Class Counsel have concluded that the $5,500,000 Settlement is a reasonable and fair amount and represents a substantial recovery for the Class.

### 3.   The Proposed Settlement Does Not Unjustly Favor Any Class Members

The Plan of Allocation described in the proposed Notice to the Class (Exhibit A(1) to the Stipulation) provides for distribution of the Settlement Fund (after deduction of Court-approved fees and expenses) to Class Members who have a loss on all transactions in IndyMac common stock purchased during the Class Period (*i.e.*, March 1, 2006 through March 1, 2007, inclusive).  The formula to apportion the Net Settlement Fund among Class Members is based on when they purchased, acquired and/or sold their shares of common stock, as developed by Class Representative's damages consultant.  This method ensures that Class Members' recovery is based upon the relative losses they sustained as a result of the alleged misconduct in this Action.   All Class Members will receive a *pro rata* distribution from the Net Settlement Fund calculated in the same manner.

The Notice to the Class also discloses that Lead Plaintiff may apply to the Court for an aggregate award of up to $6,000 as reimbursement for his reasonable costs and expenses (including lost wages) directly relating to his representation of the Class.   The award that Lead Plaintiff will seek is a proper request pursuant to the PSLRA.   15 U.S.C. §78u-4(a)(4);[8] *see also In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 463 (9th Cir. 2000) (affirming reimbursement award to class representative in securities class action); *McPhail v. First Command Fin. Planning, Inc.*, 2009 U.S.

---

[8]    The PSLRA specifically provides for reimbursement to representative plaintiffs in securities fraud class actions.  Pursuant to 15 U.S.C. §78u-4(a)(4) of the PSLRA: "The share of any final judgment or of any settlement that is awarded to a representative party serving on behalf of a class shall be equal, on a per share basis, to the portion of the final judgment or settlement awarded to all other members of the class.  Nothing in this paragraph shall be construed to limit the award of reasonable costs and expenses (including lost wages) directly relating to the representation of the class to any representative party serving on behalf of a class."

Dist. LEXIS 26544, at *24-*25 (S.D. Cal. 2009) (awarding reimbursement to six class representatives in amounts ranging from $923.20 to $10,422.30); *In re Immune Response Sec. Litig.*, 497 F. Supp. 2d 1166, 1173 (S.D. Cal. 2007) (approving $40,000 reimbursement to lead plaintiff); *In re Infospace, Inc. Sec. Litig.*, 330 F. Supp. 2d 1203, 1216 (W.D. Wash. 2004) (same).  Although Lead Plaintiff will share in the Net Settlement Fund in the same proportion as all Class Members, he may recover his reasonable costs and expenses incurred as a result of activities undertaken on behalf, and directly related to his representation, of the Class.

Additionally, the fees and expenses that Lead Counsel will seek in this Action – not to exceed 25% of the Settlement Amount plus out-of-pocket expenses up to $525,000, plus interest on both amounts – are reasonable.[9]  *See* 15 U.S.C. §78u-4(a) (4) & (6).  In complex securities litigation such as this, courts in this circuit have routinely awarded larger or a similar percentage for attorneys' fees.  *See, e.g., Mego*, 213 F.3d at 460 (affirming award of one-third of the total recovery); *Pac. Enters.*, 47 F.3d at 379 (33% of $12 million common fund); *Johnson v. Aljian*, No. 03-cv-05986-DMG-PJW, slip op. (C.D. Cal. 2010) (Abadou Decl., Exhibit 6) (33.33% of $8.1 million settlement fund); *Jenson v. First Trust Corp.*, 2008 U.S. Dist. LEXIS 45078, at *10 (C.D. Cal. 2008) (33% of $8.5 million settlement fund); *In re CV Therapeutics, Inc., Sec. Litig.*, 2007 U.S. Dist. LEXIS 98244, at *2 (N.D. Cal. 2007) (awarding 30% of common fund); *Heritage Bond*, 2005 U.S. Dist. LEXIS 13555, at *61 & n.14 (awarding one-third because "courts in this circuit, as well as other circuits, have awarded attorneys' fees of 30% or more in complex class actions"); *In re Informix Corp. Sec. Litig.*, 1999 WL 33456024 (N.D. Cal. 1999) (30%).[10]

---

[9]    Class Counsel had voluntarily reduced its fee request by 5%, even though Mr. Mossberg approved Lead Counsel to seek a larger fee percentage.  *See* Mossberg Decl., ¶7.

[10]    Class Counsel will submit further briefing in support of its request for an award of attorneys' fees and reimbursement of expenses along with its submission for final approval of the Settlement prior to the Settlement Fairness Hearing.

1

### 4.      The Stage of the Proceedings and Discovery Completed[11]

2       The stage of the proceedings and discovery completed are additional factors

3    supporting the Settlement.  As discussed in detail above, Class Counsel engaged in

4    extensive investigation, research, and analysis of the Class's claims, including,

5    among other things, review of SEC filings, analyst reports, news media, findings of

6    governmental agencies, filings in the bankruptcy and related litigation, and interviews

7    with former IndyMac employees.  Lead Plaintiff and Class Counsel also, throughout

8    the course of various rounds of pleadings and motions to dismiss, engaged in

9    extensive legal research, fine-tuning and honing the claims in this Action.  As a result

10   of this work, Lead Plaintiff's Complaint was upheld, and the holding survived

11   Defendant's petition for interlocutory appeal.

12       Moreover, Lead Plaintiff diligently prepared for and testified at a class

13   certification deposition, fully responded to Defendant's discovery, and successfully

14   brought a motion to certify the Class.  Lead Plaintiff also engaged in broad discovery

15   in this case, including, *inter alia*, (i) serving Defendant with document requests and

16   engaging in multiple meet and confers regarding those requests; (ii) serving

17   Defendant with two sets of interrogatories and conferring with Defendant on various

18   occasions; (iii) serving subpoenas *duces tecum* to various third parties, including

19   government entities, insurance companies, IndyMac's former auditor and numerous

20   former IndyMac employees; and (iv) reviewing thousands of pages of evidence

21   produced as a result of those discovery efforts.  As a result, by the time the parties

22   agreed to the Settlement, the parties had a firm understanding of the strengths and

23   weaknesses of the claims. *See Mego*, 213 F.3d 454, 459 (upholding the "district

24   court's conclusion that the Plaintiffs had sufficient information to make an informed

25

26   _____

[11]     Although not specifically required, Class Counsel has provided a brief analysis

27   of this factor to aid in the Court's assessment of the proposed Settlement.   This
     factor, in addition to all eight factors listed in footnote 6 above will be addressed in

28   further detail in Class Counsel's briefing to be submitted in support of final approval
     of the Settlement.

decision about the Settlement" because "Class Counsel conducted significant investigation, discovery and research, and presented the court with documentation supporting those services [and] Class Counsel had worked with damages and accounting experts throughout the litigation."); *Portal Software*, 2007 U.S. Dist. LEXIS 88886, at *10-*11.

In light of these considerations, the Settlement is reasonable and within the range of possible approval. Lead Plaintiff therefore respectfully asks the Court to grant preliminary approval of the Settlement and direct that Notice of its terms be given to the Class.

## V.    THE PROPOSED NOTICE TO THE CLASS IS ADEQUATE

Rule 23(c)(2)(B) of the Federal Rules of Civil Procedure requires that notice of a settlement be "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." *See also* Fed. R. Civ. P. 23(e)(1) ("The court must direct notice in a reasonable manner to all class members who would be bound by the propos[ed settlement]."). Moreover, "[n]otice is satisfactory if it 'generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard.'" *Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 962 (9th Cir. 2009).[12]

Here, the parties negotiated the form of the Notice to be disseminated to all persons and entities who fall within the definition of the Class and whose names and addresses have been or can be identified from or through IndyMac's shareholder lists, as IndyMac's Chapter 7 bankruptcy trustee or his transfer agent may possess. In addition, the Claims Administrator will mail copies of the Notice to entities which

---

[12]    *See also Sandoval v. Tharaldson Emp. Mgmt., Inc.*, 2010 U.S. Dist. LEXIS 69799, at *29 (C.D. Cal. 2010) ("The notice must explain in easily understood language the nature of the action, definition of the class, class claims, issues and defenses, ability to appear through individual counsel, procedure to request exclusion, and binding nature of a class judgment."); *Immune Response*, 497 F. Supp. 2d at 1170 (same).

commonly hold securities in "street name" as nominees for the benefit of their customers who are the beneficial purchasers of the securities. The parties further propose to supplement the mailed Notice with the Summary Notice of Pendency and Proposed Settlement of Class Action and Settlement Fairness Hearing ("Summary Notice") – an additional description of the Action and proposed Settlement, to be published in *Investor's Business Daily* and transmitted over *PR Newswire*.[13]  Class Counsel will also make copies of the Notice and Proof of Claim available for download via the website created for the Settlement, www.IndyMacClassActionSettlement.com ("Website"). The address for the Website is set forth in both the Notice and Summary Notice. In addition to providing access to the Notice and Summary Notice, the Website will provide copies of the operative complaint and other important pleadings, as well as important information regarding the Action and the proposed Settlement.

In addition, Rule 23(h)(1) requires that "[n]otice of the motion [for attorneys' fees] must be served on all parties and, for motions by class counsel, directed to class members in a reasonable manner." The proposed Notice satisfies the requirements of Rule 23(h)(1), as it notifies Class Members that Lead Counsel will apply to the Court for attorneys' fees not to exceed 25% of the Settlement Amount and reimbursement of out-of-pocket expenses not to exceed $525,000, plus interest earned on both amounts at the same rate earned on the Settlement Fund, to be paid from the Settlement Fund.

The proposed Notice includes all of the information required by the PSLRA, as well as additional information.[14]  The proposed Notice describes the proposed

---

[13]    The proposed Notice and Summary Notice are attached to the Stipulation as Exhibits A(1) and A(3).

[14]    Specifically with respect to cases filed under the PSLRA, notices of settlements must state: (1) "[t]he amount of the settlement proposed to be distributed to the parties to the action, determined in the aggregate and on an average per-share basis;" (2) "[i]f the parties do not agree on the average amount of damages per share that would be recoverable if the plaintiff prevailed on each claim alleged under this title [], a statement from each settling party concerning the issue or issues on which

Settlement and sets forth, among other things: (1) the nature, history and status of the litigation; (2) the definition of the Court-certified Class and who is excluded; (3) the reasons the parties have proposed the Settlement; (4) the amount of the Settlement Fund; (5) the estimated average distribution per damaged share; (6) the Class's claims and issues; (7) the parties' disagreement over damages and liability; (8) the maximum amount of attorneys' fees and expenses that Class Counsel intends to seek in connection with final settlement approval; (9) the maximum amount Lead Plaintiff will request for reimbursement of his costs and expenses (including lost wages) in connection with his representation of the Class; (10) the plan for allocating the settlement proceeds to the Class; and (11) the date, time and place of the final settlement hearing.

Further, the proposed Notice discusses the rights Class Members have in connection with the Settlement, including (1) the right to request exclusion from the Class and the manner for submitting a request for exclusion; (2) the right to object to the Settlement, or any aspect thereof, and the manner for filing and serving an objection; and (3) the right to participate in the Settlement and instructions on how to complete and submit a Proof of Claim to the Claims Administrator.  The Notice also provides contact information for Class Counsel and counsel for the Defendant, as well as the postal address for the Court.

As detailed above, the notice program proposed in connection with the Settlement and the form and content of the Notice, Summary Notice and Proof of Claim more than satisfy all applicable requirements of both the Federal Rules of Civil Procedure and the PSLRA.  Moreover, courts routinely find that comparable notice

---

the parties disagree;" (3) "a statement indicating which parties or counsel intend to make []an application [for attorneys' fees or costs], the amount of fees and costs that will be sought (including the amount of such fees and costs determined on an average per share basis), and a brief explanation supporting the fees and costs sought;" (4) "[t]he name, telephone number, and address of one or more representatives of counsel for the plaintiff class who will be reasonably available to answer questions from class members;" and (5) "[a] brief statement explaining the reasons why the parties are proposing the settlement."  15 U.S.C. §78u-4(a)(7).

procedures meet the requirements of due process, Rule 23 and the PSLRA.[15] Accordingly, in granting preliminary approval of the Settlement, Class Representative respectfully requests that the Court also approve the proposed form and method of giving notice to the Class.

## VI.  PROPOSED SCHEDULE OF EVENTS

In connection with preliminary approval of the Settlement, the Court must also set dates for certain events (*i.e.*, mailing of the Notice and publication of the Summary Notice, filing of supporting briefs, deadlines for requesting exclusion from the Class, objecting to the Settlement and submitting claim forms and the final settlement hearing).  The parties suggest a schedule based on the following time intervals:

| Event | Proposed Time for Compliance |
|---|---|
| Deadline for mailing the Notice and Proof of Claim to Class Members[16] ("Notice Date") | Twenty (20) calendar days after the entry of the Preliminary Approval Order (Preliminary Approval Order, ¶10) |
| Deadline for publishing the Summary Notice[17] | Ten (10) calendar days after the Notice Date (Preliminary Approval Order, ¶12) |
| Deadline for filing papers in support of final settlement approval, plan of allocation, request for attorneys' fees and expenses to Lead Counsel and request for reimbursement of costs and expenses to Lead Plaintiff | Thirty-five (35) calendar days before the date scheduled for the Settlement Fairness Hearing (Preliminary Approval Order, ¶21) |

---

[15]    *See, e.g.*, *In re Portal Software, Inc. Sec. Litig.*, 2007 U.S. Dist. LEXIS 51794, at *19 (N.D. Cal. 2007) (dissemination of notice to all reasonably identifiable class members with summary notice published in Investor's Business Daily approved as best practical) (citing Manual for Complex Litigation, Fourth, §21.311 ("Publication in magazines, newspapers, or trade journals may be necessary if individual class members are not identifiable after reasonable effort.")).

[16]    *See* Exhibits A(1) and A(2) to the Stipulation.

[17]    *See* Exhibit A(3) to the Stipulation.

| Deadline for requesting exclusion from the Class or filing an objection to the Settlement, plan of allocation, request for attorneys' fees and expenses to Lead Counsel and/or request for reimbursement of costs and expenses to Lead Plaintiff | Twenty-one (21) calendar days prior to the date of the Settlement Fairness Hearing (Preliminary Approval Order, ¶¶14-15) |
|---|---|
| Deadline for filing reply papers | Seven (7) calendar days prior to the Settlement Fairness Hearing (Preliminary Approval Order, ¶21) |
| Settlement Fairness Hearing | Approximately 90 days following the entry of the proposed Preliminary Approval Order (Preliminary Approval Order, ¶6) |
| Deadline for submitting Proof of Claim and Release forms | One hundred and twenty (120) calendar days following the Notice Date (Preliminary Approval Order, ¶16) |

## VII.   CONCLUSION

Based on the foregoing, Class Representative respectfully submits that the proposed Settlement is a fair and reasonable resolution and warrants this Court's preliminary approval.  Class Representative respectfully requests that the Court enter the [Proposed] Order Preliminarily Approving Settlement submitted herewith, which will provide: (i) preliminary approval of the Settlement; (ii) approval of the form and manner of giving notice of the Settlement to the Class; and (iii) a hearing date and time to consider final approval of the Settlement and related matters.

Dated: June 26, 2012                    Respectfully submitted,

                                        **KESSLER TOPAZ**
                                          **MELTZER & CHECK, LLP**

                                        */s/ Ramzi Abadou*
                                        Ramzi Abadou, Esq.
                                        Eli R. Greenstein, Esq.
                                        Stacey M. Kaplan, Esq.
                                        Erik D. Peterson, Esq.
                                        580 California Street, Suite 1750
                                        San Francisco, CA 94104
                                        Tel: (415) 400-3000
                                        Fax: (415) 400-3001

                                        and

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

John J. Gross, Esq.
Jennifer L. Enck, Esq.
280 King of Prussia Road
Radnor, PA 19087
Tel:  (610) 667-7706
Fax:  (610) 667-7056

*Lead Counsel for Lead Plaintiff
and the Class*

1

## **CERTIFICATE OF SERVICE**

2

I hereby certify that on June 26, 2011, I electronically filed the foregoing with

3

the Clerk of the Court using the CM/ECF system which will send notification of such

4

filing to the e-mail addresses denoted on the attached Electronic Mail Notice List.

5

I certify under penalty of perjury under the laws of the United States of

6

America that the foregoing is true and correct.  Executed on June 26, 2011.

7

8

/s/ Ramzi Abadou

Ramzi Abadou

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# Mailing Information for a Case 2:07-cv-01635-GW -VBK

## Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case.

- **Ramzi Abadou**
  rabadou@ktmc.com,arobles@ktmc.com

- **Tammy Albarran**
  talbarran@cov.com,eerlich@cov.com

- **David B Bayless**
  dbayless@cov.com,eerlich@cov.com

- **Ian D Berg**
  iberg@aftlaw.com,tkellar@aftlaw.com

- **Peter A Binkow**
  pbinkow@glancylaw.com

- **John D Freed**
  freedjd@cov.com

- **Andrew N Friedman**
  afriedman@cohenmilstein.com

- **Mali B Friedman**
  mfriedman@cov.com

- **Lionel Zevi Glancy**
  lglancy@glancylaw.com

- **Michael M Goldberg**
  mmgoldberg@glancylaw.com,dmacdiarmid@glancylaw.com,info@glancylaw.com

- **John J Gross**
  jgross@ktmc.com,dmaytorena@ktmc.com

- **Matthew B Kaplan**
  mbkaplan@thekaplanlawfirm.com

- **Stacey M Kaplan**
  skaplan@ktmc.com,arobles@ktmc.com

- **Teodora Manolova**
  tmanolova@goodwinprocter.com

- **Christopher L Nelson**

cnelson@ktmc.com,dpotts@ktmc.com

- **Erik David Peterson**
  epeterson@ktmc.com,knguyen@ktmc.com,arobles@ktmc.com

- **William F Salle**
  wfslaw@yahoo.com,yessi90042@yahoo.com

- **Evan Jason Smith**
  esmith@brodsky-smith.com

- **Andy Sohrn**
  asohrn@glancylaw.com

- **Michael C Tu**
  mtu@orrick.com

- **Daniel J Tyukody, Jr**
  dtyukody@goodwinprocter.com,azunigagarcia@goodwinprocter.com

- **Edwin V Woodsome , Jr**
  ed.woodsome@dechert.com,patty.ruiz@dechert.com

## Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

**Lauren Wagner Pederson**
Kessler Topaz Meltzer & Check LLP
280 King of Prussia Road
Radnor, PA 19087

**Michael K Yarnoff**
Schiffrin & Barroway
280 King of Prussia Road
Radnor, PA 19087