1  KESSLER TOPAZ
2    MELTZER & CHECK, LLP
   RAMZI ABADOU (222567)
   rabadou@ktmc.com
3  ELI R. GREENSTEIN (217945)
   egreenstein@ktmc.com
4  STACEY M. KAPLAN (241989)
   skaplan@ktmc.com
5  ERIK D. PETERSON (257098)
   epeterson@ktmc.com
6  One Sansome Street, Suite 1850
   San Francisco, CA 94104
7  Telephone: (415) 400-3000
   Facsimile: (415) 400-3001
8
   *Lead Counsel for Lead Plaintiff and the Class*
9
   [Additional counsel listed on signature page]
10

11              UNITED STATES DISTRICT COURT

12              CENTRAL DISTRICT OF CALIFORNIA

13                     WESTERN DIVISION

14  WAYMAN TRIPP and SVEN            Case No. 2:07-CV-1635-GW (VBK)
    MOSSBERG, Individually and on Behalf
15  of all Others Similarly Situated,   **CLASS REPRESENTATIVE'S
                                        NOTICE OF MOTION AND
16              Plaintiffs,            MOTION FOR FINAL APPROVAL
                                        OF CLASS ACTION SETTLEMENT
17       v.                           AND PLAN OF ALLOCATION OF
                                        SETTLEMENT PROCEEDS; AND
18  INDYMAC BANCORP, INC. and         MEMORANDUM OF POINTS AND
    MICHAEL W. PERRY,                 AUTHORITIES IN SUPPORT**
19
              Defendants.             Date:  January 28, 2013
20                                    Time:  8:30 a.m.
                                      Room:  10
21                                    Judge: Hon. George H. Wu

22

23

24

25

26

27

28

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on January 28, 2013, at 8:30 a.m. in Courtroom 10 of the United States District Court for the Central District of California, U.S. Courthouse, 312 North Spring Street, Los Angeles, California 90012, the Honorable George H. Wu presiding, Class Representative Sven Mossberg will and hereby does move for an Order pursuant to Rule 23 of the Federal Rules of Civil Procedure: (i) granting final approval of the proposed settlement of the above-captioned securities class action; and (ii) granting final approval of the proposed plan for allocating the settlement proceeds. The grounds for this motion are that the proposed settlement and plan of allocation are fair, reasonable and adequate.

This motion is based upon this Notice of Motion and Motion, the Memorandum of Points and Authorities set forth below, the accompanying Declaration of Ramzi Abadou in Support of Final Approval of Class Action Settlement, Plan of Allocation of Settlement Proceeds, and Application for an Award of Attorneys' Fees and Expenses to Plaintiffs' Counsel ("Abadou Decl.") and the exhibits thereto, the Stipulation and Agreement of Settlement dated June 25, 2012 ("Stipulation"), filed previously with the Court, the pleadings and records on file in this Action, and other such matters and argument as the Court may consider at the hearing of this motion. This motion is made following the conference of counsel pursuant to L.R. 7-3, which took place on November 26, 2012.

Plaintiffs' Counsel will submit a proposed final approval order to the Court along with their reply submission, on or before January 17, 2013.

Dated: December 7, 2012          Respectfully submitted,

                                **KESSLER TOPAZ**
                                  **MELTZER & CHECK, LLP**


                                */s/ Ramzi Abadou*
                                Ramzi Abadou, Esq.
                                Eli R. Greenstein, Esq.

-1-

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Stacey M. Kaplan, Esq.
Erik D. Peterson, Esq.
One Sansome Street, Suite 1850
San Francisco, CA 94104
Tel:  (415) 400-3000
Fax:  (415) 400-3001

-and-

John J. Gross, Esq.
Jennifer L. Enck, Esq.
280 King of Prussia Road
Radnor, PA 19087
Tel:  (610) 667-7706
Fax:  (610) 667-7056

*Lead Counsel for Lead Plaintiff
and the Class*

**GLANCY BINKOW &**
    **GOLDBERG LLP**
Lionel Z. Glancy (134180)
Peter A. Binkow (173848)
1925 Century Park East, Suite 2100
Los Angeles, CA 90067
Tel:  (310) 201-9150
Fax:  (310) 201-9160

*Liaison Counsel for Plaintiffs*

**COHEN MILSTEIN SELLERS**
    **& TOLL PLLC**
Steven J. Toll
Andrew N. Friedman
1100 New York Avenue, N.W.
Suite 500, West Tower
Washington, DC 20005
Tel:  (202) 408-4600
Fax:  (202) 408-4699

*Additional Counsel for Plaintiffs*

## **TABLE OF CONTENTS**

I.     INTRODUCTION ............................................................................. 1

II.    FACTUAL BACKGROUND AND HISTORY OF THE ACTION ................. 4

III.   THE SETTLEMENT SATISFIES THE STANDARDS FOR FINAL
       APPROVAL UNDER RULE 23 ........................................................ 6

       A.   Legal Standards for Judicial Approval of Class Action Settlements ....... 6

       B.   The Ninth Circuit's Standards Governing Class Action Settlements ....... 7

       C.   The Settlement Satisfies This Circuit's Criteria for Approval ................ 9

            1.   The Amount Offered in Settlement ................................................ 9

            2.   Reaction of the Class Members to the Settlement ........................ 11

            3.   The Strength of Plaintiffs' Case Supports the Settlement ............ 12

                 a.   The Risk of Establishing Liability ...................................... 13

                 b.   The Risk of Establishing Loss Causation and Damages .... 14

            4.   The Risk, Expense, Complexity, and Likely Duration of the
                 Litigation ..................................................................................... 16

            5.   The Extent of Discovery Completed and the Stage of the
                 Proceedings .................................................................................. 17

            6.   The Experience and Views of Counsel Supports the Settlement . 18

            7.   The Risk of Maintaining the Class Action Through Trial Supports
                 the Settlement .............................................................................. 19

            8.   The Absence of Fraud or Collusion Supports the Settlement ...... 20

IV.    THE PLAN OF ALLOCATION IS FAIR, REASONABLE AND
       ADEQUATE ................................................................................. 22

V.     CONCLUSION ............................................................................. 24

# TABLE OF AUTHORITIES

**CASES**                                                                              **Page(s)**

*Alaska Elec. Pension Fund v. Flowserve Corp.*,
   572 F.3d 221 (5th Cir. 2009).................................................................... 13

*Basic Inc. v. Levinson*,
   485 U.S. 224 (1988) ......................................................................... 20

*Bellows v. NCO Fin. Sys. Inc.*,
   2008 U.S. Dist. LEXIS 103525 (S.D. Cal. 2008) ...................................... 12, 17, 19

*Carson v. Am. Brands, Inc.*,
   450 U.S. 79 (1981) ............................................................................. 6

*Carter v. Anderson Merchandisers, LP*,
   2010 U.S. Dist. LEXIS 55581 (C.D. Cal. 2010) ....................................... 21

*Chun-Hoon v. McKee Foods Corp.*,
   716 F. Supp. 2d 848 (N.D. Cal. 2010) .................................................... 21

*Class Plaintiffs v. Seattle*,
   955 F.2d 1268 (9th Cir. 1992)............................................................ 6, 23

*Coady v. Perry, et al.*,
   No. CV 08-03812-GW (C.D. Cal. 2008) ................................................ 10

*Conn. Ret. Plans & Trust Fund v. Amgen, Inc.*,
   660 F.3d 1170 (9th Cir. 2011) ............................................................. 20

*Dura Pharm., Inc. v. Broudo*,
   544 U.S. 336, 125 S. Ct. 1627, 161 L. Ed. 2d 577 (2005) ...................... 13

*Fulford v. Logitech, Inc.*,
   2010 U.S. Dist. LEXIS 29042 (N.D. Cal. 2010)....................................... 7

*Garner v. State Farm Mut. Auto. Ins. Co.*,
   2010 U.S. Dist. LEXIS 49477 (N.D. Cal. 2010)....................................... 2

*Hanlon v. Chrysler Corp.*,
   150 F.3d 1011 (9th Cir. 1998)......................................................... 7, 9, 22

*Harris v. Vector Mktg. Corp.*,
  2011 U.S. Dist. LEXIS 48878 (N.D. Cal. 2011)......................................................21

*Hubbard v. BankAtlantic Bancorp, Inc.*,
  688 F.3d 713 (11th Cir. 2012) ..............................................................................15

*In re Apollo Grp., Inc. Sec. Litig.*,
  2008 U.S. Dist. LEXIS 61995 (D. Ariz. 2008),
  *rev'd*, 2010 U.S. App. LEXIS 14478 (9th Cir. 2010) ............................................12

*In re Broadcom Corp. Sec. Litig.*,
  2005 U.S. Dist. LEXIS 41976 (C.D. Cal. 2005) ....................................................24

*In re Cendant Corp. Litig.*,
  264 F.3d 201 (3d Cir. 2001) ..................................................................................15

*In re Charles Schwab Corp. Sec. Litig.*,
  2011 U.S. Dist. LEXIS 44547 (N.D. Cal. 2011) ....................................................15

*In re Clorox Co. Sec. Litig.*,
  238 F. Supp. 2d 1139 (N.D. Cal. 2002), *aff'd sub nom.*
  *Emp'rs Teamsters Local Nos. 175 & 505 Pension Trust Fund v. Clorox Co.*,
  353 F.3d 1125 (9th Cir. 2004) ..............................................................................12

*In re Downey Sec. Litig.*,
  No. 08-cv-03261 (C.D. Cal. 2008) ........................................................................10

*In re Flag Telecom Holdings, Ltd. Sec. Litig.*,
  2010 U.S. Dist. LEXIS 119702 (S.D.N.Y. 2010) ...................................................21

*In re Heritage Bond Litig.*,
  2005 U.S. Dist. LEXIS 13555 (C.D. Cal. 2005) ...............................................17, 23

*In re Immune Response Sec. Litig.*,
  497 F. Supp. 2d 1166 (S.D. Cal. 2007) ............................................................*passim*

*In re IndyMac Mortg. Backed Sec. Litig.*,
  No. 09-cv-04583 (S.D.N.Y. 2009) .........................................................................20

*In re Mego Fin. Corp. Sec. Litig.*,
  213 F.3d 454 (9th Cir. 2000)..........................................................................8, 9, 17, 18

*In re Mfrs. Life Ins. Co. Premium Litig.*,
  1998 U.S. Dist LEXIS 23217 (S.D. Cal. 1998) ...............................................11, 22

*In re OmniVision Techs., Inc.*,
  559 F. Supp. 2d 1036 (N.D. Cal. 2007) ..........................................................*passim*

*In re Oracle Corp. Sec. Litig.*,
  627 F.3d 376 (9th Cir. 2010) ................................................................................. 12

*In re Pac. Enters. Sec. Litig.*,
  47 F.3d 373 (9th Cir. 1995) ................................................................................. 6, 7

*In re Portal Software, Inc. Sec. Litig.*,
  2007 U.S. Dist. LEXIS 88886 (N.D. Cal. 2007) .................................. 11, 13, 18, 22

*In re Rambus Inc. Derivative Litig.*,
  2009 U.S. Dist. LEXIS 131845 (N.D. Cal. 2009) ........................................... 11, 17

*In re Telik, Inc. Sec. Litig.*,
  576 F. Supp. 2d 570 (S.D.N.Y. 2008) ..................................................................... 2

*In re Warner Commc'ns Sec. Litig.*,
  618 F. Supp. 735 (S.D.N.Y. 1985), *aff'd*, 798 F.2d 35 (2d Cir. 1986) ................. 15

*In re Wash. Mut., Inc. Sec. Litig.*,
  No. 08-md-01919 (W.D. Wash 2008) ................................................................... 10

*Int'l Bhd. of Elec. Workers Local 697 Pension Fund v. Int'l Game Tech., Inc.*,
  2012 U.S. Dist. LEXIS 151498 (D. Nev. 2012) ..........................................*passim*

*Lane v. Facebook, Inc.*,
  696 F.3d 811 (9th Cir. 2012) ............................................................................. 7, 8

*Linney v. Cellular Alaska P'ship*,
  151 F.3d 1234 (9th Cir. 1998) .............................................................................. 8

*Minneapolis Firefighters' Relief Ass'n v. Medtronic, Inc.*,
  No. 08-cv-6324-PAM-AJB (D. Minn. 2012) ....................................................... 17

*Morales v. Stevco, Inc.*,
  2011 U.S. Dist. LEXIS 130604 (E.D. Cal. 2011) ................................................ 22

*Nat'l Rural Telecomm. Corp. v. DIRECTV, Inc.*,
  221 F.R.D. 523 (C.D. Cal. 2004) ........................................................... 11, 16, 18

*Officers for Justice v. Civil Serv. Comm'n*,
  688 F.2d 615 (9th Cir. 1982) .................................................................. 6, 8, 9, 16

*Ret. Sys. v. Micron Tech., Inc.*,
    2011 U.S. Dist. LEXIS 47506 (D. Idaho 2011) ......................................... 14, 20, 21

*Satchell v. Fed. Express Corp.*,
    2007 U.S. Dist. LEXIS 99066 (N.D. Cal. 2007) .................................... 21

*Staton v. Boeing Co.*,
    327 F.3d 938 (9th Cir. 2003) ................................................................. 7

*Torrisi v. Tuscon Elec. Power Co.*,
    8 F.3d 1370 (9th Cir. 1993) ......................................................... *passim*

*Van Bronkhorst v. Safeco Corp.*,
    529 F.2d 943 (9th Cir. 1976) ................................................................. 6

*Wal-Mart Stores, Inc. v. Dukes*,
    131 S. Ct. 2541 (2011) ........................................................................ 20

*White v. Experian Info. Solutions, Inc.*,
    803 F. Supp. 2d 1086 (C.D. Cal. 2011) ............................................ 17, 19

**RULES & STATUTES**

15 U.S.C. §78u-4(e)(1) ............................................................................... 23

Fed. R. Civ. P. 23 .............................................................................. *passim*

Sections 10(b) of the Securities Exchange Act of 1934 ................................ 5

Section 20(a) of the Securities Exchange Act of 1934 .................................. 5

Section 21(D)(e)(1) of the PSLRA .............................................................. 23

## MEMORANDUM OF POINTS AND AUTHORITIES

Pursuant to Rule 23(e) of the Federal Rules of Civil Procedure ("Rule 23(e)"), Court-appointed Lead Plaintiff and Class Representative Sven Mossberg ("Lead Plaintiff" or "Class Representative"), by and through his counsel at Kessler Topaz Meltzer & Check, LLP ("Lead Counsel" or "Class Counsel"), respectfully submits this Memorandum of Points and Authorities in support of his motion[1] for an Order: (i) finally approving the proposed settlement of the above-captioned securities class Action, which the Court preliminarily approved by its Order Preliminarily Approving Settlement dated August 10, 2012 (the "Preliminary Approval Order"); and (ii) approving the proposed plan for allocating the settlement proceeds to the Class (the "Plan of Allocation" or the "Plan").[2]

## I.   INTRODUCTION

The proposed settlement (the "Settlement") represents a solid result for the Class given the facts and circumstances of this litigation. Pursuant to the terms of the Stipulation, Class Representative has obtained a $5,500,000 (the "Settlement Amount")[3] recovery for the Class in exchange for the dismissal of all claims brought

---

[1]   This motion is currently unopposed. The deadline for filing an objection to the Settlement or any aspect thereof, including the Plan of Allocation, is December 28, 2012.

[2]   The Class, as certified by the Court on November 15, 2011, is comprised of all persons and entities who purchased or otherwise acquired IndyMac Bancorp, Inc. ("IndyMac" or the "Company") common stock from March 1, 2006 through March 1, 2007, inclusive. Excluded from the Class are: IndyMac, Michael W. Perry (the "Defendant" or "Perry"), the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors, or assigns and any entity in which IndyMac or the Defendant has or had a controlling interest. Also excluded from the Class are all persons and entities who timely request exclusion in accordance with the requirements set forth in the Court-approved Notice of Pendency of Class Action and Proposed Settlement, Motion for Attorneys' Fees and Expenses and Settlement Fairness Hearing (the "Notice"). Capitalized terms not defined herein shall have those meanings ascribed to them in the Stipulation.

[3]   On August 24, 2012, the Settlement Amount was paid into an interest-bearing escrow account on behalf of the Class.

1  in the Action and a full release of claims against Perry and the other Released

2  Parties.[4]

3        The Settlement was reached after more than five years of intense litigation, and

4  is the fruit of well-informed and extensive arm's-length settlement negotiations

5  between experienced and knowledgeable counsel, facilitated by a highly experienced

6  and respected mediator.[5]  *See* Declaration of the Hon. Daniel H. Weinstein (Ret.) in

7  Support of Motion for Final Approval of Class Action Settlement (the "Weinstein

8  Decl.") (filed concurrently herewith).  "Judge Weinstein's role in the settlement

9  negotiations strongly supports a finding that they were conducted at arm's-length and

10  without collusion."  *In re Telik, Inc. Sec. Litig.*, 576 F. Supp. 2d 570, 576 (S.D.N.Y.

11  2008).  As more fully discussed below and in the accompanying Abadou Declaration,

12  Lead Plaintiffs and their counsel performed a substantial investigation into the

13  Class's claims, engaged in extensive and exhaustive motion practice, including a

14  successful motion for class certification, engaged in formal discovery with myriad

15  third parties, and participated in over a year and a half of mediation before

16  successfully negotiating this Settlement for the Class.  *See* Abadou Decl., ¶¶4, 23-

17  105, 120-28.

18        At every stage of the Action, Defendant asserted aggressive defenses and, had

19  the Settlement not been reached, the Class would have faced considerable hurdles in

20

21      [4]    The term "Released Parties" refers collectively to: the Defendant, all former
co-defendants, and all of their related parties, including their respective past and
22  present agents, associates, attorneys (including Defendant's Counsel), advisors,
spouses, family members, partners, trustees, executors, estates, administrators,
23  subsidiaries, affiliates, predecessors, successors, assigns and insurers.

24      [5]    *See Garner v. State Farm Mut. Auto. Ins. Co.*, 2010 U.S. Dist. LEXIS 49477,
at *35 (N.D. Cal. 2010) ("The Agreement here is the product of arms-length
25  negotiations between the Parties. The Parties engaged in a full day mediation before
an experienced mediator, Judge Daniel Weinstein, and thereafter reached an
26  agreement in principle with the further capable assistance of Judge Weinstein."); *In
re Immune Response Sec. Litig.*, 497 F. Supp. 2d 1166, 1174 (S.D. Cal. 2007)
27  ("[S]ettlement mediation sessions took place before the Honorable Daniel L.
Weinstein (Ret.)….There is nothing to suggest that the settlement involved collusion
28  or fraud.").  Unless otherwise noted, all emphasis is added and internal citations are
omitted.

proving its case, particularly with respect to overcoming Defendant's defenses to liability, loss causation and establishing the Class's full amount of damages at trial. *Id.* ¶¶106-11. These litigation risks, combined with the ability to pay issues (*e.g.*, limited insurance proceeds at the center of an interpleader action by IndyMac) support approval of the Settlement. *Id.* ¶¶106-19.

The reaction of the Class thus far overwhelmingly supports the Settlement. Pursuant to the Court's Preliminary Approval Order, over 71,000 copies of the Notice have been mailed to potential members of the Class or their nominees.[6] The Notice contains a detailed description of the nature and procedural history of the Action, as well as the material terms of the Settlement, including: (i) Lead Plaintiff's estimate of the average per share recovery; (ii) the manner in which the Net Settlement Fund will be allocated among participating Class Members; (iii) a description of the claims that will be released in the Settlement; (iv) the right and mechanism for Class Members to exclude themselves from the Class; and (v) the right and mechanism for Class Members to object to the Settlement, the Plan of Allocation, and/or Plaintiffs' Counsel's request for attorneys' fees and expenses.[7]

As of the date of this memorandum, not a single objection to any aspect of the Settlement has been received, and only two individuals have requested exclusion from the Class. *See* Miller Decl., ¶¶16-17 and Exhibit I attached thereto; Abadou

---

[6] *See* ¶¶4-9 of the Declaration of Eric J. Miller Regarding (A) Mailing of the Notice and Proof of Claim and Release Form, (B) Publication of the Summary Notice, and (C) Report on Exclusion Requests Received to Date (the "Miller Decl.") (filed concurrently herewith) submitted on behalf of Rust Consulting, Inc. ("Rust"), the Court-authorized claims administrator for this Settlement. In addition, the Court-approved Summary Notice was published twice in *Investor's Business Daily* and over the *PR Newswire* on September 6, 2012 and October 25, 2012. *See id.* ¶¶10-11. Information regarding the Settlement, including downloadable copies of the Notice and Proof of Claim, was also posted on the website established for the Settlement, www.indymacclassactionsettlement.com. *Id.* ¶¶13-15.

[7] As set forth in the Notice, the deadline for submitting a request for exclusion from the Class or filing an objection to the Settlement, or any aspect thereof, is December 28, 2012. If any requests for exclusion or objections are received after the date of this submission, Plaintiffs' Counsel will address them in a separate submission to be filed with the Court on or before January 17, 2013.

---

Decl., ¶¶134, 179.  Neither of the requests for exclusion received to date appear to be valid.  One request for exclusion was submitted by an individual who does not appear to be a Class Member, as her purchase of 20 shares of IndyMac common stock occurred years before the start of the Class Period.  Miller Decl., Ex. I.  The other request for exclusion does not provide the transactional information necessary to determine Class membership.  *Id.*  Moreover, Class Representative, who, *inter alia*, "dedicated a substantial amount of time monitoring the progress in this litigation and the efforts of Class Counsel on behalf of the Class" and "engaged in discussions with [Class Counsel] concerning the pros and cons of the mediation and the strategies to be employed when negotiating," fully supports the Settlement.  *See* Docket ("Dkt.") No. 305.

In light of Class Representative's informed assessment of: (i) the facts specific to this Action, particularly IndyMac's bankruptcy and the absence of the alleged corporate wrongdoer from the Action and the limited insurance proceeds available to satisfy a future judgment in the Action; (ii) the strengths and weaknesses of the Class's claims, and the defenses thereto, based on their extensive litigation and settlement efforts over the pendency of this Action; (iii) the absence of opposition to the Settlement to date; (iv) the considerable risks and delays associated with continued litigation and trial; and (v) Plaintiffs' Counsel's past experience in similar class actions, Class Representative and Plaintiffs' Counsel firmly believe that the Settlement is eminently fair, reasonable, and adequate and provides a substantial result for the Class.  Accordingly, Class Representative respectfully requests that the Court grant final approval of this Settlement, and deem the Plan of Allocation a fair and reasonable method for distributing the Net Settlement Fund to the Class.

## II.    FACTUAL BACKGROUND AND HISTORY OF THE ACTION

This Action involves alleged material misrepresentations and omissions concerning, *inter alia*, the quality and success of IndyMac's internal controls and underwriting.  The operative Sixth Amended Class Action Complaint for Violations

of Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Sixth Amended Complaint" or the "Complaint"), alleged that IndyMac portrayed itself throughout the Class Period as a stable and growing company that would not only weather the bad times facing the mortgage industry, but would emerge from troubling times even stronger; however, the Complaint also alleged that IndyMac's internal controls were deficient and the Company had loosened its underwriting.   The Complaint further alleged that these material misrepresentations and omissions caused the price of IndyMac common stock to be artificially inflated throughout the Class Period, resulting in damages to persons and entities that purchased or otherwise acquired IndyMac common stock during this time.

It took myriad rounds of briefing on motion to dismiss, including numerous supplemental briefs and hearings, an interlocutory appeal to the Ninth Circuit, and six amended complaints before the allegations in the Sixth Amended Complaint were upheld.   Along the way, the Court dismissed (with prejudice) claims regarding IndyMac's earnings projections and hedging.  In addition, claims against Executive Vice President and Chief Financial Officer Scott Keys ("Keys") and Executive Vice President, Specialty Mortgage Lending S. Blair Abernathy were dismissed, and the start of the Class Period was narrowed from January 26, 2006 to March 1, 2006.  At the seventh hearing on Defendant's motion to dismiss the third amended complaint, after extensive supplemental briefing on, *inter alia*, IndyMac's bankruptcy, Defendant's motion to stay, Defendant's motion to strike loss causation and hedging, even the Court conveyed its hope that the Action would settle: "THE COURT: If you guys tell me you've settled the case I will put you in front as well. I would not only put you in front I would give you chocolates. And if it was near Mother's Day I would give you flowers."  Hr'g Tr. 40:19-22, May 11, 2009.

For the sake of brevity and to avoid repetition, Class Representative respectfully refers the Court to the accompanying Abadou Declaration for a detailed

discussion of the factual background and procedural history of the Action.  Abadou
Decl., ¶¶15-105, 120-28.[8]

## III.   THE SETTLEMENT SATISFIES THE STANDARDS FOR FINAL APPROVAL UNDER RULE 23

### A.   Legal Standards for Judicial Approval of Class Action Settlements

Rule 23(e) requires that class action settlements be approved by the Court.  It is
well established in the Ninth Circuit that "'voluntary conciliation and settlement are
the preferred means of dispute resolution.'"   *Browning v. MCI*, 2010 U.S. Dist.
LEXIS 75736, at *21 (D. Nev. 2010) (quoting *Officers for Justice v. Civil Serv.
Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982)); *see In re Pac. Enters. Sec. Litig.*, 47
F.3d 373, 378 (9th Cir. 1995); *Class Plaintiffs v. Seattle*, 955 F.2d 1268, 1276 (9th
Cir. 1992).   "[T]here is an overriding public interest in settling and quieting
litigation," and this is "particularly true in class action suits."   *Van Bronkhorst v.
Safeco Corp.*, 529 F.2d 943, 950 (9th Cir. 1976); *see also In re OmniVision Techs.,
Inc.*, 559 F. Supp. 2d 1036, 1041 (N.D. Cal. 2007) ("[T]he court must also be mindful
of the Ninth Circuit's policy favoring settlement, particularly in class action law
suits.").

The authority to grant approval of a proposed settlement lies within the sound
discretion of the Court.  *See Class Plaintiffs*, 955 F.2d at 1276.  A court, however,
should not adjudicate the merits of the action or substitute its judgment for that of the
parties who negotiated the settlement.  *See Carson v. Am. Brands, Inc.*, 450 U.S. 79,
88 n.14 (1981); *Class Plaintiffs*, 955 F.2d at 1291 (court "need not reach any ultimate
conclusions on the contested issues of fact and law which underlie the merits of the
dispute, for it is the very uncertainty of outcome in litigation and avoidance of

---

[8]      In addition to the Abadou Declaration, Plaintiffs' Counsel are simultaneously
submitting the Notice of Motion and Motion for an Award of Attorneys' Fees and
Reimbursement of Expenses; and Memorandum of Points and Authorities in Support
("Fee Memorandum").   The Abadou Declaration and Fee Memorandum are
incorporated by reference herein.

wasteful and expensive litigation that induce consensual settlements"). Rather, recognizing that a settlement represents an exercise of judgment by the negotiating parties, *Torrisi v. Tuscon Elec. Power Co.*, 8 F.3d 1370, 1375 (9th Cir. 1993); *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998), the court's inquiry is limited "to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties." *OmniVision*, 559 F. Supp. 2d at 1041. "[T]he question whether a settlement is fundamentally fair within the meaning of Rule 23(e) is different from the question whether the settlement is perfect in the estimation of the reviewing court." *Lane v. Facebook, Inc.*, 696 F.3d 811, 819 (9th Cir. 2012).

Courts have found that a strong initial presumption of fairness attaches to a proposed settlement if the settlement is reached by experienced counsel after arm's-length negotiations. *See Fulford v. Logitech, Inc.*, 2010 U.S. Dist. LEXIS 29042, at *7 (N.D. Cal. 2010) ("Counsel for both parties ha[d] extensive experience in complex litigation, and they reached the Settlement [] after vigorous litigation and extensive arm's-length negotiation about the specific terms of the Settlement."). Here, the Settlement was reached by experienced, fully-informed counsel after: (i) more than five years of contentious litigation; (ii) significant investigation and discovery; and (iii) protracted settlement negotiations, including formal mediation presided over by an experienced JAMS neutral and former judge. Abadou Decl., ¶¶4, 23-105, 120-28; *see also* §III(C)(8), *infra*. Hence, Class Representative and Plaintiffs' Counsel were fully informed of the merits and weaknesses of the Action when the Settlement was reached, and thus, little doubt exists that the Settlement is entitled to this presumption of fairness.

**B.     The Ninth Circuit's Standards Governing Class Action Settlements**

The standard for reviewing a proposed settlement of a class action in the Ninth Circuit, as in other circuits, is whether the proposed settlement is "fair, reasonable and adequate." *Staton v. Boeing Co.*, 327 F.3d 938, 952, 960 (9th Cir. 2003); *Pac.*

1    *Enters.*, 47 F.3d 373; *Officers for Justice*, 688 F.2d at 625.[9]  A proposed settlement is

2    fair, reasonable and adequate when "the interests of the class as a whole are better

3    served if the litigation is resolved by the settlement rather than pursued."  Manual for

4    Complex Litigation, Third, §30.42 (1995).   To that end, the Ninth Circuit has

5    identified eight factors to consider in deciding whether to approve a proposed

6    settlement of a class action:  (1) the amount offered in settlement; (2) the reaction of

7    the class members to the proposed settlement; (3) the strength of plaintiffs' case; (4)

8    the risk, expense, complexity, and likely duration of further litigation; (5) the extent

9    of discovery completed, and the stage of the proceedings; (6) the experience and

10   views of counsel; (7) the risk of maintaining class action status throughout the trial;

11   and (8) the absence of collusion.  *See Officers for Justice*, 688 F.2d at 625; *In re*

12   *Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 458 (9th Cir. 2000).

13     "The relative degree of importance to be attached to any particular factor will

14   depend upon and be dictated by the nature of the claims advanced, the types of relief

15   sought, and the unique facts and circumstances presented by each individual case."

16   *Officers for Justice*, 688 F.2d at 625; *see Linney v. Cellular Alaska P'ship*, 151 F.3d

17   1234, 1242 (9th Cir. 1998).   As demonstrated herein, and in the accompanying

18   Abadou Declaration, the Settlement more than satisfies each of the foregoing factors.

19   Accordingly, it is the considered judgment of Plaintiffs' Counsel, Class

20   Representative and the mediator, Judge Weinstein, that the Settlement represents a

21   fair, reasonable, and adequate resolution of the Action and warrants this Court's final

22   approval.   Weinstein Decl., ¶¶14-16 ("I unreservedly and respectfully recommend

23   that this settlement be approved in a final basis by the Court.").

24

25

26   _____

27   [9]   When "the settlement takes place before formal class certification, settlement
     approval requires a 'higher standard of fairness.'"  *Facebook*, 696 F.3d at 819.  Here,
     the Court formally certified the Class over Defendants' objections on November 15,

28   2011.  *See* Dkt. No. 285; Abadou Decl., ¶¶80-82.

**C.**     **The Settlement Satisfies This Circuit's Criteria for Approval**

**1.**     **The Amount Offered in Settlement**

The determination of a "reasonable" settlement is not susceptible to a mathematical equation yielding a particularized sum and a settlement is acceptable even if it amounts to only a fraction of the potential recovery that might be available at trial.  *Mego*, 213 F.3d at 458.  "Settlement is the offspring of compromise; the question we address is not whether the final product could be prettier, smarter or snazzier, but whether it is fair, adequate and free from collusion." *Hanlon*, 150 F.3d at 1027.  "Naturally, the agreement reached normally embodies a compromise; in exchange for the saving of cost and elimination of risk, the parties each give up something they might have won had they proceeded with litigation." *Officers for Justice*, 688 F.2d at 624.  Here, the Class will receive $5,500,000 less Plaintiffs' Counsel's reasonable fees and expenses as awarded by the Court, in exchange for an agreement to release claims against Defendant.   This Settlement provides the members of the Class with an immediate benefit and eliminates the significant risk that, given the circumstances of this case, the Class could recover less than the Settlement, or even nothing, if the Action continued.  *See, e.g.*, Abadou Decl., ¶¶112-16.

A critical consideration in Class Representative's decision to enter into the Settlement was IndyMac's bankruptcy and the limited corporate resources available to satisfy a future judgment against the Defendant.  *Id*.  In *Torrisi*, 8 F.3d at 1376, the Ninth Circuit found that "one factor predominate[d] to make clear that the district court acted within its discretion [in approving a settlement]. That factor [was the defendant's] financial condition."  The Ninth Circuit reasoned that:

> [a]t the time of the settlement [defendant] was involved in negotiations with its creditors to restructure its debt and had had an involuntary bankruptcy petition recently filed against it. It had declared a payment moratorium on its debts, and was attempting to obtain regulatory permission to raise its rates to permit it to continue operating. It reached an agreement with its other creditors at roughly the same time as the

1
2
3

settlement in this suit was agreed upon and there was evidence that the assent of other creditors would probably have been withdrawn if this settlement had failed. This could have led to a bankruptcy reorganization **which would have left little if anything for class members**.

4
5
6

*Id.*   According to the Ninth Circuit, "[t]he reality of the situation was that the settlement had to be negotiated based upon assets which could be called upon to fund it." *Id.*

7
8
9
10
11
12
13
14
15
16
17
18

Similarly, *Immune Response* noted that plaintiff "faced significant collectability issues with respect to [defendant]. The Company admittedly had no money to fund a judgment or settlement – the only available source of funds was wasting insurance policies."  497 F. Supp. 2d at 1172.  Moreover, "[t]he longer litigation went on, less and less money was available to satisfy a judgment or settlement, because defense costs were depleting the policies." *Id.*  The court further found that, as here, "[l]itigation would likely require costly discovery and the continued assistance of experts. The trial would have lasted several weeks, and the non-prevailing party would likely have appealed the judgment." *Id.*  As a result, the court found that "[b]oth Parties would thus have to expend a significant amount of resources if this litigation were to proceed."  The court found that these facts supported the reasonableness of the settlement. *Id.*

19
20
21
22
23

Here, while defendants' third motion to dismiss was pending, IndyMac filed for Chapter 7 bankruptcy protection, and, as a result, was no longer a viable source of recovery for the Class.[10]  Abadou Decl., ¶¶43, 112.  Only limited insurance proceeds were available to fund a settlement or satisfy a judgment. *Id.* ¶¶112-13.  IndyMac's

24
25
26
27
28

[10]    This Action was filed on March 12, 2007, over 16 months before IndyMac's bankruptcy in July 2008.  Abadou Decl., ¶¶21, 43.  By contrast, the majority of the securities fraud class actions arising from the subprime and housing crisis were filed in late 2007 or 2008. *See, e.g., In re Wash. Mut., Inc. Sec. Litig.*, No. 08-md-01919 (W.D. Wash Feb. 21, 2008) (initial complaint filed November 2007); *In re Downey Sec. Litig.*, No. 08-cv-03261 (C.D. Cal. May 16, 2008) (initial complaint filed May 2008). *Coady v. Perry, et al.*, No. CV 08-03812-GW (VBKx) (C.D. Cal. June 11, 2008), which was filed just a month before IndyMac's July 2008 bankruptcy, for instance did not face the same loss causation difficulties present in this Action.

former officers and directors were named as defendants in at least ten different actions as a result of IndyMac's demise. *Id.* As a result of Judge Klausner's June 27, 2012 order in the declaratory action, just one tower of insurance (originally $80 million) was available to satisfy all of the actions. *Id.* In addition, on July 20, 2012, IndyMac's insurers filed an interpleader action against certain of IndyMac's former officers and directors, including Defendant, asking the court to determine the allocation of the remaining policy proceeds among the insureds. *See id.* ¶114; Weinstein Decl., ¶¶12-13.

In considering whether to enter into the Settlement, Class Representative weighed the value of immediate settlement against the prospect that significant proceedings remained, including additional discovery, summary judgment briefing, *Daubert* motions, trial preparation and trial. These proceedings would have added further expense to both sides – further depleting already limited insurance proceeds available for recovery – as well as years of delay for any recovery by the Class. *See In re Portal Software, Inc. Sec. Litig.*, 2007 U.S. Dist. LEXIS 88886, at *8 (N.D. Cal. 2007); *Nat'l Rural Telecomm. Corp. v. DIRECTV, Inc.*, 221 F.R.D. 523, 526 (C.D. Cal. 2004); *In re Mfrs. Life Ins. Co. Premium Litig.*, 1998 U.S. Dist LEXIS 23217, at *17 (S.D. Cal. 1998). Accordingly, Class Representative submits that this factor weighs heavily in favor of the Settlement.

### 2.   Reaction of the Class Members to the Settlement

The reaction of the class to the settlement is a significant factor in assessing its fairness and adequacy. *See In re Rambus Inc. Derivative Litig.*, 2009 U.S. Dist. LEXIS 131845, at *10 (N.D. Cal. 2009). "[T]he absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class settlement action are favorable to the class members." *OmniVision*, 559 F. Supp. 2d at 1043. To date, over 71,000 copies of the Notice have been mailed to potential Class Members or nominees. Miller Decl., ¶¶4-9. Pursuant to the Preliminary Approval Order and as set forth in the Notice, the deadline for

1    Class Members to object to the Settlement, Plan of Allocation or Class Counsel's
2    request for attorneys' fees and expenses, or file a request for exclusion from the
3    Class, is December 28, 2012.  As of the date of this filing, there have been no
4    objections, and only two individuals have requested exclusion from the Class.
5    Abadou Decl., ¶¶134, 179.[11]  This absence of dissent combined with the minimal
6    number of requests for exclusion thus far militates in favor of final approval of the
7    Settlement.

8                **3.    The Strength of Plaintiffs' Case Supports the Settlement**

9           Courts evaluating proposed class action settlements consider the risks faced by
10   plaintiffs in further litigation.  *See, e.g.*, *Torrisi*, 8 F.3d at 1376.  At the time the
11   Settlement was reached, Class Representative and Plaintiffs' Counsel believed this
12   was a challenging case but that the Class could ultimately prevail against Defendant.
13   Nevertheless, they also recognized the numerous risks and uncertainties to further
14   litigation of the Class's claims.  Abadou Decl., ¶¶106-19.  *See Bellows v. NCO Fin.*
15   *Sys. Inc.*, 2008 U.S. Dist. LEXIS 103525, at *19 (S.D. Cal. 2008) ("[M]erely
16   reaching trial is no guarantee of recovery.");  *OmniVision*, 559 F. Supp. at 1041.
17   Class Representative and Plaintiffs' Counsel recognized that there have been many
18   securities class actions prosecuted in the belief that they were meritorious, only to
19   lose on summary judgment, at trial or on appeal.[12]  Abadou Decl., ¶¶161-65.

20          Related litigation against IndyMac and its executives highlights the risks of
21   continuing to prosecute an Action such as this.  Abadou Decl., ¶116.  For example, as

---

22   [11]    If any objections or requests for exclusion are received after the date of this
23   submission, Plaintiffs' Counsel will address them in a separate submission to be filed
     with the Court on or before January 17, 2013.

24   [12]    *See, e.g.*, *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376 (9th Cir. 2010)
     (affirming grant of summary judgment on loss causation grounds); *In re Clorox Co.*
25   *Sec. Litig.*, 238 F. Supp. 2d 1139 (N.D. Cal. 2002), *aff'd sub nom. Emp'rs Teamsters*
     *Local Nos. 175 & 505 Pension Trust Fund v. Clorox Co.*, 353 F.3d 1125 (9th Cir.
26   2004) (granting summary judgment in favor of defendants). Even a successful jury
     verdict for plaintiffs is no guarantee of a recovery.  *See In re Apollo Grp., Inc. Sec.*
27   *Litig.*, 2008 U.S. Dist. LEXIS 61995 (D. Ariz. 2008), *rev'd*, 2010 U.S. App. LEXIS
     14478 (9th Cir. 2010) (granting judgment to defendants and nullifying a unanimous
28   jury verdict for plaintiffs following a two month trial).

---

has been widely noted in the press, the Honorable Manuel Real recently dismissed large parts of a lawsuit brought by the SEC against Defendant and IndyMac's former Chief Financial Officer Scott Keys at summary judgment. *Id*. ¶116 & Ex. C (Judge Real "has been methodically dismantling the SEC's case, dismissing almost all of the charges on summary judgment."). In the face of Defense Counsel and advocacy, the SEC ultimately settled its claims against Defendant for $80,000. *Id*. ¶116. The most significant risks and uncertainties of continued litigation, which were extensively considered by Class Counsel and informed its recommendation of the Settlement to Class Representative, are discussed below.

### a.   The Risk of Establishing Liability

By their very nature, securities class actions involve complex legal and factual issues. This Action was prosecuted under the provisions of the Private Securities Litigation Reform Act of 1995 ("PSLRA") and was inherently risky and difficult from the outset. The intent of the PSLRA is to make it harder for investors to bring and successfully conclude securities class actions. As retired Supreme Court Justice Sandra Day O'Connor aptly recognized sitting by designation on the Fifth Circuit, "[t]o be successful, a securities class-action plaintiff must thread the eye of a needle made smaller and smaller over the years by judicial decree and congressional action." *Alaska Elec. Pension Fund v. Flowserve Corp.*, 572 F.3d 221, 235 (5th Cir. 2009). Indeed, "the heightened pleading requirement of the PSLRA and the application of *Dura Pharm., Inc. v. Broudo*, 544 U.S. 336, 125 S. Ct. 1627, 161 L. Ed. 2d 577 (2005), which poses significant risks to plaintiffs' ability to survive…summary judgment and prevailing at trial, suggest that settlement here is prudent." *Portal Software*, 2007 U.S. Dist. LEXIS 88886, at *8.

Here, Class Representative faced numerous hurdles to establishing liability, particularly with respect to demonstrating Defendant's scienter and loss causation. Abadou Decl., ¶¶105-11. For example, Perry has argued repeatedly that because he sold no stock during the Class Period, he had no motive to engage in fraud. *Id*. ¶108.

It took three amended complaints and myriad rounds of briefing and supplemental briefing on Perry's motion to dismiss before some of Lead Plaintiffs' scienter allegations were upheld. *Id.* ¶¶23-57. Notwithstanding these efforts, claims against Keys and claims regarding IndyMac's hedging and earnings projections were dismissed for lack of scienter. *Id.* ¶¶36, 55, 57. *See Immune Response*, 497 F. Supp. 2d at 1172 ("The Court also recognizes that the issues of scienter and causation are complex and difficult to establish at trial" and, as a result, "concludes that settlement is a prudent course.").

> **b.    The Risk of Establishing Loss Causation and Damages**

Class Representative also faced substantial risks with respect to proving loss causation and the Class's damages. Abadou Decl., ¶¶109-11. Even after the complaint was amended three times on loss causation alone, and the Parties briefed the issue no less than six times, the Court emphasized that its conclusion that loss causation had been adequately pled was "by no means assured or obvious. ***It was a close call***." Dkt. No. 224 at 4, 242; Abadou Decl., ¶110. The Court also stated that, "in light of [its] other rulings on the various motions to dismiss...the loss causation element ***is perilously close to being entirely absent from this case***." Dkt. No. 224 at 5; *see Int'l Bhd. of Elec. Workers Local 697 Pension Fund v. Int'l Game Tech., Inc.*, 2012 U.S. Dist. LEXIS 151498, at *7 (D. Nev. 2012) ("Plaintiffs have demonstrated that there are risks associated with continued litigation, given the factual and legal issues involved in the liability phase and the challenges in proving loss causation damages."). "A careful consideration of the underlying facts and law is [] relevant to whether Plaintiffs would have had difficulty proving their case had they proceeded to trial....[T]he Class faced...significant obstacles to prevailing on the merits of its Rule 10b-5 claim had this case proceeded to trial" and "it would likely have had difficulty proving loss causation and damages." *City of Roseville Emps.' Ret. Sys. v. Micron Tech., Inc.*, 2011 U.S. Dist. LEXIS 47506, at *9 (D. Idaho 2011).

Moreover, the Parties' differing argument on loss causation and damages hinged upon extensive expert discovery and testimony. *See In re Warner Commc'ns Sec. Litig.*, 618 F. Supp. 735, 744-45 (S.D.N.Y. 1985), *aff'd*, 798 F.2d 35 (2d Cir. 1986).  Although Class Representative believes he would have been able to present expert testimony to meet his burden on loss causation, and rebut arguments, Defendant's "establishing damages at trial would lead to a 'battle of experts'...with no guarantee whom the jury would believe." *In re Cendant Corp. Litig.*, 264 F.3d 201, 239 (3d Cir. 2001).   A recent case illustrates this danger.   In *Hubbard v. BankAtlantic Bancorp, Inc.*, 688 F.3d 713 (11th Cir. 2012), the court affirmed a lower court ruling granting defendants' motion for judgment as a matter of law on the basis of loss causation, overturning a jury verdict and award in plaintiff's favor.   The Class faced this same risk here because Defendant asserted that any price declines in the Company's securities were not caused by his alleged misrepresentations and omissions, but rather by the world-wide economic downturn and issues unrelated to Defendant's alleged fraud.   Abadou Decl., ¶111.   "The parties also have [therefore] demonstrated that establishing loss causation damages may be challenging because of the historic economic downturn that occurred during the Class Period." *Int'l Game Tech.*, 2012 U.S. Dist. LEXIS 151498, at *8.

> Prosecuting these claims through trial and subsequent appeals would have involved significant risk, expense, and delay to any potential recovery. In light of the credit crisis our nation has undergone in recent years, it is unforeseeable how a jury would perceive a case that hinged in part on the level of risk that the investments at issue entailed. Other risks included proving loss causation and the falsity of the representations at issue.

*In re Charles Schwab Corp. Sec. Litig.*, 2011 U.S. Dist. LEXIS 44547, at *19 (N.D. Cal. 2011).

Had the Action proceeded, there existed real uncertainties concerning liability, causation and damages.   Abadou Decl., ¶¶105-11; Weinstein Decl., ¶11.   Instead, the

1    Class will recover a substantial recovery, without undertaking these risks, which
2    weighs strongly in favor of the Settlement.

3              **4.      The Risk, Expense, Complexity, and Likely Duration of the
4                       Litigation**

5              The certainty of an immediate recovery for the Class also strongly weighs in
6    favor of settlement.   *See, e.g.*, *Officers for Justice*, 688 F.2d at 626.   Courts
7    consistently recognize that the risk, expense, complexity, and possible duration of the
8    litigation are critical factors in evaluating the reasonableness of a settlement. *Torrisi*,
9    8 F.3d at 1376.   In fact, in "most situations, unless the settlement is clearly
10   inadequate, its acceptance and approval are preferable to lengthy and expensive
11   litigation with uncertain results." *DIRECTV*, 221 F.R.D. at 526.

12             As set forth above and in the Abadou Declaration, Class Representative faced
13   severe risks to continued litigation, including successfully establishing liability,
14   causation and damages, as well as the strong likelihood that there would be limited
15   proceeds available to satisfy any judgment.   Abadou Decl., ¶¶105-19.   Class
16   Representative also faced the risks inherent in taking a case to trial, *i.e.* it is
17   impossible to predict how a trier of fact will construe conflicting evidence and
18   testimony. *See Int'l Game Tech.*, 2012 U.S. Dist. LEXIS 151498, at *8.   Although
19   Class Representative has litigated this Action for over five years and was in the midst
20   of discovery when the Settlement was reached, the costs associated with the
21   completion of discovery, expert discovery, summary judgment, including *Daubert*
22   motions, preparation for trial, a trial and the invariable post-trial appeals, were
23   extraordinarily high. *Id.* ("The action was filed in 2009 and, but for the settlement,
24   would require additional discovery, court intervention to resolve discovery disputes,
25   extensive briefings, and possibly a protracted, expensive and lengthy trial in order to
26   reach resolution.").

27             Moreover, this Action, if taken to trial, would have required tremendous
28   preparation by both sides, and many hours of the Court's time and resources. *See*

Transcript of Proceedings at 8:21-24, *Minneapolis Firefighters' Relief Ass'n v. Medtronic, Inc.*, No. 08-cv-6324-PAM-AJB (D. Minn. Nov. 8, 2012) (attached hereto as Exhibit A).   As a result, and given the post-trial appeals that would likely follow, additional years could pass before the Class would receive a recovery, if any.   *See In re Heritage Bond Litig.*, 2005 U.S. Dist. LEXIS 13555, at *28 (C.D. Cal. 2005) ("much of the value of a settlement lies in the ability to make funds available promptly").   Thus, this factor supports the Settlement because, "[u]nlike protracted litigation with an uncertain outcome, the Settlement offers class members prompt, efficient and guaranteed relief."   *White v. Experian Info. Solutions, Inc*., 803 F. Supp. 2d 1086, 1095 (C.D. Cal. 2011).

### 5.    The Extent of Discovery Completed and the Stage of the Proceedings

The stage of proceedings and the amount of information available to the parties to assess the strengths and weaknesses of their case is another factor that courts consider in determining the fairness, reasonableness, and adequacy of a settlement. *See Mego*, 213 F.3d at 459; *Rambus*, 2009 U.S. Dist. LEXIS 131845, at *8. "[W]here, as here, a proposed class settlement has been reached after meaningful discovery, after arm's length negotiation conducted by capable counsel, it is presumptively fair." *NCO*, 2008 U.S. Dist. LEXIS 103525, at *18.   By the time the Parties reached the Settlement, Plaintiffs' Counsel had sufficient knowledge and understanding of the merits of the claims alleged in the Action and the defenses that would be asserted by Defendant to determine that the Settlement is fair, reasonable and adequate.   As detailed in the Abadou Declaration, the Parties have been actively litigating this Action since March 2007, during which time Plaintiffs' Counsel engaged in extensive investigation, research, and analysis of the Class's claims, including, among other things, review of SEC filings, analyst reports, news media, findings of governmental agencies, filings in the bankruptcy and related litigation, and interviews with former IndyMac employees.   Abadou Decl., ¶¶4, 23-79, 83.

Class Representative and Plaintiffs' Counsel also, throughout the course of various rounds of pleadings and motions to dismiss, engaged in extensive legal research, fine-tuning and honing of the Class's claims.  *Id.*

Additionally, Class Representative engaged in substantial fact and class certification discovery, including, *inter alia*, (i) serving Defendant with document requests and engaging in multiple meet and confers regarding those requests; (ii) serving Defendant with two sets of interrogatories and conferring with Defendant on various occasions; (iii) serving subpoenas to myriad third parties, including government entities, analysts, insurance companies, IndyMac's former auditor and numerous former IndyMac employees, and engaging in numerous meet and confers regarding those requests; (iv) conducting an initial review of the hundreds of thousands of pages of evidence produced as a result of those discovery efforts; (v) responding to Defendant's discovery requests; and (vi) preparing for and sitting for a deposition.  *See* Abadou Decl., ¶¶83-105.  *Mego*, 213 F.3d at 459; *Portal Software*, 2007 U.S. Dist. LEXIS 88886, at *10-*11.

In sum, the knowledge and insight gained by Class Representative and Plaintiffs' Counsel following over five years of investigating, conducting discovery and negotiating a highly uncertain settlement of the Action provided Class Representative and Plaintiffs' Counsel with more than sufficient information to evaluate the strengths and weaknesses of the Class's claims, Defendant's defenses, and the likelihood of obtaining a larger recovery from Defendant had the Action continued towards trial.  *See Immune Response*, 497 F. Supp. 2d at 1171.

### 6.       The Experience and Views of Counsel Supports the Settlement

"'Great weight is accorded to the recommendation of counsel, who are most closely acquainted with the facts of the underlying litigation.'"  *DIRECTV*, 221 F.R.D. at 528.  Where, as here, the Settlement is the product of serious, informed, and non-collusive negotiations, "'the trial judge…should be hesitant to substitute its own judgment for that of counsel.'"  *Id.*; *see Int'l Game Tech.*, 2012 U.S. Dist. LEXIS

151498, at *8-*9 ("The Court gives considerable weight to Lead Counsel's representation that the Settlement Amount is a favorable recovery based on their understanding of the issues and challenges in this case in particular and their experience in securities litigation in general."); *White*, 803 F. Supp. 2d at 1099 ("the fact that experienced counsel involved in the case approved the settlement after hard-fought negotiations is entitled to considerable weight").

Plaintiffs' Counsel have extensive experience prosecuting complex securities class actions, are intimately familiar with the facts of this Action and believe that the Settlement is fair and reasonable and in the best interests of the Class.  *See* firm biography of Kessler Topaz (Abadou Decl., Ex. D), Ex. 3; Declaration of Lionel Z. Glancy in Support of Motion for Reimbursement of Expenses Filed on Behalf of Glancy Binkow & Goldberg LLP (Abadou Decl., Ex. E), Ex. 2; Declaration of Andrew N. Friedman in Support of Motion for Reimbursement of Expenses Filed on Behalf of Cohen Milstein Sellers & Toll PLLC (Abadou Decl., Ex. F), Ex. 2.  *NCO*, 2008 U.S. Dist. LEXIS 103525, at *22.  Indeed,

> [b]oth Parties are represented by experienced counsel and their mutual desire to adopt the terms of the proposed settlement, while not conclusive, is entitled to great deal of weight.  Both Parties' negotiation and adoption of the settlement terms, based on their familiarity with the law in this practice area and the strengths and weaknesses of their respective positions, suggests the reasonableness of the settlement. This factor clearly favors settlement.

*Immune Response*, 497 F. Supp. 2d at 1174.

### 7.   The Risk of Maintaining the Class Action Through Trial Supports the Settlement

Although the Class has already been formally certified, there is no assurance of maintaining its class status since courts may exercise their discretion to re-evaluate the appropriateness of class certification at any time.  *See Int'l Game Tech.*, 2012 U.S. Dist. LEXIS 151498, at *7-*8 ("Plaintiffs would also have to…maintain class action status throughout the action."); *OmniVision*, 559 F. Supp. 2d at 1041 (noting

that even if a class is certified, "there is no guarantee the certification would survive through trial, as Defendants might have sought decertification or modification of the class").  For example, in the related *In re IndyMac Mortg. Backed Sec. Litig.*, No. 09-cv-04583 (S.D.N.Y. 2009), litigation pending in the Southern District of New York, the Second Circuit recently agreed on November 26, 2012 to hear an interlocutory appeal of the court's order granting class certification.  Similarly, here, Defendant vigorously opposed class certification arguing, for example, that Mr. Mossberg's post-Class Period IndyMac stock purchases rendered him atypical, and that Defendant had effectively rebutted the fraud-on-the-market presumption of reliance set forth in *Basic Inc. v. Levinson*, 485 U.S. 224, 247-48 (1988).  Dkt. No. 278; *see also* Abadou Decl., ¶¶80-82.  Defendant would have likely asserted this same position at trial, and if Defendant's position was accepted by a jury, the Class's maximum recoverable damages would diminish significantly.[13]

Indeed, the Supreme Court is currently reviewing the Ninth Circuit's decision in *Conn. Ret. Plans & Trust Fund v. Amgen, Inc.*, 660 F.3d 1170 (9th Cir. 2011), holding that a plaintiff in a securities fraud class action need not prove materiality at class certification and applying the fraud-on-the market presumption of reliance.  Abadou Decl., ¶165.  Class Representative cited *Amgen* in further support of his motion for class certification, and its disposition could have affected class status in this Action.  *Id.*  The Settlement avoids any uncertainty with respect to this issue.  *See Micron*, 2011 U.S. Dist. LEXIS 47506, at *13.

### 8.   The Absence of Fraud or Collusion Supports the Settlement

Finally, the Settlement is not a product of collusion.  "The assistance of an experienced mediator in the settlement process confirms that the settlement is non-

---

[13]   As Justice Antonin Scalia noted in *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2552 n.6 (2011), to invoke the "fraud on the market presumption," "plaintiffs seeking 23(b)(3) certification must prove that their shares were traded on an efficient market, an issue they will surely have to prove again at trial in order to make out their case on the merits."

collusive." *Satchell v. Fed. Express Corp.*, 2007 U.S. Dist. LEXIS 99066, at *17 (N.D. Cal. 2007); *see Int'l Game Tech.*, 2012 U.S. Dist. LEXIS 151498, at *8 (settlement fair where it "was reached following arm's length negotiations between experienced counsel that involved the assistance of an experienced and reputable private mediator, [a] retired Judge"); *Harris v. Vector Mktg. Corp.*, 2011 U.S. Dist. LEXIS 48878, at *25-*26 (N.D. Cal. 2011) ("[T]he parties reached their settlement during a mediation session conducted by [a mediator], who has significant experience mediating complex civil disputes. This further suggests that the parties reached the settlement in a procedurally sound manner and that it was not the result of collusion or bad faith by the parties or counsel."); *Chun-Hoon v. McKee Foods Corp.*, 716 F. Supp. 2d 848, 852 (N.D. Cal. 2010) (same); *Carter v. Anderson Merchandisers, LP*, 2010 U.S. Dist. LEXIS 55581, at *22 (C.D. Cal. 2010) (same).

Indeed, "[t]he presumption in favor of the negotiated settlement in this case is strengthened by the fact that settlement was reached in an extended mediation supervised by Judge Weinstein." *In re Flag Telecom Holdings, Ltd. Sec. Litig.*, 2010 U.S. Dist. LEXIS 119702, at *40 (S.D.N.Y. 2010).  The Parties engaged in over a year and a half of formal mediation with Judge Weinstein, involving numerous in-person sessions, multiple mediation briefs, presentations to defense counsel and counsel for the insurers, and additional arm's-length negotiations prior to reaching an agreement to settle the Action.  *See* Weinstein Decl., ¶¶6-11, 14; Abadou Decl., ¶¶120-28; *Micron*, 2011 U.S. Dist. LEXIS 47506, at *14 (noting that "Judge Weinstein has extensive experience in mediating class-action cases" and finding "nothing in the record to suggest the settlement was the product of overreaching, collusion, or fraud between the negotiating parties").

At all times during the negotiations and drafting of the settlement papers, Class Counsel zealously advocated for the best interests of the Class while counsel for Defendant fervently advanced his position.  Abadou Decl., ¶¶120-28.  But for the Settlement, Plaintiffs' Counsel were prepared to continue prosecuting the Action to

1  trial.  *See Hanlon*, 150 F.3d at 1027.  "The arms-length, contentious negotiations that

2  culminated in the settlement agreement indicate that the settlement was reached in a

3  procedurally sound manner. There is nothing in the record indicating any collusion or

4  bad faith by the parties."  *Portal Software*, 2007 U.S. Dist. LEXIS 88886, at *12.

5         Moreover, after engaging in a comprehensive analysis of the merits and

6  circumstances of this Action, Judge Weinstein presented the Parties with a mediator's

7  proposal, which the Parties ultimately accepted to settle the Action.  Abadou Decl.,

8  ¶¶120-28; Weinstein Decl., ¶¶6-11, 14.  *See Morales v. Stevco, Inc.*, 2011 U.S. Dist.

9  LEXIS 130604, at *32 (E.D. Cal. 2011) (granting preliminary approval because,

10  among other things, "[t]he parties utilized an impartial mediator, and the matter was

11  '*resolved by means of a mediator's proposal*.' Thus, the agreement is the product of

12  non-collusive conduct."); Weinstein Decl., ¶15 ("I can state that each settlement term

13  represents a heavily negotiated and arm's length compromise of disputed claims

14  among experienced and able counsel."); *Mfrs. Life Ins.*, 1998 U.S. Dist. LEXIS

15  23217, *24 ("Judge Weinstein's endorsement, while not essential to approval or

16  binding, is another factor in the Settlement's favor"); *see* n.4, *supra*.

17         Class Representative respectfully submits that all of the circumstances of the

18  Settlement demonstrate that it is fair, reasonable and adequate and warrants Court

19  approval.  *See* Weinstein Decl., ¶¶15-16; *Torrisi*, 8 F.3d at 1376 ("In addition to

20  [defendant's] financial condition, other factors point to the conclusion that the

21  settlement was fair. The inherent risks of litigation, the class'[s] overwhelming

22  positive reaction, the opinion of two sets of experienced counsel, and the cost,

23  complexity and time of fully litigating the case all suggest that this settlement was

24  fair.").

## IV.   THE PLAN OF ALLOCATION IS FAIR, REASONABLE AND ADEQUATE

27         Upon approval of the Settlement and entry of an Order approving distribution,

28  the Net Settlement Fund shall be distributed to Authorized Claimants. The proposed

1   Plan of Allocation contained in the Notice details the manner in which the Net

2   Settlement Fund shall be allocated.  *See* Miller Decl., Exhibit A.  The Court has

3   broad discretion in approving the Plan.  *See Class Plaintiffs*, 955 F.2d at 1284.  The

4   standard for approval of the Plan is the same as the standard for approving the

5   Settlement as a whole − the Plan must be fair, reasonable and adequate.  *Id*.  An

6   allocation formula need only have a reasonable basis, particularly if recommended by

7   experienced class counsel.  *See Heritage Bond*, 2005 U.S. Dist. LEXIS 13555, at *38.

8   Here, the Plan was prepared after careful consideration, detailed analysis, and the

9   assistance of a damages expert.  Abadou Decl., ¶134.  The Plan was fully disclosed in

10  the Notice that was mailed to over 71,000 potential Class Members and nominees,

11  and as of this filing, no Class Member has filed an objection to the Plan.  *Id*. ¶¶134,

12  156.

13      The Plan provides for distribution of the Net Settlement Fund to Class

14  Members who have a loss on their transactions in IndyMac common stock purchased

15  or otherwise acquired during the Class Period.  *Id*. ¶¶135-40.  To have a loss, a Class

16  Member must have held eligible IndyMac common stock as of January 16, 2007.  *Id*.

17  ¶135(b).  The formula to apportion the Net Settlement Fund among Class Members is

18  based on when they purchased, acquired and/or sold their IndyMac common stock in

19  relation to IndyMac's disclosures on January 16, 2007, February 28, 2007 and March

20  1, 2007,[14] and also takes into account the 90-day look back period.[15]  *Id*. ¶¶135-40.

21  *See OmniVision*, 559 F. Supp. 2d at 1045 ("It is reasonable to allocate the settlement

---

22  [14]    Recognized Claim amounts for purchases/acquisitions of IndyMac common
23  stock on March 1, 2007 are calculated separately from purchases/acquisitions of
    IndyMac common stock made during the rest of the Class Period because most of the
24  decline associated with the corrective disclosure on March 1, 2007 had already
    occurred overnight (between February 28, 2007 and March 1, 2007), such that most
25  of the inflation had been removed by the opening of trading on March 1, 2007.  *Id*.
    ¶135(c).

26  [15]    Recognized Claims are reduced to an appropriate extent by taking into account
    the closing prices of IndyMac common stock during the 90-day look-back period.
27  *See* 15 U.S.C. §78u-4(e)(1); Section 21(D)(e)(1) of the PSLRA.  The mean (average)
    closing price for IndyMac common stock during this 90-day look-back period was
28  $30.95.  *Id*. ¶135(c) n.9.

1   funds to class members based on the extent of their injuries or the strength of their

2   claims on the merits."). Moreover, the Plan is not a formalized damage study. It is a

3   simplified methodology designed to compare one Class Member to another through

4   their respective Class Period transactions in IndyMac common stock. *Id.* ¶140.

5          Under the Plan, the Court-appointed claims administrator, Rust, will calculate

6   each Authorized Claimant's "Recognized Claim," based on the information regarding

7   Class Period transactions in IndyMac common stock supplied in the Class Member's

8   Proof of Claim. *Id.* ¶135(a). If the total Recognized Claims for all Authorized

9   Claimants exceeds the Net Settlement Fund, each Authorized Claimant's share of the

10  Net Settlement Fund will be determined based upon the percentage that his, her or its

11  Recognized Claim bears to the total Recognized Claims for all Authorized Claimants.

12  *Id.  See In re Broadcom Corp. Sec. Litig.*, 2005 U.S. Dist. LEXIS 41976, at *17 (C.D.

13  Cal. 2005) (approving plan of allocation where the allocation was pro rata across the

14  class). Accordingly, Class Representative believes that this method of allocation is

15  reasonable, fair and equitable and therefore, warrants the Court's approval.

16  **V.    CONCLUSION**

17         For the foregoing reasons, Class Representative respectfully submits that the

18  Settlement and Plan of Allocation are fair, reasonable, and adequate, and respectfully

19  requests this Court to grant final approval of the Settlement and Plan of Allocation.

20  Dated: December 7, 2012              Respectfully submitted,

21

22                                       **KESSLER TOPAZ
                                          MELTZER & CHECK, LLP**
23

24                                       */s/ Ramzi Abadou*
                                         Ramzi Abadou, Esq.
25                                       Eli R. Greenstein, Esq.
                                         Stacey M. Kaplan, Esq.
26                                       Erik D. Peterson, Esq.
                                         One Sansome Street, Suite 1850
27                                       San Francisco, CA 94104
                                         Tel:  (415) 400-3000
28                                       Fax:  (415) 400-3001

-and-

John J. Gross, Esq.
Jennifer L. Enck, Esq.
280 King of Prussia Road
Radnor, PA 19087
Tel:  (610) 667-7706
Fax:  (610) 667-7056

*Lead Counsel for Lead Plaintiff
and the Class*

**GLANCY BINKOW &
    GOLDBERG LLP**
Lionel Z. Glancy (134180)
Peter A. Binkow (173848)
1925 Century Park East, Suite 2100
Los Angeles, CA 90067
Tel:  (310) 201-9150
Fax:  (310) 201-9160

*Liaison Counsel for Plaintiffs*

**COHEN MILSTEIN SELLERS
    & TOLL PLLC**
Steven J. Toll
Andrew N. Friedman
1100 New York Avenue, N.W.
Suite 500, West Tower
Washington, DC 20005
Tel:  (202) 408-4600
Fax:  (202) 408-4699

*Additional Counsel for Plaintiffs*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on December 7, 2012, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses denoted on the attached Electronic Mail Notice List.

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  Executed on December 7, 2012.

*/s/ Ramzi Abadou*
Ramzi Abadou

**Electronic Mail Notice List**
The following are those who are currently on the list to receive e-mail notices for this case.

**Ramzi Abadou**
rabadou@ktmc.com,arobles@ktmc.com

**Tammy Albarran**
talbarran@cov.com,eerlich@cov.com

**David B Bayless**
dbayless@cov.com,eerlich@cov.com

**Ian D Berg**
iberg@aftlaw.com,tkellar@aftlaw.com

**Peter A Binkow**
pbinkow@glancylaw.com

**John D Freed**
freedjd@cov.com

**Andrew N Friedman**
afriedman@cohenmilstein.com

**Mali B Friedman**
mfriedman@cov.com

**Lionel Zevi Glancy**
lglancy@glancylaw.com

**Michael M Goldberg**
mmgoldberg@glancylaw.com,dmacdiarmid@glancylaw.com,info@glancylaw.com

**John J Gross**
jgross@ktmc.com,dmaytorena@ktmc.com

**Matthew B Kaplan**
mbkaplan@thekaplanlawfirm.com

**Stacey M Kaplan**
skaplan@ktmc.com,arobles@ktmc.com

**Teodora Manolova**
tmanolova@goodwinprocter.com

**Christopher L Nelson**
cnelson@ktmc.com,dpotts@ktmc.com

**Erik David Peterson**
epeterson@ktmc.com,knguyen@ktmc.com,arobles@ktmc.com

**William F Salle**
wfslaw@yahoo.com,yessi90042@yahoo.com

**Evan Jason Smith**
esmith@brodsky-smith.com

**Andy Sohrn**
asohrn@glancylaw.com

**Michael C Tu**
mtu@orrick.com

**Daniel J Tyukody, Jr**
dtyukody@goodwinprocter.com,azunigagarcia@goodwinprocter.com

**Edwin V Woodsome , Jr**
ed.woodsome@dechert.com,patty.ruiz@dechert.com


**Manual Notice List**
The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

**Lauren Wagner Pederson**
Kessler Topaz Meltzer & Check LLP
280 King of Prussia Road
Radnor, PA 19087

**Michael K Yarnoff**
Schiffrin & Barroway
280 King of Prussia Road
Radnor, PA 19087